UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JOSEPH A. KINSELLA, AS ADMINISTRATOR | ) | |
| AND PERSONAL REPRESENTATIVE OF THE | ) | |
| ESTATE OF KATHERINE KINSELLA, AND | } | |
| JOSEPH A. KINSELLA, INDIVIDUALLY AND | } | |
| ON BEHALF OF ALL DISTRIBUTEES | ) | |
| OF KATHERINE KINSELLA, DECEASED, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 05-10232-NMG |
| | ) | |
| vs. | ) | |
| | ) | |
| INSURANCE COMPANY OF NORTH | ) | |
| AMERICA, GENERAL STAR INDEMNITY | ) | |
| COMPANY, FIREMAN'S FUND INSURANCE | ) | |
| COMPANY, WYMAN CHARTER CORP., | ) | |
| MICHAEL P. WYMAN, JOSEPH JAY SHORE, | ) | |
| CORD MITCHELL SHORE, CARALYN SHORE | ) | |
| AND TOAD HALL CORP. | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT, INSURANCE COMPANY OF NORTH AMERICA'S ANSWER
## TO PLAINTIFFS' COMPLAINT AND COUNTERCLAIM

### Nature of Action:

1.    Paragraph One states a conclusion of law which requires no answer. If an answer
is required, defendant INA denies the allegations of paragraph 1.

### Jurisdiction and Venue:

2.    Paragraph Two states a conclusion of law which requires no answer. If an answer
is required, defendant INA denies the allegations of paragraph 2.

3.    Paragraph Three states a conclusion of law which requires no answer. If an answer
is required, defendant INA denies the allegations of paragraph 3.

4.     Paragraph Four states a conclusion of law which requires no answer. If an answer is required, defendant INA denies the allegations of paragraph 4.

## The Parties:

5.     Defendant, INA is without information or knowledge sufficient to form a belief as to the allegations contained in paragraph 5, and therefore, denies same.

6.     Defendant, INA is without information or knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 6 and, therefore, denies same.

7.     Defendant, INA is admits the allegations contained in paragraph 7.

8.     Defendant, INA is without information or knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 8 and, therefore, denies same.

9.     Defendant, INA is without information or knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 9 and, therefore, denies same.

10.    Defendant, INA is without information or knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 10 and, therefore, denies same.

11.    Defendant, INA is without information or knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 11 and, therefore, denies same.

12.    Defendant, INA is without information or knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 12 and, therefore, denies same.

13.    Defendant, INA is without information or knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 13 and, therefore, denies same.

14.    Defendant, INA is without information or knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 14 and, therefore, denies same.

15.    Defendant, INA is without information or knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 15 and, therefore, denies same.

## The Alleged Accident:

16.    Defendant, INA is without information or knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 16 and, therefore, denies same.

17.    Defendant, INA admits the allegations in paragraph 17.

18.    Defendant, INA is without information or knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 18 and, therefore, denies same.

- 2 -

19.     Defendant, INA is without information or knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 19 and, therefore, denies same.

20.     Defendant, INA is without information or knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 20 and, therefore, denies same.

21.     Defendant, INA is without information or knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 21 and, therefore, denies same.

22.     Defendant, INA admits only that Katherine Kinsella died on or about July 22, 2001. Defendant, INA is without information or knowledge sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 22 and, therefore, denies same.

## The Underlying Action (Lawsuit):

23. Defendant, INA admits the allegations contained in paragraph 23.

24. Defendant, INA admits the allegations contained in paragraph 24.

## The Insurance Policies:

25.     INA denies the allegations contained in Paragraph 25, except admits that INA issued a policy of insurance numbered HU 200381 for a period from August 10, 2000 to August 10, 2001 wherein Wyman Charter Corp. is the named insured and the subject matter of the insurance is the SEA GENIE II.

26.     Defendant, INA is without information or knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 26 and, therefore, denies same.

27.     Defendant, INA is without information or knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 27 and, therefore, denies same.

## Cause of Action for Declaratory Judgment

28.     Defendant, INA, repeats and realleges its responses to paragraphs 1 through 27, inclusive, as though fully set forth herein.

- 3 -

29.    Defendant, INA denies the allegations contained in paragraph 29 insofar as they pertain to INA, but is otherwise without sufficient information to admit or deny the remaining allegations.

30.    Defendant, INA denies the allegations contained in paragraph 30 insofar as they pertain to INA, but is otherwise without sufficient information to admit or deny the remaining allegations.

31.    Defendant, INA denies the allegations contained in paragraph 31 insofar as they pertain to INA, but is otherwise without sufficient information to admit or deny the remaining allegations.

32.    Defendant, INA denies the allegations contained in paragraph 32 insofar as they pertain to INA, but is otherwise without sufficient information to admit or deny the remaining allegations.

33.    Defendant, INA denies the allegations contained in paragraph 33 insofar as they pertain to INA, but is otherwise without sufficient information to admit or deny the remaining allegations.

34.    Defendant, INA is without information or knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 34 and, therefore, denies same

35.    Defendant, INA denies the allegations contained in paragraph 35.

## FIRST AFFIRMATIVE DEFENSE

INA states that Plaintiffs' Complaint fails to state a cause of action against INA upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

INA states that plaintiffs lack standing to bring this Complaint for Declaratory Judgment on the issues of insurance coverage.

## THIRD AFFIRMATIVE DEFENSE

INA states that there is no coverage available under the INA policy and incorporate a true and correct copy of the policy attached hereto as Exhibit A.

## FOURTH AFFIRMATIVE DEFENSE

INA states that to the extent that there is coverage available under the INA policy, which is denied, such coverage is subject to the terms, limitations, conditions and exclusions of the policy, including but not limited to the limit of liability and that said limit is eroded and/or reduced by the costs of defense, including attorney's fees.

---

## FIFTH AFFIRMATIVE DEFENSE

1) During the negotiation, placement and/or renewal of the Policy, Wyman Charter Corporation and/or its agents knew of and/or failed to disclose and/or misrepresented and/or concealed certain facts material to INA's evaluation of the risk to be insured, including but not limited to: that Caralyn Shore had plead guilty to a scheme involving the improper use of the SEA GENIE II; that the SEA GENIE II was being used for illegal and/or criminal "booze cruises"; that there was no license for the sale of liquor on the vessel; that the vessel was operated in violation of her Coast Guard Certificate of Inspection; that alcohol was served to minors on board the vessel; all or any one in breach of defendant's express and implied duties and obligations, including the duty of utmost good faith owed by parties to a marine insurance contract.

2) The circumstances that Wyman Charter Corporation and/or its agents concealed and/or misrepresented and/or failed to disclose were a material and necessary part of INA's underwriting evaluation and/or were made by Wyman Charter Corporation and/or its agents with actual intent to deceive and/or increased the risk of loss under the Policy.

3) Had the true facts and circumstances been represented and disclosed to INA during negotiations leading to the conclusion of the Policy, or any renewals thereof, INA would not have agreed to underwrite the risks under the particular terms, conditions and limits that it did.

4) INA hereby tenders to the assured, Wyman Charter Corp., reimbursement of the full premium that the assured paid for the policy plus interest at the statutory rate.

5) INA is accordingly entitled to equitable rescission of the Policy.

## SIXTH AFFIRMATIVE DEFENSE

1) INA repeats and realleges each and every allegation contained in Paragraphs 1 through 3 above in the FIFTH AFFIRMATIVE DEFENSE as though fully set forth herein at length.

2) The Policy was voidable and/or voided ab initio because of said non-disclosure, concealment and misrepresentation, constituting a breach of the insured's duty of utmost good faith.

3) As the Policy was not in effect at the time of the drowning of Catherine Kinsella, the INA policy does not provide coverage.

## SEVENTH AFFIRMATIVE DEFENSE

1)   Among other things, the INA Policy provides as follows under "Special Conditions":

### SPECIAL CONDITIONS

. . . .

2. VESSEL LICENSE WARRANTY
Warranted the insured vessel be
properly licensed in accordance with
the laws of the United States, and
while being used for hire the vessel
shall not have on board more persons
than which it is licensed, and the
vessel shall not be navigated beyond
those waters permitted by the license.

2)   Wyman Charter Corporation and/or its agents breached the Vessel License condition in the Policy that the SEA GENIE II "…shall not have on board more persons than which it is licensed…"

3)   The breach of this express condition voids the Policy and/or materially increased the risk of loss under the Policy and/or allegedly contributed to the drowning of Catherine Kinsella.

4)   By virtue of the breach of condition, the INA policy does not provide coverage.

## EIGHTH AFFIRMATIVE DEFENSE

There is no coverage under the Policy for liabilities occurring as a result of an illegal and/or criminal voyage or adventure and/or the illegal and/or criminal acts of Wyman Charter Corporation and/or its agents and/or the certain defendants which allegedly caused or contributed to the death of Catherine Kinsella.

## NINTH AFFIRMATIVE DEFENSE

INA states that to the extent that there is coverage available under the INA policy, which is denied, the policy only provides indemnity cover and will only pay such sums as the Assured shall have become legally liable to pay and shall have paid.

## TENTH AFFIRMATIVE DEFENSE

INA states that to the extent that there is coverage available under the INA policy, which is denied, such coverage is subject to the terms, limitations, conditions and exclusions of the policy, including but not limited to the fact that the policy only provides coverage for Wyman Charter Corp.; and only provides said assured coverage in its capacity as owner of the insured vessel, the SEA GENIE, and not in any other capacity; and does not provide coverage for any other entities or individuals, including certain defendants, Michael P. Wyman, Joseph Jay Shore, Cord Mitchell Shore, Caralyn Shore and Toad Hall Corp.

## ELEVENTH AFFIRMATIVE DEFENSE

INA states that to the extent that there is coverage available under the INA policy, which is denied, such coverage is subject to the terms, limitations, conditions and exclusions of the policy, and that the policy does not provide coverage for punitive damages.

## TWELFTH AFFIRMATIVE DEFENSE

There is no coverage under the Policy for liabilities occurring as a result of intentional and/or reckless and/or willful misconduct on the part of Wyman Charter Corporation and/or its agents and/or the certain defendants because the policy only provides coverage for fortuitous events and these acts constitute non-fortuitous events which allegedly caused or contributed to the death of Catherine Kinsella.

## COUNTERCLAIM AGAINST PLAINTIFFS AND CROSSCLAIM AGAINST DEFENDANTS, WYMAN CHARTER CORP., MICHAEL P. WYMAN, JOSEPH JAY SHORE, CORD MITCHELL SHORE, CARALYN SHORE AND TOAD HALL CORP. FOR DECLARATORY JUDGMENT

**1)** This is an alternative counterclaim and cross-claim for a Declaratory Judgment pursuant to 28 U.S.C. § 2201 for the purpose of determining a question of actual controversy between the parties as hereinafter more fully appears.

## THE PARTIES

**2)** Plaintiff INA is a corporation organized under the laws of the Commonwealth of Pennsylvania with a principal place of business in the Commonwealth of Pennsylvania, and licensed to conduct the business of underwriting marine insurance in the State of Massachusetts from offices located at 101 Federal Street, Boston, MA 02110.

**3)** Defendant Wyman Charter Corporation is a partnership, corporation or other

legal entity organized and existing under the laws of one of the States of the United States with a principal place of business at 100 Breeds Hill Road, Hyannis, MA 02601.

**4)**     Defendant Michael P. Wyman is an individual and President of Wyman Charter Corporation residing at 100 Breeds Hill Road, Hyannis, MA 02601.

**5)**     Defendants, Joseph J. Shore, Cord Mitchell Shore, Caralyn Shore and Toad Hall Corp. (each and together, "Shore Defendants") are individual citizens and reside in the Commonwealth of Massachusetts, or is a corporation organized and existing pursuant to the laws of the Commonwealth of Massachusetts with a principal place of business located at 316 Sea Street, Hyannis, Massachusetts.

## JURISDICTION

**6)**     This Court has jurisdiction by virtue of 28 U.S.C. § 1333 in that this is an action for a declaratory judgment construing a policy of marine insurance and the matters in dispute are admiralty and maritime claims within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

## PRELIMINARY

**7)**     At all material times Wyman Charter Corporation was the alleged owner of a 58-foot passenger vessel named the SEA GENIE II that ran sightseeing cruises for hire from a berth at a marina located in and owned by the Town of Barnstable, MA.

**8)**     At all material times INA provided marine protection and indemnity insurance policy number HU-200381 to Wyman Charter Corporation which, subject to the terms, conditions, limitations and exclusions of the policy, covered Wyman Charter Corporation for such sums it shall have paid for liabilities as owner of the SEA GENIE II during the period August 10, 2000 to August 10, 2001 (hereinafter the Policy) (A true and correct copy of the policy is attached hereto as Exhibit A).

**9)**     At all material times the SEA GENIE II was a documented vessel subject to a United States Coast Guard Certificate of Inspection which restricted operation of the vessel to no more than 48 passengers on board plus 3 crew members.

**10)**     On or about July 22, 2001 Wyman Charter Corporation and/or its agents operated the SEA GENIE II as a "booze cruise" for hire in which passengers were charged a fee to board the vessel, and liquor and other alcoholic beverages were sold on board, both before and during the course of the voyage, including to passengers under the legal drinking age.

- 8 -

**11)** During the course of the "booze cruise" the vessel was being captained and/or crewed by Cord Shore and/or Joseph Shore, who were operating the SEA GENIE II pursuant to an agreement with Wyman Charter Corporation.

**12)** Wyman Charter Corporation and/or "the Shore Defendants" did not have a license authorizing the sale or consumption of alcohol for the period including July 22, 2001 and no such liquor license was otherwise in effect on the vessel on July 22, 2001.

**13)** During the course of the "booze cruise" a 20 year old woman named Catherine Kinsella allegedly fell overboard and drowned.

**14)** Following the death of Catherine Kinsella the Town of Barnstable conducted hearings before Hearing Officer James B. Lampke, Esq. to determine whether the use and operation of the vessel during the "booze cruise" breached the terms of Wyman Charter Corporation's contract to dock the vessel at the marina owned by the Town.

**15)** In a "Report of the Hearing Officer to the Town Manager" of the Town of Barnstable, dated April 19, 2002, the "General Findings" with respect to the operation of the SEA GENIE II during the "booze cruise" were in relevant part:

- The Wyman Charter Corporation's Certificate of Inspection from the Department of Transportation, United States Coast Guard, for the period of June 5, 1999 through June 5, 2004, restricted the vessel to having no more than 48 passengers and required it to have 1 master and 1 deckhand. . . .
- Under an application dated May 3, 2001, Wyman Charter Corporation, 110 Breed Hill Road, Hyannis, MA, Joseph Shore, Manager and Operator, applied for a License to sell All Alcoholic Beverages-Sailing Vessel from the Alcoholic Beverages Control Commission for the Sea Genie
- No license for the sale of alcoholic beverages was in effect for 2001
- Some 56 people, not including the crew, were on the boat
- Joeseph Shore [and] Cord Shore [were] . . . present and participated in the service of alcohol to the people on board, including those who were under age.
- Shore and [Wyman] engaged in a ruse and subterfuge to conceal from the Town the true

> nature of the operation of the SEA GENIE and
> the use of the slip.

**16)** On or about June 28, 2000, Caralyn A. Shore, the spouse and mother of Joseph Shore and Cord Shore, respectively, entered a guilty plea to criminal tax evasion charges in the matter of "United States of America v. Caralyn A. Shore" (D. Mass., Docket No. 00-CR-10196-NG) for among other things, failing to report income from the use and operation of the SEA GENIE II, which she agreed was registered in the name of a third party in order to retain slip privileges in the Town of Barnstable.

**17)** On or about December 17, 2002 a grand jury returned a criminal indictment against Joseph Shore and Cord Shore in the United States District Court for the District of Massachusetts charging them with manslaughter in the death of Catherine Kinsella. Thereafter, guilty pleas were taken.

## THE INSURANCE POLICY

**18)** Among other things, the INA Policy provides as follows under "Special Conditions":

### SPECIAL CONDITIONS

. . . .

2. VESSEL LICENSE WARRANTY
Warranted the insured vessel be properly licensed in accordance with the laws of the United States, and while being used for hire the vessel shall not have on board more persons than which it is licensed, and the vessel shall not be navigated beyond those waters permitted by the license.

**19)** Plaintiff INA hereby tenders to the assured reimbursement of the full premium that the assured paid for the Policy, plus interest.

## FIRST CAUSE OF ACTION

**20)** Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 20 above as though fully set forth herein at length.

**21)** During the negotiation, placement and/or renewal of the Policy, Wyman Charter Corporation and/or its agents knew of and/or failed to disclose and/or

- 10 -

misrepresented and/or concealed certain facts material to INA's evaluation of the risk to be insured, including but not limited to: that Caralyn Shore had plead guilty to a scheme involving the improper use of the SEA GENIE II; that the SEA GENIE II was being used for illegal and/or criminal "booze cruises"; that there was no license for the sale of liquor on the vessel; that the vessel was operated in violation of her Coast Guard Certificate of Inspection; that alcohol was served to minors on board the vessel; all or any one in breach of defendant's express and implied duties and obligations, including the duty of utmost good faith owed by parties to a marine insurance contract.

**22)** The circumstances that Wyman Charter Corporation and/or its agents concealed and/or misrepresented and/or failed to disclose were a material and necessary part of INA's underwriting evaluation and/or were made by Wyman Charter Corporation and/or its agents with actual intent to deceive and/or increased the risk of loss under the Policy.

**23)** Had the true facts and circumstances been represented and disclosed to INA during negotiations leading to the conclusion of the Policy, or any renewals thereof, INA would not have agreed to underwrite the risks under the particular terms, conditions and limits that it did.

**24)** INA is accordingly entitled to equitable rescission of the Policy.

## SECOND CAUSE OF ACTION

**25)** INA repeats and realleges each and every allegation contained in Paragraphs 1 through 25 above as though fully set forth herein at length.

**26)** The Policy was voidable and/or voided ab initio because of said non-disclosure, concealment and misrepresentation, constituting a breach of the insured's duty of utmost good faith.

**27)** As the Policy was not in effect at the time of the drowning of Catherine Kinsella, the INA policy does not provide coverage.

## THIRD CAUSE OF ACTION

**28)** INA repeats and realleges each and every allegation contained in Paragraphs 1 through 27 above as though fully set forth herein at length.

**29)** Wyman Charter Corporation and/or its agents breached the Vessel License condition in the Policy that the SEA GENIE II "...shall not have on board more persons than which it is licensed..."

**30)** The breach of this express condition voids the Policy and/or materially increased the risk of loss under the Policy and/or allegedly contributed to the drowning of Catherine Kinsella.

**31)** By virtue of the breach of condition, the INA policy does not provide coverage.

## FOURTH CAUSE OF ACTION

**32)** INA repeats and realleges each and every allegation contained in Paragraphs 1 through 31 above as though fully set forth herein at length.

**33)** There is no coverage under the Policy for liabilities occurring as a result of an illegal and/or criminal voyage or adventure and/or the illegal and/or criminal acts of Wyman Charter Corporation and/or its agents and/or the certain defendants which allegedly caused or contributed to the death of Catherine Kinsella.

## FIFTH CAUSE OF ACTION

**34)** INA repeats and realleges each and every allegation contained in Paragraphs 1 through 33 above as though fully set forth herein at length.

**35)** There is no coverage under the Policy for liabilities occurring as a result of intentional and/or reckless and/or willful misconduct on the part of Wyman Charter Corporation and/or its agents and/or the certain defendants because the policy only provides coverage for fortuitous events and these acts constitute non-fortuitous events which allegedly caused or contributed to the death of Catherine Kinsella.

## SIXTH CAUSE OF ACTION

**36)** INA repeats and realleges each and every allegation contained in Paragraphs 1 through 35 above as though fully set forth herein at length.

**37)** INA states that to the extent that there is coverage available under the INA policy, which is denied, such coverage is subject to the terms, limitations, conditions and exclusions of the policy, including but not limited to the limit of liability and that said limit is eroded and/or reduced by the costs of defense, including attorney's fees.

## SEVENTH CAUSE OF ACTION

**38)** INA repeats and realleges each and every allegation contained in Paragraphs 1 through 37 above as though fully set forth herein at length.

**39)** INA states that to the extent that there is coverage available under the INA policy, which is denied, such coverage is subject to the terms, limitations, conditions and exclusions of the policy, including but not limited to the fact that the policy only provides coverage for Wyman Charter Corp.; and only provides said assured coverage in its capacity as owner of the insured vessel, the SEA GENIE, and not in any other capacity;

and does not provide coverage for any other entities or individuals, including the "Shore Defendants."

## EIGHTH CAUSE OF ACTION

**40)** INA repeats and realleges each and every allegation contained in Paragraphs 1 through 39 above as though fully set forth herein at length.

**41)** INA states that to the extent that there is coverage available under the INA policy, which is denied, such coverage is subject to the terms, limitations, conditions and exclusions of the policy, and that the policy does not provide coverage for punitive damages.

## NINTH CAUSE OF ACTION

**42)** INA repeats and realleges each and every allegation contained in Paragraphs 1 through 41 above as though fully set forth herein at length.

**43)** INA states that to the extent that there is coverage available under the INA policy, which is denied, the policy only provides indemnity cover and will only pay such sums as the Assured shall have become legally liable to pay and shall have paid.

## TENTH CAUSE OF ACTION

**44)** INA repeats and realleges each and every allegation contained in Paragraphs 1 through 43 above as though fully set forth herein at length.

**45)** As INA denies that there is insurance coverage under the Policy with respect to the July 22, 2001 incident on the SEA GENIE II, and claims have been made herein that there is such coverage, a present actual controversy exists with respect to the rights and obligations of the respective parties under the contract of insurance which requires a declaratory adjudication.

**46)** The facts in the underlying claim are clear and the controversy between the parties is ripe for determination of whether or not Wyman Charter Corporation and/or the certain defendants are insured under the terms, conditions and limits of the insurance Policy provided by plaintiff INA.

**WHEREFORE**, INSURANCE COMPANY OF NORTH AMERICA (INA) respectfully requests that his Court determine and adjudicate the rights and liabilities of the parties with respect to the subject policy of insurance, and that such judgment specify and declare that INA is under no duty or obligation to provide coverage with respect to the allegations of the Complaint herein and the complaint in the underlying lawsuit by Plaintiffs entitled Kinsella, et al. v. Wyman Charter Corp., et al., U.S. District Court for

- 13 -

the District of Massachusetts, C.A. No. 04-11615, together with costs and such other, further and different relief as the justice of the cause requires.

INSURANCE COMPANY OF NORTH AMERICA

By its Attorneys,

Date: May 9, 2005

David D. Dowd, BBO#132660
Curley & Curley, P.C.
27 School Street, Suite 600
Boston, MA 02108
(617) 523-2990

## Certificate of Service

I, David D. Dowd, hereby certify that on the date above written I served a true copy of the foregoing pleading by first class mail, postage prepaid, directed to:

Samuel M. Furgang, Esquire
Sugarman, Rogers, Barshak & Cohen, P.C.
101 Merrimac Street
Boston, MA 02114-4737

David E. Lurie, Esquire
Lurie & Krupp, LLP
One McKinley Square
Boston, MA 02109

Andrew V. Buchsbaum, Esquire
Friedman & James LLP
132 Nassau Street
New York, NY 10038

Thomas E. Clinton, Esquire
Clinton & Muzyka, P.C.
One Washington Mall, S. 1400
Boston, MA 02108

Peter G. Boylan, Esquire
Donovan & Hatem, LLP
World Trade Center
Two Seaport Lane, 8th Floor
Boston, MA 02210

Bertram E. Snyder, Esquire
Looney & Grossman, LLP
101 Arch Street
Boston, MA 02110

David D. Dowd

- 14 -

*Commercial Hull Policy*



To be attached to and form a part of Policy No. HU 20 03 81 _____ of The Insurance Company of

North America

    The terms and conditions of the following clauses are to be regarded as substituted for those of the policy form to which they are attached, the latter being hereby waived, except provisions required by law to be inserted in this Policy. All captions are inserted only for purposes of reference and shall not be used to interpret the clauses to which they apply.

**ASSURED**

This Policy insures Wyman Charter Corp. _____ 1
_____ 100 Breeds Hill Road _____ 2
_____ Hyannis, MA  02601 _____ hereinafter referred to as the Assured. 3

    If claim is made under this Policy by anyone other than the Named Assured, such person shall not be entitled to recover to a greater extent than 4
would the Named Assured, had claim been made by the Named Assured in this Policy. 5

This Company waives any right of subrogation against affiliated, subsidiary or interrelated companies of the Assured, provided that such waiver shall 6
not apply with respect to any loss, damage or expense against which such companies are insured. 7

**LOSS PAYEE**

Loss, if any, shall be payable to ___Assured_____ 8
_____ 9
_____ or order. 10

**TERM**

From the 10th _____ day of August _____ 2000 , ____ Noon, Eastern Standard _____ time.   11

To the  10th _____ day of August _____ 2001 , ____ Noon, Eastern Standard _____ time.   12

    Should the Vessel at the expiration of this Policy be at sea, or in distress, or at a port of refuge or of call, she shall, provided previous notice be 13
given to the Underwriters, be held covered at a pro rata monthly premium to her port of destination. 14

    In the event of payment by this Company for Total Loss of the Vessel this Policy shall thereupon automatically terminate and all premiums paid 15
hereunder shall be fully earned by this Company. 16

**VESSEL**

The Subject N  ·ter of this insurance is the Vessel 1970 50' Fbg/Dsl P/V - "SEA GENIE II" _____ 17
or by whatsoe\  name or names the said Vessel is or shall be called, which for purposes of this insurance shall consis  f and be limited to her hull, 18
launches, lifeboa\  , rafts, furniture, bunkers, stores, supplies, tackle, fittings, equipment, apparatus, machinery, boilers, refr. :rating machinery, insulation, 19
motor generators and other electrical machinery. 20

    In the event an  equipment or apparatus not owned by the Assured is installed for use on board the Vessel and the Assu. .d has assumed responsibility 21
therefor, it shall also be considered part of the Subject Matter and the aggregate value thereof shall be included in the Agreed Value. 22

    Notwithstanding the foregoing, cargo containers shall not be considered a part of the Subject Matter of this insurance. 23

    In the event that more than one vessel is insured by the policy to which these Clauses are attached, all of such Clauses shall apply as though a 24
separate policy had been issued with respect to each vessel. 25

**AMOUNT OF INSURANCE**

**AGREED VALUATION - RATE AND PREMIUM**

| AMOUNT INSURED HEREUNDER | RATE | PREMIUM | AGREED VALUATION | |
|---|---|---|---|---|
| $ 200,000. | Chg. % | $ 3,384. | $            200,000. | 26 |

**DEDUCTIBLE**

    Notwithstanding anything in this Policy to the contrary, there shall be deducted from the aggregate of all claims (including claims under the Sue and   27

Labor clause and claims under the Collision Liability clause) arising out of each separate accident, the sum of $_____ 5,000 _____, unless the 28
accident results in a Total Loss of the Vessel in which case this clause shall not apply. A recovery from other interests, however, shall not operate to 29
exclude claims under this Policy provided the aggregate of such claims arising out of one separate accident if unreduced by such recovery exceeds that 30
sum. For the purpose of this clause each accident shall be treated separately, but it is agreed that (a) a sequence of damages arising from the same 31
accident shall be treated as due to that accident and (b) all heavy weather damage which occurs during a single sea passage between two successive 32
ports shall be treated as though due to one accident. 33

**NAVIGATION**

_Warranted confined to New England Coastal waters including Nantucket and Vineyard Sounds, Massachusetts,_ 34
_Buzzards Bay, Massachusetts and Narragansett Bay, Rhode Island, not exceeding 20 miles offshore._ _____ 35
_____ 36
_____ 37

**CANCELLATION**

Either party may cancel this policy by giving ten days' notice in writing; if at the option of this Company pro rata rates, if at the request of the Assured 38
short rates, will be charged - and arrival. 39

MA-14916a Ptd. in U.S.A.

## COVERAGE

Touching the adventures and perils which this Company is contented to bear and take upon itself, they are of the waters named herein, fire, lightning, explosion on shipboard or elsewhere, earthquake, assailing thieves, jettisons, barratry of the master and mariners and all other like perils that shall come to the hurt, detriment or damage of the vessel named herein.   40 41 42

This insurance also covers loss of or damage to the vessel named herein directly caused by:   43

   Accidents in loading, discharging or handling cargo, or in bunkering;   44
   Accidents in going on or off, or while on drydocks, graving docks, ways, marine railways, gridirons or pontoons;   45
   Breakdown of motor generators or other electrical machinery and electrical connections thereto, bursting of boilers, breakage of shafts, or any   46
   latent defect in the machinery or hull (excluding the cost and expense of replacing or repairing the defective part);   47
   Breakdown of or accidents to nuclear installations or reactors not on board the vessel named herein;   48
   Contact with aircraft, rockets or similar missiles, or with any land conveyance;   49
   Negligence of charterers and/or repairers, provided such charterers and/or repairers are not assured(s) hereunder;   50
   Negligence of master, mariners, engineers or pilots;   51

provided such loss or damage has not resulted from want of due diligence by the Assured, the owners or managers of the vessel, or any of them.   52

This insurance also covers physical loss of or damage to the Vessel directly caused by governmental authorities acting for the public welfare to prevent   53
or mitigate a pollution hazard, or threat thereof, resulting directly from damage to the Vessel for which this Company is liable under this Policy, provided   54
such act of governmental authorities has not resulted from want of due diligence by the Assured, the Owners, or Managers of the Vessel or any   55
of them to prevent or mitigate such hazard or threat. Masters, Officers, Crew or Pilots are not to be considered Owners within the meaning of this clause   56
should they hold shares in the Vessel.   57

## GENERAL AVERAGE AND SALVAGE CHARGES

General average, salvage and special charges payable as provided in the contract of affreightment, or failing such provision, or there be no contract of   58
affreightment, payable in accordance with the laws and usages of the port of New York. Provided always that when an adjustment according to the laws   59
and usages of the port of destination is properly demanded by the owners of the cargo, general average shall be paid in accordance with same.   60

## COLLISION LIABILITY

In the event the vessel named herein and/or her tow, if any, shall come into collision with any other ship or vessel other than her tow, if any, and the   61
Assured in consequence of the vessel named herein being at fault shall become liable to pay and shall pay by way of damages to any other person or   62
persons any sum or sums in respect of such collision, this Company will pay its proportion of such sum or sums so paid as the amount insured hereunder   63
bears to the agreed valuation of the vessel named herein, provided always that this Company's liability in respect of any one such collision shall not   64
exceed the amount insured hereunder. And in cases where the liability of the vessel named herein has been contested or proceedings have been taken to   65
limit liability, with the consent in writing of this Company, this Company will also pay a like proportion of the costs which the assured shall thereby incur,   66
or be compelled to pay; but when both vessels are to blame, then, unless the liability of the owners of one or both such vessels becomes limited by law,   67
claims under this Collision Liability Clause shall be settled on the principle of cross-liabilities as if the owners of each vessel had been compelled to pay to   68
the owners of the other of such vessels such one-half or other proportion of the latter's damages as may have been properly allowed in ascertaining the   69
balance or sum payable by or to the assured in consequence of such collision.   70

Provided that this clause shall in no case extend to any sum which the Assured or Charterers may become liable to pay or shall pay in consequence of,   71
or with respect to:   72

(a)   removal or disposal of obstructions, wrecks or their cargoes under statutory powers or otherwise pursuant to law;   73

(b)   injury to real or personal property of every description;   74

(c)   the discharge, spillage, emission or leakage of oil, petroleum products, chemicals or other substances of any kind or description whatsoever;   75

(d)   cargo or other property on or the engagements of the vessel hereby insured;   76

(e)   loss of life, personal injury or illness.   77

   Provided further that   78

(1) exclusions (b) and (c) above shall not apply to injury to any other vessel with which the Vessel hereby insured is in collision or to property on such   79
other vessel except to the extent that such injury arises out of any action taken to avoid, minimize or remove any discharge, spillage, emission or leakage   80
described in (c), and   81

(2) in the event of any claim being made by Charterers under this Collision clause they shall not be entitled to recover in respect of any liability to   82
which the Owners of the Vessel hereby insured, if interested in this Policy at the time of the collision in question, would not be subject, nor to a greater   83
extent than the Shipowners would be entitled in such event to recover.   84

## SUE AND LABOR

In case of any loss or misfortune it shall be lawful and necessary for the Assured, their factors, servants and assigns, to sue, labor and travel for, in   85
and about the defense, safeguard and recovery of the vessel named herein, or any part thereof, without prejudice to this insurance, to the charges whereof   86
this Company will contribute as hereinafter provided. It is agreed that the acts of the Assured or this Company, or their agents, in recovering, saving and   87
preserving the property insured in case of disaster shall not be considered a waiver or an acceptance of an abandonment, nor as affirming or denying any   88
liability under this policy; but such acts shall be considered as done for the benefit of all concerned, and without prejudice to the rights of either party.   89

**PROPORTION OF LOSSES COVERED**

In the event of expenditure under the Sue and Labor Clause, this Company will pay the proportion of such expenses that the Amount Insured hereunder    90
bears to the Agreed Valuation of the vessel named herein, or that the Amount Insured hereunder, less loss and/or damage payable under this policy, bears    91
to the actual value of the salved vessel, whichever proportion shall be less.    92

When the contributory value of the vessel named herein is greater than the agreed valuation stated herein the liability of this Company for general    93
average contribution (except in respect of amount made good to the vessel) or salvage shall not exceed that proportion of the total contribution due from    94
the vessel that the amount insured hereunder bears to the contributory value; and if because of damage for which this Company is liable as particular    95
average the value of the vessel has been reduced for the purpose of contribution, the amount of the particular average claim under this policy shall be    96
deducted from the amount insured hereunder and this Company shall be liable only for the proportion which such net amount bears to the contributory    97
value.    98

With respect to physical loss or damage to the vessel named herein this Company shall be liable only for such proportion of such loss or damage as    99
the amount insured hereunder bears to the agreed valuation.    100

If claim for total loss is admitted under this policy and sue and labor expenses have been reasonably incurred in excess of any proceeds realized or    101
value recovered, the amount payable under this policy will be the proportion of such excess that the amount insured hereunder (without deduction for loss    102
or damage) bears to the agreed valuation or the sound value of the vessel named herein at the time of the accident, whichever value was greater.    103

In event of damage, cost of repairs to be paid without deduction of one-third, new for old.    104

**NOTIFICATION OF LOSS**

Warranted that in case of any casualty or loss which may result in a claim under this policy the Assured shall give this Company prompt notice thereof    105
and reasonable opportunity to be represented on a survey of the damage, each party to name a surveyor, which two surveyors shall proceed to draw    106
specifications as to the extent of the damage and the work required to make the damage good. If the two surveyors agree, such specifications shall be    107
binding on both this Company and the Assured, subject nevertheless to policy terms and conditions and the question of whether or not the disaster and    108
resulting loss or damage are covered by this policy. In the event the two surveyors cannot agree, they must select an umpire, and in the event they    109
cannot agree upon an umpire, either party hereto may apply to the United States District Court for the district in which the home port of the vessel named    110
herein is located for the appointment of an umpire, pursuant to the United States Arbitration Act. The decision of the umpire so appointed shall have the    111
same force and effect as the specifications aforesaid. When specifications have been drawn in either of the modes aforesaid, if the Company shall be    112
dissatisfied with the terms which the Assured may obtain for the repair of the damage as specified by said survey, then this Company may require the    113
surveyors or the umpire to submit the specifications prepared as aforesaid to such shipyard, repair men, boat builders and shipwrights, as may be selected    114
by such surveyors or the umpire, with a request for bids for such repairs. If after reception of such bids, the Assured shall elect to accept some other bid    115
than that of the lowest bidder, this Company shall be liable only for its proportion of so much of the sum actually expended to effect repairs specified by    116
the surveyors for its account as does not exceed said lowest bid. In no event, however, shall this Company respond for an amount in excess of its propor-    117
tion of the amount actually expended by the Assured effecting such repairs.    118

**PAYMENT OF LOSS**

In case of loss, such loss to be paid in thirty days after satisfactory proof of loss and interest shall have been made and presented to this Company,    119
(the amount of any indebtedness due this Company from the Assured or any other party interested in this policy being first deducted).    120

Upon making payment under this policy the Company shall be vested with all of the Assured's rights of recovery against any person, corporation,    121
vessel or interest and the Assured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights.    122

**GENERAL CONDITIONS**

Any agreement, contract or act, past or future, expressed or implied, by the Assured whereby any right or recovery of the Assured against any vessel,    123
person or corporation is released, decreased, transferred or lost which would, on payment of claim by this Company, belong to this Company but for    124
such agreement, contract or act shall render this policy null and void as to the amount of any such claim, but only to the extent and to the amount that    125
said agreement, contract or act releases, decreases, transfers, or causes the loss of any right of recovery of this Company, but the Company's right to    126
retain or recover the full premium shall not be affected.    127

This Company shall have the option of naming the attorneys who shall represent the Assured in the prosecution or defense of any litigation or    128
negotiations between the Assured and third parties concerning any claim, loss or interest covered by this policy, and this Company shall have the direction    129
of such litigation or negotiations. If the Assured shall fail or refute to settle any Claim as authorized by the Company, the liability of the Company to the    130
Assured shall be limited to the amount for which settlement could have been made.    131

It is a condition of this policy that no suit, action or proceeding for the recovery of any claim for physical loss of or damage to the vessel named    132
herein shall be maintainable in any court of law or equity unless the same be commenced within twelve (12) months next after the calendar date of the    133
happening of the physical loss or damage out of which the said claim arose. Provided, however, that if by the laws of the state within which this policy is    134
issued such limitation is invalid, then any such claim shall be void unless such action, suit or proceeding be commenced within the shortest limit of    135
time permitted, by the laws of such state, to be fixed herein.    136

It is a condition of this insurance that this Company Shall not be liable for unrepaired damage in addition to a total or constructive total loss.    137

No recovery for a constructive total loss shall be had hereunder unless the expense of recovering and repairing the vessel named herein shall exceed    138
the agreed valuation.    139

In ascertaining whether the vessel named herein is a constructive total loss the agreed valuation shall be taken as the repaired value, and nothing    140
in respect of the damaged or break up value of the vessel or wreck shall be taken into account.    141

In the event of total or constructive total loss, no claim to be made by this Company for freight, whether notice of abandonment has been given or not.     142

Any deviation beyond the navigation limits provided herein shall void this policy; but on the return of the vessel in a seaworthy condition, within the     143
limits herein provided, this policy shall reattach and continue in full force and effect, but in no case beyond the termination of this policy.     144

Warranted by the Assured that there shall be no other insurance covering physical loss or damage to the vessel named herein other than that which     145
is provided in lines 40 through 57 hereof but permission is granted to carry other insurance of whatever kind or nature not covered by this policy or     146
additional amounts of insurance of the kind or nature covered by this policy other than as provided in lines 40 through 57.     147

This insurance shall be void in case this policy or the vessel named herein, shall be sold, assigned, transferred or pledged, or if there be any change     148
of management or charter of the vessel, without the previous consent in writing of this Company.     149

Notwithstanding anything to the contrary contained in this policy, this insurance is warranted free from any claim for loss, damage or expense     150
caused by or resulting from capture, seizure, arrest, restraint or detainment or the consequences thereof or of any attempt thereat, or any taking of the     151
vessel, by requisition or otherwise, whether in time of peace or war and whether lawful or otherwise; also from all consequences of hostilities or warlike     152
operations (whether there be a declaration of war or not), but the foregoing shall not exclude collision or contact with aircraft, rockets or similar missiles,     153
or with any fixed or floating object (other than a mine or torpedo), stranding, heavy weather, fire or explosion unless caused directly (and independently     154
of the nature of the voyage or service which the vessel concerned or, in the case of a collision, any other vessel involved therein, is performing) by a     155
hostile act by or against a belligerent power, and for the purpose of this warranty "power" includes any authority maintaining naval, military or air forces     156
in association with a power; also warranted free, whether in time of peace or war, from all loss, damage or expense caused by any weapon of war employing     157
atomic or nuclear fission and/or fusion or other reaction or radioactive force or matter.     158

Further warranted free from the consequences of civil war, revolution, rebellion, insurrection, or civil strife arising therefrom, or piracy.     159

If war risks are hereafter insured by endorsement on the policy, such endorsement shall supersede the above warranty only to the extent that their     160
terms are inconsistent and only while such war risk endorsement remains in force.     161

Warranted free of loss or damage in consequence of strikes, lockouts, political or labor disturbances, civil commotions, riots, martial law, military or     162
usurped power or malicious acts.     163

# Protection and
# Indemnity Policy

ACE USA



To be attached to and form a part of Policy No. HU __20 03 81__ _____ of the __Insurance Company of North America__

The terms and conditions of the following clauses are to be regarded as substituted for those of the policy form to which they are attached, the latter being hereby waived, except provisions required by law to be inserted in this Policy. All captions are inserted only for purposes of reference and shall not be used to interpret the clauses to which they apply.

### ASSURED

This Policy insures __Wyman Charter Corp.__      1
     __100 Breeds Hill Road__      2
     __Hyannis, MA  02601__      hereinafter referred to as Assured.      3

### LOSS PAYEE

Loss, if any, shall be payable to __Assured__      4
     5
     or order.      6

### TERM

From the __10th__ _____ day of __August__ _____ __2000__, __Noon, Eastern Standard__ _____ time      7

to the __10th__ _____ day of __August__ _____ __2001__, __Noon, Eastern Standard__ _____ time.      8

Should the Vessel at the expiration of this Policy be at sea, or in distress, or at a port of refuge or call, she shall, provided previous notice be given to this Company, be held covered at a pro rata monthly premium to her port of destination.      9 / 10

### VESSEL

The Subject Matter of this insurance is the Vessel __"SEA GENIE II"__ or by whatsoever name or names the said vessel is or shall be called.      11

In the event that more than one vessel is insured by the Policy to which these Clauses are attached, all of such Clauses shall apply as though a separate Policy had been issued with respect to each vessel.      12 / 13

**AMOUNT INSURED HEREUNDER** $ __1,000,000.__ _____ **PREMIUM** $ __4,230.__      14

### COVERAGE

In consideration of the premium and subject to the warranties, terms and conditions herein mentioned, this Company hereby undertakes to pay up to the amount hereby insured and in conformity with lines 4, 5 and 6 hereof, such sums as the Assured, as owner of the insured vessel shall have become legally liable to pay and shall have paid on account of:      15 / 16 / 17

Loss of life of, or injury to, or illness of, any person;      18

Hospital, medical, or other expenses necessarily and reasonably incurred in respect of loss of life of, injury to, or illness of any member of the crew of the vessel named herein;      19 / 20

Loss of, or damage to, or expense in connection with any fixed or movable object or property of whatever nature;      21

Costs or expenses of, or incidental to, the removal of the wreck of the vessel named herein when such removal is compulsory by law; provided, however, that there shall be deducted from such claim the value of any salvage recovered from the wreck by the Assured;      22 / 23

Fines and penalties, including expenses reasonably incurred in attempting to obtain the remission or mitigation of same, for the violation of any of the laws of the United States, or of any state thereof, or of any foreign country; provided, however, that this Company shall not be liable to indemnify the Assured against any such fines or penalties resulting directly or indirectly from the failure, neglect, or default of the Assured or his managing officer or managing agents to exercise the highest degree of diligence to prevent a violation of any such laws;      24 / 25 / 26 / 27

Costs and expenses, incurred with this Company's approval, of investigating and/or defending any claim or suit against the Assured arising out of a liability or an alleged liability of the Assured covered by this policy.      28 / 29

### EXCLUSIONS AND DEDUCTIBLES

Notwithstanding the foregoing this Company will not pay for:      30

The first $ __1,000.__ _____ of claims covered by lines 18, 19, 20, 28 and 29 nor for the first $ __5,000.__ _____      31
of claims covered by any other part of this policy, but, in no event shall the deductible exceed $ __5,000.__ each occurrence.      32
(For the purpose of this clause, each occurrence shall be treated seperately, but a series of claims hereunder arising from the same occurrence shall be treated as due to that occurrence.);      33 / 34

Any loss, damage, expense or claim collectible under the __Hull Policy Form MA-14916a__      35
form of policy, whether or not the vessel named herein is actually covered by such insurance and regardless of the amount thereof;      36

Loss of, or damage sustained by the vessel named herein or her tackle, apparel, furniture, boats, fittings, equipment, stores, fuels, provisions or appurtenances;      37 / 38

Loss resulting from cancellation of charters, non-collectbility of freight, bad debts, insolvency of agents or others, salvage, general average, detention, loss of use or demurrage of the vessel named herein;      39 / 40

**EXCLUSIONS (Continued)**

Any loss damage expense or claim with respect to any vessel or craft in tow of the vessel named herein and/or cargo thereon; provided this exclusion shall not   41
apply to salvage services rendered in an emergency to a ship or vessel in distress, nor to loss of life and/or injury to, or illness of any person;   42

Any claim for loss of, damage to, or expense in respect of cargo on board the vessel named herein;   43

Any claim arising directly or indirectly under the Longshoremen's and Harbor Workers' Compensation Act or any workmen's compensation act of any state or   44
nation;   45

Any liability assumed by the Assured beyond that imposed by law; provided, however, that if by agreement, or otherwise, the Assured's legal liability is   46
lessened, then this Company shall receive the benefit of such lessened liability;   47

1. Any obligation to any country or political subdivision thereof for the costs of clean-up of oil or other substances;   48

2. Any judgment obtained against the Assured for the costs of clean-up of oil or other substances by a third party requiring the Assured to indemnify such   49
   third party against sums paid to any country or political subdivision thereof;   50

3. Any costs or expense incurred by the Assured in investigating or defending any claim or suit arising out of any liability or alleged liability occurring in   51
   connection with Paragraphs 1 or 2 above;   52

4. Further, this Policy does not insure any sums expended voluntarily by the Assured for the costs of clean-up of oil or other substances;   53

Neither shall this Policy insure against any fine or penalty of any kind or nature whatsoever levied against the Assured in consequence of actual or potential   54
discharge, spilling, leaking, pumping, pouring, emitting, emptying, or dumping of oil or other substances;   55

Any loss, damage or expense sustained by reason of any taking of the vessel by requisition or otherwise, civil war, revolution, rebellion, or insurrection,   56
or civil strife arising therefrom, capture, seizure, arrest, restraint or detainment, or the consequences thereof or of any attempt thereat; or sustained   57
in consequence of military, naval or air action by force of arms; or sustained or caused by mines or torpedoes or other missiles or engines of war,   58
whether of enemy or friendly origin; or sustained or caused by any weapon of war employing atomic fission or atomic fusion or radioactive material; or   59
sustained in consequence of placing the vessel in jeopardy as an act or measure of war taken in the actual process of a military engagement, including   60
embarking or disembarking troops or material of war in the immediate zone of such engagement; and any such loss, damage and expense shall be   61
excluded from this Policy without regard to whether the Assured's liability in respect thereof is based on negligence or otherwise, and whether in time   62
of peace or war.   63

## GENERAL CONDITIONS

Warranted that in the event of any occurrence which could result in a claim under this policy the Assured promptly will notify this Company upon   64
receiving notice thereof and forward to this Company as soon as practicable all communications, processes, pleadings or other legal papers or   65
documents relating to such occurrence.   66

Whenever required by this Company, the Assured shall aid in securing information and evidence and in obtaining witnesses and shall cooperate with   67
this Company in the defense of any claim or suit or in the appeal from any judgment.   68

This Company shall have the option of naming the attorneys who shall represent the Assured in the prosecution or defense of any litigation or   69
negotiations between the Assured and third parties concerning any claim covered by this policy, and shall have the direction of such litigation   70
or negotiations. If the Assured shall fail or refuse to settle any claim : authorized by this Company, the liability of this Company shall be limited to   71
the amount for which settlement could have been made. The Assured shall at the option of this Company permit this Company to conduct with an   72
attorney of this Company's selection, at this Company's cost and expense and under its exclusive control, a proceeding in the Assured's name to limit   73
the Assured's liability to the extent, and in the manner provided by the present and any future statutes relative to the limitation of a shipowner's liability.   74

Liability hereunder in respect of loss, damage, costs, fees, expenses or claims arising out of or in consequence of any one occurrence is limited to   75
the amount hereby insured. (For the purpose of this clause each occurrence shall be treated separately, but a series of claims hereunder arising   76
from the same occurrence shall be treated as due to that occurrence.)   77

The Assured shall not make any admission of liability, either before or after any occurrence which could result in a claim for which this Company may   78
be liable. The Assured shall not interfere in any negotiations of this Company, for settlement of any legal proceedings in respect of any occurrence   79
for which this Company may be liable under this policy; provided, however, that in respect of any occurrence likely to give rise to a claim under this   80
policy, the Assured is obligated to and shall take such steps to protect his and/or the Company's interests as would reasonably be taken in the absence   81
of this or similar insurance.   82

Upon making payment under this policy this Company shall be vested with all of the Assured's rights of recovery against any person, corporation, vessel   83
or interest and the Assured shall execute and deliver such instruments and papers as this Company shall require and do whatever else is necessary to   84
secure such rights.   85

No action shall lie against this Company for the recovery of any loss sustained by the Assured unless such action is brought within one year after   86
the entry of any final judgment or decree in any litigation against the Assured, or in the event of a claim without the entry of such final judgment or   87
decree, unless such action is brought within one year from the date of the payment of such claim.   88

No claim or demand against this Company under this policy shall be assigned or transferred, and no person shall acquire any right against this   89
Company by virtue of this insurance without the express consent of this Company.   90

It is expressly understood and agreed if and when the Assured has any interest other than as a shipowner in the vessel named herein, in no event   91
shall this Company be liable hereunder to any greater extent than if the Assured were the sole owner and entitled to petition for limitation of   92
liability in accordance with present and future law.   93

Where the Assured is, irrespective of this policy, covered or protected against any loss, or claim which would otherwise have been paid by this   94
Company, under this policy, there shall be no contribution or participation by this Company on the basis of excess, contributing, deficiency, concurrent,   95
or double insurance or otherwise.   96

The navigation limits in the policy covering the hull, machinery, etc. of the vessel named herein are considered incorporated herein.   97

This insurance shall be void in case the vessel named herein, or any part thereof, shall be sold, transferred or mortgaged, or if there be any change   98
of management or charter of the vessel, or if this policy be assigned or pledged, without the previous consent in writing of this Company.   99

Either party may cancel this policy by giving ten days' notice in writing; if at the option of this Company pro rata rates, if at the request of the Assured   100
short rates, will be charged - and arrival.   101

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **Wyman Charter Corp.** | | | **FORM A** |
| Policy Symbol **HU** | Policy Number **20 03 81** | Policy Period **08/10/2000 — 08/10/2001** | Effective Date of Endorsement **08/10/2001** |
| Name of Insurance Company (Issued By) **Insurance Company of North America** | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

CAPTIONS        Captions herein are for purposes of reference only and shall not be used to interpret clauses to which they refer.

## SPECIAL CONDITIONS

1.   VESSEL OPERATOR WARRANTY   Warranted that while the insured vessel is carrying up to **40** passengers for hire, there shall be on board and in charge a person who holds a valid license issued by the United States Coast Guard that meets the legal requirements as operator of the vessel insured.

2.   VESSEL LICENSE WARRANTY   Warranted the insured vessel be properly licensed in accordance with the laws of the United States, and while being used for hire the vessel shall not have on board more persons than which it is licensed, and the vessel shall not be navigated beyond those waters permitted by the license.

3.   DIVING EXCLUSION   Warranted that this insurance shall not extended to insure the Assured's liability to any person involved in any type of diving operation from the insured vessel.

4.   CREW WARRANTY   In consideration of the premium charged, it . warranted that there shall not be more than **3** crew members employed aboard the insured vessel at any one time.

      Further, warranted that in the event additional crew are to be employed, the Assured shall give prior notice to this Company and pay such additional premium as is required. If the Assured shall fail to give such prior notice and at any time of loss in respect to crew there are more crew employed, this insurance shall respond only in the proportion that the stated number of crew bears to the number on board at the time of the accident.

5.   LAY UP WARRANTY   Warranted that the insured vessel shall be laid up and out of commission from November 1 to May 1.

6.   MINIMUM EARNED PREMIUM   Notwithstanding anything in this policy to the contrary, it is understood and agreed that in event of cancellation of this policy by the Assured, the return premium calculation per policy conditions is subject to a minimum earned premium of **$3,000.**

7.   POLLUTION LIABILITY EXCLUSION    The coverage provided by the Protection and Indemnity insurance of this policy shall not indemnify the Assured against any sum(s) paid, not insure against any liability, with respect to any loss, damage, cost, liability, expense, fine or penalty of any kind or nature whatsoever, and whether statutory or otherwise incurred by or imposed on the Assured, directly or indirectly, in consequence of, or with respect to, the actual or potential discharge, emission, spillage or leakage upon or into the seas, waters, land or air, of oil, petroleum products, chemicals or other substances of any kind or nature whatsoever.

**PART OF POLICY NO. HU 20 03 81**

**ISSUED TO**   Wyman Charter Corp.

**EFFECTIVE:**   08/10/2000

## AIMU NUCLEAR EXCLUSION CLAUSE
**HULL**                    (April 1, 1991)

Notwithstanding anything to the contrary herein, it is hereby understood and agreed that this policy shall not apply to any loss, damage, liability or expense due to or arising out of, whether directly or indirectly, nuclear reaction, radiation, or radioactive contamination, regardless of how it was caused. However, subject to all provisions of this policy, if this policy insures against fire, than direct physical damage to the property insured located within the United States, or any territory of the United States or Puerto Rico by fire directly caused by the above excluded perils, is insured, provided that the nuclear reaction, radiation, or radioactive contamination was not caused, whether directly or indirectly, by any of the perils excluded by the F.C. & S. Warranty of this policy.

Nothing in this endorsement shall be construed to cover any loss, damage, liability or expense caused by nuclear reaction, radiation or radioactive contamination arising directly or indirectly from the fire mentioned above.

**ALL OTHER TERMS, CONDITIONS AND VALUATIONS REMAINING UNCHANGED**

MA-4U87a  Ptd. in U.S.A.