## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

---------------------------------------------------------------------

JOSEPH A. KINSELLA, As Administrator and Personal )
representative Of The Estate Of Katherine Kinsella, And )
JOSEPH A. KINSELLA, Individually And On Behalf Of )
All Distributees Of Katherine Kinsella, Deceased, )

                                       Plaintiffs, )

                        v. )

INSURANCE COMPANY OF NORTH AMERICA )
GENERAL STAR INDEMNITY COMPANY, )
FIREMAN'S FUND INSURANCE COMPANY, )
WYMAN CHARTER CORP., MICHAEL P. )
WYMAN, JOSEPH JAY SHORE, CORD MITCHELL )
SHORE, CARALYN SHORE, AND TOAD HALL CORP.,)
                                           )

                        Defendants. )

---------------------------------------------------------------------

**CIVIL ACTION NO.**
**05-10232-NMG**

**(JUDGE NATHANIEL M.**
**GORTON)**

**ANSWER**

       Defendant, Fireman's Fund Insurance Company ("FFIC"), by and through its attorneys,

MCROBERTS, ROBERTS & RAINER, L.L.P. and RIVKIN RADLER LLP, as and for its

Answer to the Complaint, states as follows:

### THE NATURE OF ACTION

       1.     FFIC denies having knowledge or information sufficient to form a belief as to the

truth of the allegations contained in paragraph no. "1" of the Complaint.

### JURISDICTION AND VENUE

       2.     FFIC denies each and every allegation contained in paragraph no. "2" of the

Complaint and refers all questions of law to the Court.

       3.     FFIC denies each and every allegation contained in paragraph no. "3" of the

Complaint and refers all questions of law to the Court.

4.    FFIC denies each and every allegation contained in paragraph no. "4" of the Complaint and refers all questions of law to the Court.

## **THE PARTIES**

5.    FFIC denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph no. "5" of the Complaint.

6.    FFIC denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph no. "6" of the Complaint.

7.    FFIC denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph no. "7" of the Complaint.

8.    FFIC denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph no. "8" of the Complaint.

9.    FFIC denies each and every allegation contained in paragraph no. "9" of the Complaint and states that its principal place of business is California.

10.    FFIC denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph no. "10" of the Complaint.

11.    FFIC denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph no. "11" of the Complaint.

12.    FFIC denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph no. "12" of the Complaint.

13.    FFIC denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph no. "13" of the Complaint.

14.    FFIC denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph no. "14" of the Complaint.

15.    FFIC denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph no. "15" of the Complaint.

### THE ALLEGED ACCIDENT

16.    FFIC denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph no. "16" of the Complaint.

17.    FFIC denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph no. "17" of the Complaint.

18.    FFIC denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph no. "18" of the Complaint.

19.    FFIC denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph no. "19" of the Complaint.

20.    FFIC denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph no. "20" of the Complaint.

21.    FFIC denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph no. "21" of the Complaint.

22.    FFIC denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph no. "22" of the Complaint.

### THE UNDERLYING ACTION (LAWSUIT)

23.    FFIC denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph no. "23" of the Complaint.

24.    FFIC denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph no. "24" of the Complaint.

## THE INSURANCE POLICIES

25.    FFIC denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph no. "25" of the Complaint.

26.    FFIC denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph no. "26" of the Complaint.

27.    FFIC admits the allegations contained in paragraph no. "27" of the Complaint.

## ANSWERING THE FIRST CAUSE OF
## ACTION FOR DECLARATORY JUDGMENT

28.    FFIC repeats, reiterates and realleges its responses to the allegations contained in paragraphs nos. "1" through "27" of the Complaint as though same were more fully set forth herein.

29.    FFIC denies each and every allegation contained in paragraph no. "29" of the Complaint to the extent they relate to FFIC policy No. XYZ-000-8453-5806 and denies having knowledge or information sufficient to form a belief as to the remaining allegations contained in paragraph no. "29" of the Complaint.   A copy of FFIC policy No. XYZ-000-8453-5806 is annexed hereto as Exhibit "A."

30.    FFIC denies each and every allegation contained in paragraph no. "30" of the Complaint to the extent they relate to FFIC policy No. XYZ-000-8453-5806 and denies having knowledge or information sufficient to form a belief as to the remaining allegations contained in paragraph no. "30" of the Complaint.

31.    FFIC denies having knowledge or information sufficient to form a belief as to the allegations contained in paragraph no. "31" of the Complaint except admits that it received a

letter from Barron & Stadfeld, alleged attorneys for defendant Toad Hall Corp., on May 1, 2003, which letter speaks for itself.

32.    FFIC denies having knowledge or information sufficient to form a belief as to the allegations contained in paragraph no. "31" of the Complaint except admits that it has no obligation to defend and/or indemnify the named insureds to the alleged policy and has so informed its insureds. A copy of FFIC's reservation of rights is annexed hereto as Exhibit "B."

33.    FFIC denies each and every allegation contained in paragraph no. "33" of the Complaint and refers all questions of law to the Court.

34.    The allegations asserted in paragraph no. "34" do not require a response.

35.    FFIC denies each and every allegation contained in paragraph no. "35" of the Complaint and refers all questions of law to the Court.

**AFFIRMATIVE DEFENSES**

**FIRST AFFIRMATIVE DEFENSE**

Plaintiff's Complaint and each allegation contained therein fails to state facts sufficient to constitute a cause of action or claim against FFIC upon which relief can be granted.

**SECOND AFFIRMATIVE DEFENSE**

Plaintiff's Complaint fails to set forth facts which would give rise to a claim under the insurance contracts allegedly issued by FFIC.

**THIRD AFFIRMATIVE DEFENSE**

The claims asserted in Plaintiff's Complaint are barred by Massachusetts' direct action statute, M.G.L. c.214, §3(9).

## FOURTH AFFIRMATIVE DEFENSE

FFIC is not liable under the alleged FFIC insurance contracts to the extent that there has been a failure on the part of FFIC's insureds to perform or comply with all of the obligations or conditions under the insurance contracts allegedly issued by FFIC, including, but not limited to, the notice requirements.

## FIFTH AFFIRMATIVE DEFENSE

FFIC has no obligation under the alleged FFIC insurance contracts to indemnify against any punitive damages that may be imposed.

## SIXTH AFFIRMATIVE DEFENSE

FFIC is not liable under the alleged FFIC insurance contracts to the extent that it would be contrary to public policy to grant the relief sought by Plaintiff.

## SEVENTH AFFIRMATIVE DEFENSE

FFIC is not liable under the alleged FFIC insurance contracts in the absence of an "occurrence" as the term is defined in the FFIC insurance contracts and any insurance contracts to which the FFIC insurance contracts follow form.

## EIGHTH AFFIRMATIVE DEFENSE

FFIC is not liable under the alleged FFIC insurance contracts to the extent that the watercraft exclusion and employment practices exclusion contained in the alleged FFIC insurance contracts preclude coverage.

## NINTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because there is no actual and justiciable controversy existing between the parties.

### TENTH AFFIRMATIVE DEFENSE

The excess insurance contracts allegedly issued by FFIC are in excess of and shall not contribute with any other insurance.

### ELEVENTH AFFIRMATIVE DEFENSE

The alleged FFIC insurance contracts contain certain limits of liability, including, but not limited to, an occurrence limit and an aggregate limit.  In the event that FFIC is liable under the alleged FFIC insurance contracts, FFIC's liability is restricted to such limits.

### TWELFTH AFFIRMATIVE DEFENSE

FFIC is not liable under the alleged FFIC insurance contracts to the extent that the exclusions, terms, conditions and limitations contained in the alleged FFIC insurance contracts and/or the insurance contracts to which the alleged FFIC insurance contracts follow form apply to bar coverage, including the General Star primary policy.  A copy of the General Star primary policy, policy no. IMA641349A, is annexed hereto as Exhibit "C."

### THIRTEENTH AFFIRMATIVE DEFENSE

Coverage under the alleged FFIC insurance contracts is provided only to the named insured or any additional insureds.  To the extent Plaintiff's Complaint asserts claims for recovery of losses due to the acts and/or omissions of entities and/or persons who do not qualify as insureds under the terms of the insurance contracts allegedly issued by FFIC, those claims are barred.

### FOURTEENTH AFFIRMATIVE DEFENSE

Coverage under the alleged FFIC insurance contracts is not provided for any acts and/or omissions made by directors, officers or employees of the Named Insured that are not in furtherance of the Named Insured's work.

## FIFTEENTH AFFIRMATIVE DEFENSE

FFIC is not liable under the alleged FFIC insurance contracts to the extent that facts or other information relevant to the issuance of the alleged FFIC insurance contracts or handling of the claims were not disclosed, were misrepresented and/or were concealed from FFIC.

## SIXTEENTH AFFIRMATIVE DEFENSE

The alleged FFIC insurance contracts do not provide coverage until any and all underlying limits, deductibles or self-insured retentions have been fully and properly exhausted by payment of judgments or settlements. The alleged FFIC insurance contracts do not "drop-down" in the event of an insolvency of any other insurers, or the inability to prove the existence and issuance or the terms and conditions of the underlying insurance contracts issued by or allegedly issued by the other insurers.

## SEVENTEENTH AFFIRMATIVE DEFENSE

The alleged FFIC insurance contracts do not provide coverage for liabilities arising from the wrongful and/or intentional acts of any insured.

## EIGHTEENTH AFFIRMATIVE DEFENSE

FFIC adopts and incorporates by reference all other applicable affirmative defenses set forth by all alleged insurer defendants which are not specifically set forth herein.

## NINETEENTH AFFIRMATIVE DEFENSE

Plaintiff has failed to set forth its claims with sufficient particularity as to enable FFIC to determine all applicable affirmative defenses. FFIC therefore reserves its right to assert any additional defenses that may be applicable, to withdraw any defenses that are found to be inapplicable and to more specifically assert affirmative defenses once the precise nature of the claims are ascertained through discovery and further investigation.

## ANSWER TO ANY CROSS-CLAIMS

FFIC denies the allegations of any and all other defendants which are or may be directed against FFIC, and denies that it is liable to any party who has filed, or may file, a cross-claim against FFIC, and incorporates all of FFIC's affirmative defenses as if fully set forth herein.

Dated: May 24, 2005

Yours, etc.

RIVKIN RADLER LLP

By: _____
GARY D. CENTOLA
FRANK VALVERDE
Attorneys for Defendant
Fireman's Fund Insurance Co.
926 EAB Plaza
Uniondale, NY 11556-0926
(516) 357-3000

MCROBERTS, ROBERTS & RAINER, L.L.P.

By: _____
MARK W. ROBERTS, BBO #_____
Attorneys for Defendant
Fireman's Fund Insurance Co.
Exchange Place
53 State Street
Boston, MA 02139

TO:    David E. Lurie, Esq.
Lurie & Krupp, LLP
Attorneys for Plaintiffs
One McKinley Square
Boston, MA 02109
(617) 367-1970

Andrew V. Buchsbaum, Esq.
Friedman & James LLP
Attorneys for Plaintiffs
132 Nassau Street
New York, NY  10038
(212) 233-9385

Paul G. Boylan, Esq.
Donovan Hatem LLP
Attorneys For Toad Hall Corp.
and the Shore defendants
Two Seaport Lane
Boston, MA 02210
(617) 406-4513

Bertram E. Snyder, Esq.
Looney & Grossman LLP
Attorneys for defendant Wyman Charter Corp.
101 Arch Street
Boston, MA 12108

Samuel M. Furgang, Esq.
Sugarman, Rogers, Barshak & Cohen, P.C.
Attorneys for defendant General Star Indemnity Co,
101 Merrimac Street
Boston, MA 02114

Thomas E. Clinton, Esq.
Clinton & Muzyka, P.C.
Attorneys for defendant Michael P. Wyman
One Washington Mall, Suite 1400
Boston, MA 02108

David E. Dowd, Esq.
Curley & Curley, P.C.
Attorneys for defendant Insurance
Company of North America
27 School Street, Suite 600
Boston, MA 02108

1855603 v1

**Declarations**                                            THE FUND UMBRELLA®

POLICY NUMBER: **XYZ-000-8453-5806**          FIREMAN'S FUND INSURANCE COMPANIES

POLICY PERIOD: FROM **05/20/01**   TO **05/20/02**     Coverage is provided
(12:01 A.M. Standard time at the address        in the following
of the Named Insured as stated herein)          company, a stock company.

                                              **18 THE AMERICAN INSURANCE COMPANY**
NAMED INSURED AND MAILING ADDRESS:
**HARBOR PARKING**
**.1418 COMMONWEALTH AVE**
**WEST NEWTON, MA    02165**

In return for the payment of the premium, and subject to all the terms of this
policy, we agree with you to provide the insurance as stated in this policy.

**LIMITS OF INSURANCE**
**$5,000,000**  Each Occurrence          **$5,000,000**  Aggregate

**PREMIUM**

Basis of premium:   **Flat charge**

Advance Premium: **$3,750**     Annual Minimum Premium:  **$3,750**

**SCHEDULE OF PRIMARY INSURANCE**

This schedule is described within Form No. 178300-06-92 which forms a part of
this policy's declarations.

Endorsements attached to and forming a part of this policy at inception:
  178724 03 98
  178726 09 99
  178753 03 98
  178784 03 98
  178819 03 98

| Date of Issue: 06/06/2001 | Countersignature of Authorized Agent: |
|---|---|

This declarations page is issued in conjunction with and forms a part of
Policy Form 5300 03-1998.

178300-06-92              SCHEDULE OF PRIMARY INSURANCE

The schedule of Primary Insurance is completed to read as follows:

---

COMMERCIAL GENERAL LIABILITY

  Company:        GENERAL STAR NATIONAL INSURANCE COMPANY
  Policy No:      AS ASSIGNED BY COMPANY
  Expiration Date: 05/20/2002
                                    LIMITS OF LIABILITY

  General Aggregate Limit
    (Other Than Products-Completed Operations)     $2,000,000
  Products-Completed Operations Aggregate Limit    $2,000,000
                   Each Occurrence Limit    $1,000,000

---

AUTOMOBILE LIABILITY

  Company:        COMMERCIAL UNION INSURANCE COMPANY
  Policy No:      AS ASSIGNED BY COMPANY
  Expiration Date: 05/20/2002
                                      LIMITS OF LIABILITY

  Bodily Injury and Property Damage
              Combined Single Limit    $1,000,000  Any One Accident

---

EMPLOYER'S LIABILITY

  Company:        LUMBERMENS MUTUAL CASUALTY COMPANY
  Policy No:      R/O 3BY008324-00
  Expiration Date: 07/18/2002
                                      LIMITS OF LIABILITY

              Bodily Injury by Accident    $100,000  Each Accident
              Bodily Injury by Disease     $500,000  Policy Limit
              Bodily Injury by Disease     $100,000  Each Employee

---

GARAGE LIABILITY

  Company:        COMMERCIAL UNION INSURANCE COMPANY
  Policy No:      R/O CBR630574
  Expiration Date: 04/30/2002
                                      LIMITS OF LIABILITY

  Each Occurrence Limit                          $1,000,000
  Aggregate Limit                                $1,000,000

### EXCESS AND SPECIAL RISK UNDERWRITING SUMMARY

Branch:      New Jersey Field Office              U/W: ROBERT H HUNTER
Producer:    SOVEREIGN EXCESS, INC.               New:    Renewal: X

### CUSTOMER INFORMATION:

Name:        HARBOR PARKING
Address:     1418 COMMONWEALTH AVE
             22ND & LEHIGH
City:        WEST NEWTON                State: MA    Zip Code: 02165

Submission #:  00084535806        Trans. #: 1
Subm. Status:  EXPIRED

### E&SR QUOTE/ISSUANCE DETAIL:

E&SR Form:          XYZ                    Pol/Subm #: XYZ 00084535806
Policy Term:        05/20/2001      To:   05/20/2002
Limits:             $5,000,000 Occ         $5,000,000 Agg
Attachment Point:   Primary
Policy Premium:     $3,750                 Commission:  17.50%
S.I.R.:             NIL                     Audit Basis:

First Knock:              Excess of Loss:           Pro Rata:

Facultative Description:

### OPERATIONS/EXPOSURE/ANALYSIS & EVALUATION:

3 PARKING LOTS USED BY THE PUBLIC IN HYANNIS , MA FOR SHORT TERM,
WHILE THE CUSTOMERS VISIT THE ISLANDS. THEY PROVIDE A SHUTTLE SREVICE
TO THE BOAT DOCK ON THE WATERFRONT. SIC CODE-7521

Customer Segment: Other

Business Development Unit: New Jersey

Risk ID: X33          Description: AUTO REPAIR, SERVICES & GARAGES

SIC Code: 7521        Description: Automobile parking

Governing Class Name:
    PARKING - PUBLIC - OPEN AIR
GL Class Code: 46604-0         Attachment Point Code:
GL Hazard Symbol: C            PL Hazard Symbol: --      Pollution Group: II
Exposure Base: Sales
Total Exposure: 100,000

Vehicle Use:
ONE PRIVATE PASSENGER VEHICLE AND ONE BUS. THE BUS IS USED TO
TRANSPORT CUSTOMERS FROM THE LOT TO THE FERRY DOCK. THE RADIUS IS LESS
THAN 10 MILES AND THE BUS TRAVELS ON LOCAL STREETS WITHIN THE TOWN

Aircraft:            Watercraft:           Professional Exposures: N
Describe any Aircraft/Watercraft exposures (owned or non-owned) or
any Professional exposures:

Loss History:
  NO LOSSES X OF 10,000

**ENDORSEMENTS:**

| | |
|---|---|
| 178724 03 98 | CARE, CUSTODY OR CONTROL OF REAL AND PERSONAL PROPERTY EXCLUSION |
| 178726 09 99 | CONTINUOUS OR PROGRESSIVE INJURY, DAMAGE OR OFFENSE LIMITATION - COVERAGE B |
| 178753 03 98 | EMPLOYMENT PRACTICES EXCLUSION - COVERAGE A |
| 178784 03 98 | PERSONAL INJURY LIMITATION - COVERAGE B |
| 178819 03 98 | WATERCRAFT EXCLUSION |

**PRIMARY INSURANCE:**

Primary Aggregate:
Per Project:
POLICY FORM: ISO OCC 85 OR AFTER          Per Location:

Other:

If Umbrella/Straight Excess, list the primary restrictions or extensions:
If High Excess, list the Lead Umbrella terms/conditions/exclusions:

Comments/Additional Restrictions to E&SR Policy:

COVERAGE          COMPANY                LIMIT

Authorized Signature:                              Date:



001839A    EPI    03    EFEG.P150.A07G001    M                                   BRNCH

## Care, Custody or Control of Real and Personal Property Exclusion
## 178724 03 98
Umbrella and Excess Liability Policy Amendment

The policy does not apply to any liability arising out of damage to real and personal property of others in the care, custody or control of any **Insured.**

All other terms and conditions of the policy remain unchanged.

This Form must be attached to Change Endorsement when issued after the policy is written.
One of the **Fireman's Fund Insurance Companies** as named in the policy

_Janet S Koewhamer_
Secretary

_Dee L. Steinnette_
President

178724 3-98

001843A    EPI  03  EFEG.P150.A07G001  M                    BRNCH

## Employment Practices Exclusion - Coverage A - 178753 03 98
Umbrella and Excess Liability Policy Amendment

A.  Coverage A of the policy does not apply to any liability arising out of any employment-related or personnel practices, policies, acts or omissions.  This includes, but is not limited to:

1.  Refusal to employ;

2.  Termination of employment;

3.  Coercion, criticism, demotion, failure to promote, evaluation, reassignment, discipline, defamation, self-defamation, harassment, humiliation, discrimination, libel, slander, false arrest or imprisonment, or violation of a person's right of privacy; or

4.  To any consequential injury or damages as a result of 1., 2., or 3. above.

This exclusion applies to all claims, demands, charges, complaints or **Suits** by any person(s) or organization(s) for damages because of such injury or liability, including damages for care and loss of services.  It applies whether any **Insured** may be held liable as an employer or in any other capacity either directly or indirectly related to employment.  And it applies to any obligation to share damages with or to repay someone else who must pay damages because of such injury or liability.

All other terms and conditions of the policy remain unchanged.

This Form must be attached to Change Endorsement when issued after the policy is written.
One of the **Fireman's Fund Insurance Companies** as named in the policy

Secretary                                              President

178753 3-98

001840A   EPI   03   EFEG.P150.A07G001   M                                    BRNCH

## Continuous or Progressive Injury, Damage or Offense Limitation Coverage B - 178726 09 99
Umbrella and Excess Liability Policy Amendment

A.  SECTION II. UMBRELLA LIABILITY - COVERAGE B, A. COVERAGE B - INSURING AGREEMENT, subsection 1.a. is replaced by the following:

1.  We will pay on behalf of any **Insured** those sums that any **Insured**:

   a.  Becomes legally obligated to pay as damages because of:

   (1)  **Bodily Injury** or **Property Damage** that:

   (a)  Takes place during our Policy Period;

   (b)  Is caused by an **Occurrence**; and

   (c)  Prior to the Policy Period, no **Insured** and no employee authorized by you to give or receive notice of an **Occurrence** or claim, knew that the **Bodily Injury** or **Property Damage** had occurred, in whole or in part. If such an **Insured** or authorized employee knew, prior to the Policy Period, that the **Bodily Injury** or **Property Damage** occurred, then any continuation, change or resumption of such **Bodily Injury** or **Property Damage** during or after the Policy Period will be deemed to have been known prior to the Policy Period; or

   (2)  **Personal Injury** or **Advertising Injury** (or **Personal and Advertising Injury** if defined as such in the policy) that is caused by an offense arising out of your business but only if the offense was committed during our Policy Period.

   The Policy Period for this policy may be comprised of more than one consecutive annual period. However, whether or not this policy of insurance applies to more than one consecutive annual period the most we will pay for all damages for **Personal Injury** or **Advertising Injury** (or **Personal and Advertising Injury** if defined as such in the policy) arising out of an offense committed during one annual period is the limits of insurance available under that one annual period.  This provision applies even if the **Personal Injury** or **Advertising Injury** (or **Personal and Advertising Injury** if defined as such in the policy) which arises from an offense committed during one annual period continues or progressively deteriorates into a subsequent annual period(s); or

This Form must be attached to Change Endorsement when issued after the policy is written.
One of the Fireman's Fund Insurance Companies as named in the policy

_Janet S Kloenhamer_                              _Joe L. Stinnette_

Secretary                                         President

178726 9-99                                                    Page 1 of 2

# Watercraft Exclusion - 178819 03 98
Umbrella and Excess Liability Policy Amendment

The policy does not apply to any liability arising out of the ownership, maintenance, opera-tion, use, entrustment to others, loading or unloading of any watercraft.

All other terms and conditions of the policy remain unchanged.

This Form must be attached to Change Endorsement when issued after the policy is written.
One of the **Fireman's Fund Insurance Companies** as named in the policy

Secretary                              President

178819 3-98

# QUICK REFERENCE

## THE FUND UMBRELLA®

This insurance is provided by one of THE FIREMAN'S FUND INSURANCE COMPANIES as shown on the Declarations Page. Our mailing address is: P.O. Box 777, Novato, California 94998.

At inception, The Fund Umbrella policy consists of: the Declarations, The Fund Umbrella policy form, and the endorsements listed on the Declarations.

DECLARATIONS PAGE
    Policy Period; Named Insured; Limits of Insurance; Premium; Schedule of Primary Insurance; Listing of Endorsements

BEGINNING ON PAGE

SECTION I. EXCESS LIABILITY - COVERAGE A
    A.  Insuring Agreement ............................................................................ 1
    B.  When We Have a Duty to Defend .................................................... 1
    C.  Exclusions ........................................................................................ 2
    D.  Who Is An Insured ........................................................................... 5
    E.  Limits of Insurance ......................................................................... 5

SECTION II. UMBRELLA LIABILITY - COVERAGE B
    A.  Insuring Agreement ......................................................................... 6
    B.  When We Have a Duty to Defend .................................................... 6
    C.  Exclusions ........................................................................................ 7
    D.  Who Is An Insured ........................................................................... 11
    E.  Limits of Insurance ......................................................................... 13

SECTION III. SUPPLEMENTARY PAYMENTS ............................................. 13

SECTION IV. CONDITIONS
    A.  Appeals ............................................................................................ 14
    B.  Bankruptcy ...................................................................................... 14
    C.  Cancellation .................................................................................... 14
    D.  Changes ........................................................................................... 15
    E.  Conformity with Laws ..................................................................... 15
    F.  Duties of Insureds in the Event of Occurrence, Claim or Suit .......... 15
    G.  Inspection and Audit ....................................................................... 15
    H.  Maintenance of Primary Insurance ................................................. 16
    I.  Other Insurance .............................................................................. 16
    J.  Payment of Loss Under this Policy .................................................. 16
    K.  Premium ........................................................................................... 16
    L.  Separation of Insureds .................................................................... 17
    M.  Titles or Captions ........................................................................... 17
    N.  Transfer of Rights of Recovery; Distribution of Recoveries;
        Waiver of Subrogation Same as Primary ......................................... 17
    O.  Transfer of Your Rights and Duties Under this Policy ...................... 17
    P.  Unintentional Failure to Disclose ................................................... 18

SECTION V. NUCLEAR ENERGY LIABILITY EXCLUSION ...................... 18

SECTION VI. DEFINITIONS ......................................................................... 20

5300 3-98

Read the entire policy carefully to determine rights, duties and what is and is not covered.

The words "you" and "your" refer to the **Named Insured** shown in the Declarations.  The words "we", "us" and "our" refer to the company providing this insurance.  Other words and phrases that are boldfaced have special meaning.  Refer to the DEFINITIONS and WHO IS AN INSURED sections.

By accepting this policy, you agree that:

1.  The statements in the Declarations and Application are your agreements and representations;

2.  Those statements are accurate and complete;

3.  This policy is issued and continued in reliance upon the truth of those representations;  and

4.  This policy contains all agreements existing between you; us; and our agents; relating to this insurance.

---

## SECTION I. EXCESS LIABILITY - COVERAGE A

### A.  COVERAGE A - INSURING AGREEMENT

1.  We will pay on behalf of any **Insured** those sums in excess of **Primary Insurance** that any **Insured** becomes legally obligated to pay as damages or a **Covered Pollution Cost or Expense**.  Provided that such damages and **Covered Pollution Cost or Expense**:

    a.  Are covered by **Primary Insurance**;

    b.  Arise from injury or damage during our Policy Period; and

    c.  Take place anywhere in the world.

2.  The terms and conditions of **Primary Policies** apply to Coverage A, unless they are inconsistent with any provision of this policy.

3.  The amount we will pay is limited as described in Limits of Insurance.

### B.  COVERAGE A - WHEN WE WILL HAVE A DUTY TO DEFEND

1.  We will have the right and duty to defend any **Insured** against any **Suit** seeking damages or a **Covered Pollution Cost or Expense**:

    a.  To which Coverage A applies;

    b.  Even if the allegations are groundless, false or fraudulent;

    when the applicable limits of Insurance of **Primary Insurance** and **Other Insurance** cease to apply because of exhaustion by the payment of judgments or settlements.

    However, we will have no duty to defend any **Insured** against any **Suit** seeking damages or a **Covered Pollution Cost or Expense** to which Coverage A does not apply. We have the right, but not the duty, to associate with **Primary Insurers** in the:

    a.  Investigation of any claim; or

    b.  Defense of any **Insured** against any **Suit**;

    to which we think this policy may apply.

2. Our right and duty to defend end when we have exhausted the applicable Limit of Insurance in the payment of judgments or settlements.

## C.  COVERAGE A - EXCLUSIONS

Coverage A of this policy does not apply:

1. **ASBESTOS** - To any liability arising, in whole or in part, out of or in any way related to **Asbestos**.

2. **E.R.I.S.A.** - To any liability of any **Insured** under, or any claim based upon:

   a. The Employees' Retirement Income Securities Act (E.R.I.S.A.) of 1974 and any amendment thereto; or

   b. Similar provisions of any federal, state, or local statutory law or common law.

3. **WORKERS COMPENSATION AND SIMILAR LAWS** - To any obligation of any **Insured** under a law of:

   a. Workers compensation;

   b. Disability benefits;

   c. Unemployment compensation; or

   d. Any similar law.

4. **POLLUTION**

   a. To any liability arising out of the actual, alleged or threatened; discharge, dispersal, seepage, migration, release or escape of **Pollutants**:

      (1) At or from any premises, site or location which is or was at any time:

         (a) Owned or occupied by; or

         (b) Rented or loaned to;

         any **Insured**;

      (2) At or from any premises, site or location which is or was at any time used by or for:

         (a) Any **Insured**; or

         (b) Others;

         for the handling, storage, disposal, processing or treatment of waste;

      (3) Which are or were at any time transported, handled, stored, treated, disposed of; or processed as waste by or for:

         (a) Any **Insured**; or

         (b) Any person or organization for whom you may be legally responsible; or

      (4) At or from any premises, site or location on which any **Insured**; or any contractors or subcontractors working directly or indirectly on any **Insured's** behalf; are performing operations:

    (a) If the **Pollutants** are brought on or to such premises, site or location; in connection with such operations by such **Insured**, contractor or subcontractor; or

    (b) If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize; or in any way respond to, or assess the effects of **Pollutants**.

  (5) That are, or that are contained in, any property that is:

    (a) Being transported or towed by; handled or handled for movement into, onto or from; any auto covered by **Primary Insurance**;

    (b) Otherwise in the course of transit by or on behalf of any **Insured**; or

    (c) Being stored, disposed of, treated or processed; in or upon; any auto covered by **Primary Insurance**;

  (6) (a) Before the **Pollutants**; or any property in which the **Pollutants** are contained; are moved from the place where they are accepted by any **Insured** for movement into or onto any auto covered by **Primary Insurance**; or

    (b) After the **Pollutants**; or any property in which the **Pollutants** are contained are moved from any auto covered by **Primary Insurance** to the place where they are finally delivered, disposed of or abandoned by any **Insured**.

 b. To any loss, cost or expense arising out of any:

  (1) Request, demand or order that any **Insured** or others:

    (a) Test for, monitor, clean up, remove, contain, treat, detoxify or neutralize; or

    (b) In any way respond to, or assess;

    the effects of **Pollutants**; or

  (2) Claim or **Suit** by or on behalf of a governmental authority for damages because of:

    (a) Testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing; or

    (b) In any way responding to, or assessing;

    the effects of **Pollutants**.

 Subsection b. does not apply to a **Covered Pollution Cost or Expense** to which Coverage A applies.

 c. (1) HOSTILE FIRE - Subsections a.(1) and a.(4)(a) above do not apply to bodily injury or property damage arising out of: heat, smoke or fumes from a **Hostile Fire**.

  (2) MOBILE EQUIPMENT FUELS - Subsection a.(4)(a) above does not apply to bodily injury or property damage arising out of the escape of fuels, lubricants, or other operating fluids; that are needed to perform the normal electrical, hydraulic, or mechanical functions necessary for the operation of **Mobile Equipment** or its parts; if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them.

    This exception does not apply if:

    (a) The fuels, lubricants or other operating fluids are intentionally discharged, dispersed or released; or

    (b) Such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent to be discharged or released as part of the operations being performed by such **Insured**, contractor or subcontractor.

(3) AUTO FUELS - Subsection a.(5) above does not apply to fuels, lubricants, fluids, exhaust gasses or other similar **Pollutants** that are needed for or result from the normal electrical, hydraulic or mechanical functioning of any auto covered by **Primary Insurance** or its parts if:

    (a) The **Pollutants** escape, seep, migrate, or are discharged, dispersed or released directly from an auto part designed by its manufacturer to: hold, store, receive or dispose of such **Pollutants**; and

    (b) The bodily injury, property damage or **Covered Pollution Cost or Expense** does not arise out of the operation of any equipment listed in subsections 6.(b) and (c) of the definition of **Mobile Equipment**.

(4) AUTO UPSET/OVERTURN/DAMAGE - Subsection a.(6) above does not apply to **Occurrences** that occur away from premises owned by or rented to any Insured with respect to **Pollutants** not in or upon any auto covered by **Primary Insurance** if:

    (a) The **Pollutants** or any property in which the **Pollutants** are contained are upset, overturned or damaged as a result of the maintenance or use of any auto covered by **Primary Insurance**; and

    (b) The discharge, dispersal, seepage, migration, release or escape of the **Pollutants** is caused directly by such upset, overturn or damage.

(5) PRODUCTS/COMPLETED OPERATIONS - Subsection a. above does not apply to bodily injury or property damage included within the products-completed operations hazard provided that your product or your work has not at any time been:

    (a) Discarded, dumped, abandoned, thrown away; or

    (b) Treated or handled as waste;

    by anyone.

(6) BUILDING HEATING EQUIPMENT - Subsection a.(1) above does not apply to bodily injury if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building.

(7) PESTICIDE OR HERBICIDE APPLICATOR - With respect to pesticide or herbicide application by any **Insured**, subsection a.(4)(a) above does not apply if the operations meet all standards of any statute, ordinance, regulation or license requirement of any federal, state or local government which apply to those operations.

  d.  The Insurance provided by Coverage A will not be broader than the insurance coverage provided by the **Primary Policy** listed in the Schedule of **Primary Insurance**.

### D. COVERAGE A - WHO IS AN INSURED

Each of the following is an **Insured** under Coverage A:

1. NAMED INSURED - Any person or organization shown in the Named Insured section of our Declarations.

2. NEWLY ACQUIRED OR FORMED ORGANIZATIONS - Any organization you newly acquire or form during our Policy Period. However, Coverage A does not apply to any injury, damage or **Occurrence**, which took place or was committed before you acquired or formed the organization.

3. PERSONS OR ORGANIZATIONS INSURED IN PRIMARY POLICIES - Any person or organization who is an insured in **Primary Policies**. However, any person or organization who is added as an insured in **Primary Policies** after the inception of our policy is an **Insured** only when you agree prior to the time of an **Occurrence** to provide such insurance as is afforded by Coverage A of this policy.

### E. COVERAGE A - LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Coverages provided by this policy;

   b. **Insureds**;

   c. Claims made or **Suits** brought; or

   d. Persons or organizations making claims or bringing **Suits**.

2. OCCURRENCE LIMIT

   a. The "each occurrence" limit shown in our Declarations is the most we will pay under Coverages A and B combined, for the sum of all damages and **Covered Pollution Cost or Expense** arising out of any one **Occurrence**.

   Any amount we pay for damages or a **Covered Pollution Cost or Expense** arising out of an **Occurrence** will reduce or exhaust the amount of our applicable aggregate Limit of Insurance available for payment of damages or a **Covered Pollution Cost or Expense** arising out of any other **Occurrence**.

   b. Coverage A applies only in excess of the Limit of Insurance shown in our Schedule of Primary Insurance. But if a **Primary Policy** has a limit of insurance:

   (1) Greater than the amount shown, our policy applies excess of the greater amount; or

   (2) Less than the amount shown, our policy applies excess of the amount shown in our Schedule.

   c. If the limit of insurance of a **Primary Policy** is:

   (1) Reduced; or

   (2) Exhausted;

   by payment of judgments or settlements arising out of **Occurrences**, our policy will apply in excess of such reduced or exhausted limit of insurance.

"aggregate" is the most we will pay under Coverage A for the sum of all damages and

**Covered Pollution Cost or Expense**. Our aggregate limit will apply only when a **Primary Policy** applies an aggregate limit, and will apply on the same basis as a **Primary Policy**.

4.   POLICY PERIOD EXTENSIONS - The Limits of Insurance of this policy apply separately to each consecutive annual period; and to any remaining period of less than twelve (12) months, starting with the beginning of the Policy Period shown in the Declarations. However, if we extend our Policy Period after this policy is issued, we will consider the additional period as part of the last preceding annual period for purposes of determining the Limits of Insurance.

## SECTION II.  UMBRELLA LIABILITY - COVERAGE B

### A.  COVERAGE B - INSURING AGREEMENT

1.   We will pay on behalf of any **Insured** those sums that any **Insured**:

a.   Becomes legally obligated to pay as damages because of:

(1)   **Bodily Injury** or **Property Damage** that takes place during our Policy Period and is caused by an **Occurrence**; or

(2)   **Personal Injury** or **Advertising Injury** that is caused by an offense committed during our Policy Period; or

b.   Legally must pay as a **Covered Pollution Cost or Expense**:

(1)   To which Coverage B applies;

(2)   Caused by an **Occurrence**; and

(3)   Resulting from the ownership, maintenance or use of an **Auto** covered by Coverage B.

However, we will only pay for a **Covered Pollution Cost or Expense** if there is either **Bodily Injury** or **Property Damage** to which Coverage B applies that is caused by the same **Occurrence**.

2.   Coverage B does not apply to any claim or **Suit**:

a.   Which is covered by **Primary Insurance** or Coverage A of this policy; or

b.   Which would have been covered except for the exhaustion of the limits of such insurance.

3.   Damages because of **Bodily Injury** include: damages claimed by any person or organization for care, loss of services or death resulting at any time from the **Bodily Injury**.

4.   Coverage B applies anywhere in the world.

5.   The amount we will pay is limited as described in Limits of Insurance.

### B.  COVERAGE B - WHEN WE WILL HAVE A DUTY TO DEFEND

1.   We will have the right and duty to investigate any claim, or defend any **Insured** against any **Suit**, seeking damages or a **Covered Pollution Cost or Expense**:

5300 3-98                                                                                                          Page 6 of 25

a.  To which Coverage B applies;

b.  Even if the allegations are groundless, false or fraudulent;

when **Primary Insurance** or **Other Insurance** does not apply. However, we will have no duty to defend any **Insured** against any **Suit** seeking damages or a **Covered Pollution Cost or Expense** to which Coverage B does not apply. We may, at our discretion, investigate any **Occurrence** and settle any claim or **Suit** that may result.

2.  Our right and duty to defend end when we have exhausted the applicable Limit of Insurance in the payment of judgments or settlements.

## C.  COVERAGE B - EXCLUSIONS

Coverage B of this policy does not apply:

1.  **AIRCRAFT** - To any liability arising out of the ownership, maintenance, operation, use, entrustment to others, loading or unloading of any aircraft:

    a.  Owned, leased, hired, rented or borrowed by or on behalf of you; or

    b.  Chartered without crew by or on behalf of you.

    This exclusion does not apply to liability assumed under an **Insured Contract**.

2.  **ADVERTISING INJURY** - To **Advertising Injury** arising out of:

    a.  Breach of contract, other than misappropriation of advertising ideas under an implied contract;

    b.  The failure of goods, products or services to conform with advertised quality or performance; or

    c.  The wrong description of the price of goods, products or services.

3.  **ADVERTISING INJURY AND PERSONAL INJURY** - To **Personal Injury** or **Advertising Injury** arising out of:

    a.  Oral or written publication of material, if done by or at the direction of any **Insured** with knowledge of its falsity;

    b.  Oral or written publication of material whose first publication took place before the beginning of our Policy Period;

    c.  The willful violation of a penal statute or ordinance committed by or with the consent of any **Insured**; or

    d.  An offense committed by any **Insured** whose business is advertising, broadcasting publishing or telecasting.

4.  **ASBESTOS** - To any liability arising, in whole or in part, out of or in any way related to **Asbestos**.

5.  **CONTRACTUAL LIABILITY** - To any liability for which any **Insured** is obligated to pay damages by reason of the assumption of liability in any contract or agreement. This exclusion does not apply to liability for damages:

   a. Assumed in a contract or agreement that is an **Insured Contract**, provided the **Bodily Injury**, **Personal Injury**, **Advertising Injury** or **Property Damage** occurs after the execution of the contract or agreement; or

   b. That any **Insured** would have in the absence of the contract or agreement.

6. **DAMAGE TO INSURED'S PROPERTY** - To **Property Damage** to property of one **Insured** in the care, custody or control of another **Insured**.

7. **DAMAGE TO YOUR PRODUCT OR WORK** - To **Property Damage** to:

   a. **Your Product** arising out of it or any part of it; or

   b. **Your Work** arising out of it or any part of it and included in the **Products-Completed Operations Hazard**. This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

8. **EMPLOYMENT PRACTICES** - To any liability arising out of any employment-related or personnel practices, policies, acts or omissions. This includes, but is not limited to:

   a. Refusal to employ;

   b. Termination of employment;

   c. Coercion, criticism, demotion, failure to promote, evaluation, reassignment, discipline, defamation, self-defamation, harassment, humiliation, discrimination, libel, slander, false arrest or imprisonment, or violation of a person's right of privacy; or

   d. To any consequential injury or damages as a result of a., b. or c. above.

This exclusion applies:

   a. To all claims, demands, charges, complaints or **Suits** by any person(s) or organization(s) for damages because of such injury or liability, including damages for care and loss of services;

   b. Whether any **Insured** may be held liable as an employer or in any other capacity either directly or indirectly related to employment; and

   c. To any obligation to share damages with or repay someone else who must pay damages because of such injury or liability.

9. **E.R.I.S.A.** - To any liability of any **Insured** under, or any claim based upon:

   a. The Employees' Retirement Income Securities Act (E.R.I.S.A.) of 1974 and any amendment thereto; or

   b. Similar provisions of any federal, state, or local statutory law or common law.

10. **EXPECTED OR INTENDED** - To **Bodily Injury** or **Property Damage** expected or intended from the standpoint of any **Insured**. But this does not apply to **Bodily Injury** or **Property Damage** which results from the use of reasonable force to protect persons or property.

11. **IMPAIRED PROPERTY** - To **Property Damage** to **Impaired Property** or property that has not been physically injured arising out of:

   a. A defect, deficiency, inadequacy or dangerous condition in **Your Product** or **Your Work**; or

5300 3-98

5300 3-98

    (b)  After the **Pollutants**; or any property in which the **Pollutants** are contained;  are moved  from any **Auto** covered  by Coverage B to the place where they are finally  delivered,  disposed of or abandoned  by any **Insured**.

b.  To  any loss, cost or expense  arising  out of of any:

    (1)  Request, demand or order that any **Insured** or others:

        (a)  Test for, monitor, clean up, remove, contain, treat, detoxify or neutralize;  or

        (b)  In any way respond  to, or assess;

    the effects of **Pollutants**; or

    (2)  Claim or **Suit** by or on behalf of a governmental  authority for damages  because  of:

        (a)  Testing for, monitoring,  cleaning up, removing, containing, treating, detoxifying or neutralizing;  or

        (b)  In any way responding  to, or assessing;

    the effects of **Pollutants**.

Subsection  b. does not apply to a **Covered Pollution Cost or Expense** to which  Coverage B applies.

c.  (1)  HOSTILE FIRE - Subsections  a.(1) and a.(4)(a) above do not apply to **Bodily Injury** or **Property Damage** arising  out of heat, smoke or fumes from a **Hostile Fire**.

    (2)  MOBILE  EQUIPMENT FUELS - Subsection   a.(4)(a) above does not apply to **Bodily Injury** or **Property Damage** arising  out of the escape of fuels, lubricants,  or other operating  fluids; that are needed to perform  the normal  electrical,  hydraulic, or mechanical  functions  necessary  for the operation  of **Mobile Equipment** or its parts; if such fuels, lubricants  or other operating  fluids escape from a vehicle part designed  to hold, store or receive them.

This exception  does not apply if the fuels, lubricants  or other operating  fluids are intentionally  discharged,  dispersed or released, or if such fuels, lubricants  or other operating  fluids are brought  on or to the premises,  site or location with the intent to be discharged  or released  as part of the operations  being performed  by such **Insured**, contractor  or subcontractor.

    (3)  AUTO FUELS - Subsection  a.(5) above does not apply to fuels, lubricants,  fluids, exhaust  gasses  or other similar  **Pollutants** that are needed for or result from the normal  electrical,  hydraulic or mechanical  functioning  of any **Auto** covered  by Coverage B or its parts if:

        (a)  The **Pollutants** escape, seep, migrate, or are discharged,  dispersed  or released directly  from an auto part designed  by its manufacturer  to hold store, receive or dispose of such **Pollutants**; and

        (b)  The **Bodily Injury**, **Property Damage** or **Covered Pollution Cost or Expense** does not arise out of the operation  of any equipment  listed in subsections  6.(b) and (c) of the definition  of **Mobile Equipment**.

    (4)  AUTO UPSET/OVERTURN/DAMAGE - Subsection  a.(6) above does not apply to accidents that occur away from premises  owned by or rented to an **Insured** with respect to **Pollutants** not in or upon any Auto covered by Coverage B if:

    (a) The **Pollutants** or any property in which the **Pollutants** are contained are upset, overturned or damaged as a result of the maintenance or use of any **Auto** covered by Coverage B; and

    (b) The discharge, dispersal, seepage migration, release or escape of the **Pollutants** is caused directly by such upset, overturn or damage.

  (5) PRODUCTS/COMPLETED OPERATIONS - Subsection a. above does not apply to **Bodily Injury** or **Property Damage** included within the **Products-Completed Operations Hazard** provided that **Your Product** or **Your Work** has not at any time been:

    (a) Discarded, dumped, abandoned, thrown away; or

    (b) Treated or handled as waste;

  by anyone.

13. **RECALL OF PRODUCTS** - To damages claimed for any loss, cost or expense; incurred by any **Insured** or others; for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

  a.  **Your Product**;

  b.  **Your Work**; or

  c.  **Impaired Property**;

  if such product, work or property is withdrawn or recalled:

  a.  From the market; or

  b.  From use;

  by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

14. **WORKERS COMPENSATION AND SIMILAR LAWS** - To any obligation of any **Insured** under a law of:

  a.  Workers compensation;

  b.  Disability benefits;

  c.  Unemployment compensation; or

  d.  Any similar laws.

## D. COVERAGE B - WHO IS AN INSURED

1.  Each of the following is an **Insured** under Coverage B:

  a.  NAMED INSURED - Any person or organization shown in the Named Insured section of our Declarations and:

    (1) If you are an individual: your spouse is also an **Insured**, but only with respect to the conduct of a business of which you are the sole owner.

    (2) If you are a partnership or joint venture: your members, your partners and their spouses are also **Insureds**, but only with respect to the conduct of your business.

(3) If you are a limited liability company: your members are also **Insureds**, but only with respect to the conduct of your business. Your managers are **Insureds**, but only with respect to their duties as your managers.

(4) If you are an organization other than a partnership, joint venture or limited liability company: your executive officers and directors are **Insureds**, but only with respect to their duties as your officers or directors.  Your stockholders are also **Insureds**, but only with respect to their liability as stockholders.

(5) Your employees, other than:

    (a) Your executive officers (if you are an organization other than a partnership, joint venture or limited liability company); or

    (b) Your managers (if you are a limited liability company);

    are **Insureds**, but only for acts within the scope of their employment by you while performing duties related to the conduct of your business.

b. NEWLY ACQUIRED OR FORMED ORGANIZATIONS - Any organization you acquire or form during our Policy Period other than a: partnership, joint venture or limited liability company.  But Coverage B applies only:

(1) If you maintain majority ownership or majority interest in such organization; and

(2) To an injury, damage or **Occurrence**, that took place or was committed after you acquired or formed the organization.

c. SUBSIDIARIES - Any subsidiary you wholly own, either directly or indirectly, at the inception of our policy.

d. REAL ESTATE MANAGERS - Any person or any organization while acting as your real estate manager.

e. CUSTODIANS - Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

f. LEGAL REPRESENTATIVES- Your legal representative if you die, but only with respect to duties as such.

g. PERSONS OR ORGANIZATIONS AFFORDED COVERAGE UNDER CONTRACT WITH YOU - At your option, any person or organization for whom you have agreed in an **Insured Contract** to provide such insurance as is afforded by Coverage B of this policy. However, such contract must be executed prior to the time of the **Occurrence**.

2. The following persons and organizations are not **Insureds** under Coverage B:

No person or organization is an **Insured** with respect to the conduct of any current, past or newly acquired or formed:

a. Partnership;

b. Joint venture; or

c. Limited liability company;

that is not shown in our Declarations.

### E. COVERAGE B - LIMITS OF INSURANCE

1.  The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

    a.  Coverages provided by this policy;

    b.  **Insureds**;

    c.  Claims made or **Suits** brought; or

    d.  Persons or organizations making claims or bringing **Suits**.

2.  OCCURRENCE LIMIT - The "each occurrence" limit shown in our Declarations is the most we will pay under Coverages A and B combined, for the sum of all damages and **Covered Pollution Cost or Expense** arising out of any one **Occurrence**.

    Any amount we pay for damages or a **Covered Pollution Cost or Expense** arising out of an **Occurrence** will reduce or exhaust the amount of our applicable aggregate Limit of Insurance available for payment of damages or a **Covered Pollution Cost or Expense** arising out of any other **Occurrence**.

3.  AGGREGATE LIMIT - The Limit of Insurance shown in our Declarations as "aggregate" is the most we will pay under Coverage B, and applies separately for each of the following:

    a.  GENERAL AGGREGATE - Our aggregate limit is the most we will pay for the sum of all damages and **Covered Pollution Cost or Expense**, except for damages under subsections b. and c. below.

    b.  PRODUCTS AND COMPLETED OPERATIONS AGGREGATE - Our aggregate limit is the most we will pay for all damages included in the **Products-Completed Operations Hazard**.

    c.  OCCUPATIONAL DISEASE AGGREGATE - Our aggregate limit is the most we will pay for all damages arising out of injury by disease to your officers or employees.

4.  POLICY PERIOD EXTENSIONS - The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than twelve (12) months, starting with the beginning of the Policy Period shown in the Declarations. However, if we extend our Policy Period after this policy is issued, we will consider the additional period as part of the last preceding period for purposes of determining the Limits of Insurance.

---

## SECTION III. SUPPLEMENTARY PAYMENTS

With respect to any claim we investigate or settle, or **Suit** against any **Insured** we defend, we will pay in addition to the applicable Limits of Insurance:

A.  All expenses we incur.

B.  The following to the extent that they are not covered by **Primary Insurance** or **Other Insurance**:

    1.  Costs taxed against any **Insured** in the **Suit**;

    2.  Up to $2000 for cost of bail bonds required. We do not have to furnish these bonds;

3. The cost of bonds to release attachments, but only for bond amounts within our applicable Limit of Insurance. We do not have to furnish these bonds;

4. All reasonable expenses incurred by any **Insured** at our request to assist us in the investigation of the claim or defense of the **Suit**. This includes actual loss of earnings up to $500 a day, because of time off from work;

5. Prejudgment interest awarded against any **Insured** on that part of the judgment we pay. If we make an offer to pay prior to judgment, we will not pay any prejudgment interest on the amount we offer to pay for the period of time following that offer; and

6. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within our applicable Limit of Insurance.

C. If we are prevented by law from investigating or settling any claim or defending any **Insured** against any **Suit**, we will pay any expense incurred by any **Insured** with our consent.

## SECTION IV. CONDITIONS

**A. APPEALS** - If any **Primary Insurer** elects not to appeal a judgment in excess of the amount of the **Primary Insurance** or **Other Insurance**, we may elect to appeal. If we appeal, we will pay the expenses of such appeal. Such payments will not reduce our Limits of Insurance.

## B. BANKRUPTCY

1. Bankruptcy or insolvency of any **Insured** or **Insured's** estate does not relieve us of our obligations under this policy.

2. If any **Primary Insurer** becomes bankrupt or insolvent, this policy:

   a. Does not replace such **Primary Insurance**; and

   b. Applies as though such **Primary Insurance** were available and collectible.

## C. CANCELLATION

1. The **First Named Insured** may cancel this policy by mailing or delivering advance written notice to us, or any of our authorized agents, stating when thereafter, cancellation is to take effect.

2. We may cancel this policy by mailing or delivering to the **First Named Insured** at the address shown in the Declarations written notice of cancellation at least:

   a. Ten (10) days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. Ninety (90) days before the effective date of cancellation if we cancel for any other reason.

3. If this policy is cancelled, we will send the **First Named Insured** any premium refund due. If we cancel, the refund will be pro rata. If the **First Named Insured** cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

4. If the notice is mailed, proof of mailing is sufficient proof of notice. The effective date of cancellation stated in the notice is the end of our Policy Period.

**D. CHANGES** - The **First Named Insured** is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by a written endorsement issued by us and made a part of this policy.

**E. CONFORMITY WITH LAWS** - Any terms of this policy which are in conflict with the laws of the state or Canadian province where this policy is issued are amended to conform to such laws.

**F. DUTIES OF INSUREDS IN THE EVENT OF OCCURRENCE, CLAIM OR SUIT**

You must see to it that:

1. We are notified as soon as practicable:

    a. Of any **Occurrence** which may result in a claim under this policy, when the **Occurrence** is known to:

        (1) You, if you are an individual;

        (2) Your partner, if you are a partnership;

        (3) Your member, if you are a joint venture;

        (4) Your member or manager, if you are a limited liability company; or

        (5) Your officer or insurance manager, if you are an organization other than a partnership or joint venture; and

    b. If a claim is made or **Suit** is brought against any **Insured**.

2. **Insureds**:

    a. Cooperate with us in the investigation or settlement of any claim; or defense of any **Insured** against any **Suit**;

    b. Enforce any right, upon our request, against any person or organization which may be liable to any **Insured** because of injury or damage to which this policy applies;

    c. Make no admission of liability;

    d. Incur no expense, other than first aid; and

    e. Assume no obligation;

    without our consent.

**G. INSPECTION AND AUDIT**

1. We have the right but not the duty to:

    a. Make inspections and surveys at any time;

    b. Give you reports on the conditions we find; and

    c. Recommend changes.

2. Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not:

5300 3-98

a.  Make safety inspections;

b.  Undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public; or

c.  Warrant that conditions are:

(1)  Safe or healthful; or

(2)  Comply with laws, regulations, codes or standards.

3.  This condition applies:

a.  To us; and

b.  To any rating, advisory, rate service or similar organization; which makes insurance inspections, surveys, reports or recommendations.

4.  We may examine and audit your books and records as they relate to this policy:

a.  At any time during our Policy Period; and

b.  Up to three (3) years afterward.

## H. MAINTENANCE OF PRIMARY INSURANCE

While this policy is in effect you agree:

1.  To maintain **Primary Insurance** in full force, except for the reduction of limits of insurance due to the payment of judgments or settlements;

2.  The terms and conditions of **Primary Insurance** will not materially change; and

3.  Renewals of **Primary Insurance** will not be more restrictive in coverage.

If you fail to comply with the above this policy shall apply as if **Primary Insurance** had been so maintained.

## I. OTHER INSURANCE - If there is any **Other Insurance** available to any **Insured**, this policy applies excess of and does not contribute with such **Other Insurance**. However:

1.  At your option, our policy will apply before **Other Insurance** applies when you agree prior to the time of an **Occurrence** that such insurance as is afforded by this policy will apply in that manner.

2.  This does not apply if the **Other Insurance** is specifically written to be excess over this policy.

## J. PAYMENT OF LOSS UNDER THIS POLICY - This policy will not apply until the **Insured** or the **Primary Insurer** is obligated to pay the full amount of the **Primary Insurance** limits. When the amount of judgment or settlement has finally been determined, we will promptly pay on behalf of the **Insured** the amount which falls within the terms of this policy.

## K. PREMIUM

1.  The **First Named Insured**:

a.  Is responsible for the payment of all premiums; and

b.  Will be the payee for any return premiums.

2.  The Advance Premium for this policy is shown in the Declarations. It is not subject to adjustment unless the Basis of Premium shown in the Declarations is other than: "flat charge".

3.  If the Advance Premium is subject to adjustment, the earned premium will be determined at the end of our Policy Period. If the earned premium is:

   a.  More than the Advance Premium, the **First Named Insured** will pay the excess to us; or

   b.  Less than the Advance Premium, we will return to the **First Named Insured** the unearned portion. However, the earned premium is subject to the Annual Minimum Premium shown in our Declarations for each twelve (12) months of our Policy Period.

**L.  SEPARATION OF INSUREDS** - Except with respect to the Limits of Insurance and any rights or duties specifically assigned to the **First Named Insured**, this insurance applies:

1.  As if each **Named Insured** were the only **Named Insured**; and

2.  Separately to each **Insured** against whom claim is made or **Suit** is brought.

**M.  TITLES OR CAPTIONS** - The titles or captions used in this policy are solely for convenience or reference. They do not affect the provisions to which they relate.

**N.  TRANSFER OF RIGHTS OF RECOVERY; DISTRIBUTION OF RECOVERIES; WAIVER OF SUBROGATION SAME AS PRIMARY**

1.  TRANSFER OF RIGHTS OF RECOVERY - If any **Insured** has rights to recover all or part of any payment we make under this policy, those rights are transferred to us. The **Insured** must do nothing after loss to impair them. At our request, the **Insured** will bring **Suit** or transfer those rights to us and help us enforce them.

2.  DISTRIBUTION OF RECOVERIES- Any recoveries shall be distributed as follows:

   a.  First, we shall be entitled to recover to the extent of our payment; and

   b.  Next, any remaining amounts shall be paid to the **Primary Insurers** or any other party to the extent of their payment.

   c.  The expenses of the recovery will be distributed in proportion to the share of each party's recovery. But, if we conduct the recovery proceedings by ourselves:

      (1)  We will pay all expenses; and

      (2)  If we make a recovery, we will be reimbursed in full from the recovery for our expenses before the recovery is distributed.

3.  WAIVER OF SUBROGATION SAME AS PRIMARY - If you and the **Primary Insurer**, prior to the time of an **Occurrence**, waive any right of recovery against a specific person or organization for injury or damage, we will also waive any rights we may have against such person or organization.

**O.  TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY** - Your rights and duties under this policy may not be transferred without our written consent. If you die, your rights and duties are transferred to your legal representative but only while they are acting within the scope of their duties as such. Until one is appointed, anyone having proper temporary custody of your property will have your rights and duties with respect to that property.

**P. UNINTENTIONAL FAILURE TO DISCLOSE** - If you unintentionally  fail to disclose  to us all of:

    a. **Your Products**;

    b. **Your Work**; or

    c. Property  owned  or used  by you;

which exist at the inception  date of this policy, we will not deny coverage  under this policy be-cause of such failure.

---

## SECTION V. NUCLEAR ENERGY LIABILITY EXCLUSION

**A.** The policy does not apply:

    1. Under any coverage, to injury, sickness, disease, death or destruction:

        a. With respect to which any **Insured** under this policy is also an insured  under a nuclear energy liability  policy issued by:

            (1) Nuclear Energy Liability  Insurance  Association;

            (2) Mutual Atomic Energy Liability  Underwriters;  or

            (3) Nuclear Insurance  Association  of Canada;

        or would  be insured  under any such policy but for its termination  upon exhaustion  of its limit of liability;  or

        b. Resulting  from the "Hazardous  Properties"  of "Nuclear Material"  and with respect  to which:

            (1) Any person  or organization  is required  to maintain  financial  protection  pursuant to the Atomic Energy Act of 1954, or any law amendatory  thereof; or

            (2) Any **Insured** is, or had this policy not been issued would be; entitled to indemnity from the United States of America, or any agency thereof; under any agreement entered into by the United States of America, or any agency thereof; with any per-son or organization.

    2. Under any liability  coverage,  to injury, sickness, disease, death or destruction  resulting from the "Hazardous Properties" of "Nuclear Material", if:

        a. The "Nuclear Material":

            (1) Is at any "Nuclear Facility"  owned by, or operated  by or on behalf of, any **Insured**; or

            (2) Has been discharged  or dispersed  therefrom;

        b. The "Nuclear Material"  is contained  in "Spent Fuel" or "Waste" at any time possessed; handled;  used;  processed;  stored;  transported  or disposed  of by or on behalf of any **Insured**; or

        c. The injury, sickness, disease, death or destruction  arises out of the furnishing  by any **Insured** of services;  materials;  parts or equipment  in connection  with the planning; construction;  maintenance;  operation  or use of any "Nuclear Facility". But if such facility

is located within the United States of America, its territories or possessions or Canada; subsection c. applies only to injury to or destruction of property at such "Nuclear Facility".

B.  As used in this exclusion:

1.  Hazardous Properties includes radioactive, toxic or explosive properties.

2.  Nuclear Material means Source Material, Special Nuclear Material or By-Product Material.

3.  Source Material, Special Nuclear Material, and By-Product Material have the meaning given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

4.  Spent Fuel means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a Nuclear Reactor.

5.  Waste means any material which:

    a.  Contains By-Product Material; other than the tailings or wastes produced by the extraction or concentration of uranium or thorium; from any ore processed primarily for its Source Material content; and

    b.  Results from the operation by any person or organization of any Nuclear Facility included under a. and b. of the definition of Nuclear Facility.

6.  Nuclear Facility means:

    a.  Any Nuclear Reactor;

    b.  Any equipment or device designed or used for:

        (1) Separating the isotopes of uranium or plutonium;

        (2) Processing or utilizing Spent Fuel; or

        (3) Handling, processing or packaging Waste;

    c.  Any equipment or device used for processing, fabricating or alloying of Special Nuclear Material if; at any time; the total amount of such material in the custody of any **Insured** at the premises where such equipment or device is located consists of or contains more than 25 grams of:

        (1) Plutonium: or

        (2) Uranium 233; or

        any combination thereof; or more than 250 grams of uranium 235;

    d.  Any structure; basin; excavation; premises or place; prepared or used for the storage or disposal of waste;

        and includes:

        (1) The site on which any of the foregoing is located;

        (2) All operations conducted on such site; and

        (3) All premises used for such operations.

7.  Nuclear Reactor means any apparatus designed or used to:

5300 3-98

    a.  Sustain nuclear fission in a self-supporting  chain reaction; or

    b.  Contain a critical mass of fissionable  material.

8.  With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

---

## SECTION VI. DEFINITIONS

**A.  ADVERTISING INJURY** under Coverage B, means injury caused by one or more of the following offenses committed in the course of advertising  your goods, products or services:

  1.  Oral, written, televised or videotaped publication of material that:

    a.  Slanders or libels a person or organization;

    b.  Disparages a person's or organization's  goods, products or services; or

    c.  Violates a person's  right of privacy;

  2.  Misappropriation  of advertising ideas, or style of doing business; or

  3.  Infringement  of trademark, copyright, title or slogan.

**B.  ASBESTOS** under Coverages A and B, includes but is not limited to: asbestos; asbestos products; asbestos fibers; asbestos dust; and asbestos contained in products or materials.

**C.  AUTO** under Coverage B, means a land motor vehicle, trailer, or semitrailer  designed for travel on public roads, including any attached machinery or equipment.  But **Auto** does not include **Mobile Equipment.**

**D.  BODILY INJURY** under Coverage B, means bodily injury, sickness or disease sustained by a person.  The term includes the following when resulting from such bodily injury, sickness or disease:

  1.  Death; or

  2.  Mental injury, mental anguish, shock or humiliation.

**E.  COVERED POLLUTION COST OR EXPENSE** under Coverages A and B, means any cost or expense arising out of any: request, demand or order; or any claim or **Suit** by or on behalf of a governmental  authority; demanding that any **Insured** or others test for, monitor, cleanup, remove, contain, treat, detoxify or neutralize; or in any way respond to, or assess the effects of **Pollutants**.

**Covered Pollution Cost or Expense** does not include any cost or expense arising out of the actual, alleged or threatened; discharge, dispersal, seepage, migration, release or escape of **Pollutants**:

  1.  That are, or that are contained in any property that is:

    a.  Being transported or towed by; handled, or handled for movement into, onto or from; any **Auto** covered by this policy;

    b.  Otherwise in the course of transit by or on behalf of any **Insured**;

   c.  Being stored, disposed of, treated or processed in or upon any **Auto** covered by this policy; or

2.  Before the **Pollutants**; or any property in which the **Pollutants** are contained; are moved from the place where they are accepted by any **Insured** for movement into or onto any **Auto** covered by this policy; or

3.  After the **Pollutants**; or any property in which the **Pollutants** are contained; are moved from any **Auto** covered by this policy to the place where they are finally delivered, disposed of or abandoned by any **Insured**.

Subsection 1. above does not apply to fuels, lubricants, fluids, exhaust gases or other similar **Pollutants**; that are needed for or result from the normal electrical, hydraulic or mechanical functioning of any **Auto** covered by this policy, or its parts, if:

   a.  The **Pollutants** escape, seep, migrate, or are discharged, dispersed or released directly from an **Auto** part designed by its manufacturer to: hold, store, receive or dispose of such **Pollutants**; and

   b.  The **Bodily Injury, Property Damage** or **Covered Pollution Cost or Expense** does not arise out of the operation of any equipment listed in subsections 6.(b) or (c) of the definition of **Mobile Equipment**.

Subsections 2. and 3. above do not apply to **Occurrences** that occur away from premises owned by or rented to any **Insured** with respect to **Pollutants** not in or upon any **Auto** covered by this policy if:

   a.  The **Pollutants** or any property in which the **Pollutants** are contained are upset, overturned or damaged as a result of the maintenance or use of any **Auto** covered by this policy; and

   b.  The discharge, dispersal, seepage, migration, release or escape of the **Pollutants** is caused directly by such upset, overturn or damage.

**F.  FIRST NAMED INSURED** under Coverages A and B, means the person or organization shown first in the Named Insured section of our Declarations.

**G.  HOSTILE FIRE** under Coverages A and B, means one which becomes uncontrollable or breaks out from where it was intended to be.

**H.  IMPAIRED PROPERTY** under Coverage B, means tangible property, other than **Your Product** or **Your Work**, that cannot be used or is less useful because:

1.  It incorporates **Your Product** or **Your Work** that is known or thought to be defective, deficient, inadequate or dangerous; or

2.  You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

1.  The repair, replacement, adjustment or removal of **Your Product** or **Your Work**; or

2.  Your fulfilling the terms of the contract or agreement.

**I.  INSURED CONTRACT** under Coverage B, means that part of any contract or agreement pertaining to your business under which any **Insured** assumes the tort liability of another to pay for **Bodily Injury, Personal Injury, Advertising Injury** or **Property Damage** to a third person or

organization.  "Tort liability"  means a liability  that would  be imposed  by law in the absence of any contract  or agreement.

**J.  MOBILE EQUIPMENT**  under  Coverages  A and B, means  any of the following  types of land ve-hicles,  including  any attached machinery  or equipment:

1.  Bulldozers,  farm machinery,  forklifts  and other vehicles  designed  for use principally  off public roads;

2.  Vehicles  maintained  for use solely on or next to premises  you own or rent;

3.  Vehicles  that travel on crawler  treads;

4.  Vehicles,  whether self-propelled  or not, maintained  primarily  to provide  mobility  to perma-nently  mounted;

   a.  Power cranes, shovels, loaders, diggers or drills; or

   b.  Road construction  or resurfacing  equipment such as graders, scrapers or rollers.

5.  Vehicles  not described  in subsections  1., 2., 3. or 4. above that are not self-propelled  and are maintained  primarily  to provide  mobility  to permanently  attached  equipment  of the fol-lowing  types:

   a.  Air compressors,  pumps  and generators,  including  spraying,  welding,  building  clean-ing,  geophysical  exploration,  lighting and well servicing  equipment;  or

   b.  Cherry pickers  and similar  devices  used to raise or lower workers.

6.  Vehicles  not described  in subsections  1., 2., 3. or 4. above maintained  primarily  for pur-poses  other than the transportation  of persons  or cargo. However,  self-propelled  vehicles with the following  types of permanently  attached  equipment  are not **Mobile Equipment** but will be considered  **Autos:**

   a.  Equipment  designed primarily  for:

      (1)  Snow removal;

      (2)  Road maintenance,  but not construction  or resurfacing;  or

      (3)  Street cleaning;

   b.  Cherry pickers  and similar  devices  mounted on automobile  or truck chassis  and used to raise or lower workers;  and

   c.  Air compressors,  pumps and generators;  including  spraying,  welding,  building  clean-ing,  geophysical  exploration,  lighting or well servicing  equipment.

**K.  NAMED INSURED**  under Coverages  A and B, means any person  or organization  shown in the Named Insured  section of our Declarations.

**L.  OCCURRENCE:**

1.  Under Coverage  A, means  the same meaning  as has the term "occurrence"  contained  in **Primary Policies**.  But with respect  to personal  injury or advertising  injury as defined  in **Primary Policies**,  the term means  a personal  injury or advertising  injury offense.

2. Under Coverage B, means an accident, including continuous or repeated exposure to sub-stantially the same general harmful conditions. With respect to **Personal Injury** or **Advertising Injury**, the term means an offense which causes such injury.

**M. OTHER INSURANCE** under Coverages A and B, means insurance that is available to any **Insured** and covers damage to which this policy applies, other than:

1. **Primary Insurance**; or

2. Insurance that is specifically purchased by you to be excess of the insurance afforded by this policy.

**N. PERSONAL INJURY** under Coverage B, means injury other than **Bodily Injury** caused by one or more of the following offenses:

1. False arrest, detention or imprisonment;

2. Malicious prosecution or abuse of process;

3. Wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that the person occupies by or on behalf of its owner, landlord or lessor;

4. Oral or written publication of material that:

   a. Slanders or libels a person or organization;

   b. Disparages a person's or organization's goods, products or services; or

   c. Violates a person's right of privacy; or

5. Discrimination (unless insurance thereof is prohibited by law).

**O. POLLUTANTS** under Coverages A and B, means any solid, liquid, gaseous or thermal irritant or contaminant; including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**P. PRIMARY INSURER** under Coverages A and B, means the insurer of the **Primary Insurance** or **Other Insurance** policies.

**Q. PRIMARY POLICY, PRIMARY POLICIES AND/OR PRIMARY INSURANCE** under Coverage A and B, means the policy or policies of insurance shown in our Schedule of Primary Insurance.

**R. PRODUCTS-COMPLETED OPERATIONS HAZARD** under Coverage B, includes all **Bodily Injury** and **Property Damage** occurring away from premises you own or rent and arising out of **Your Product** or **Your Work** except:

1. Products that are still in your physical possession; or

2. Work that has not yet been completed or abandoned.

**Your Work** will be deemed completed at the earliest of the following times:

1. When all of the work called for in your contract has been completed;

2. When all of the work to be done at the site has been completed if your contract calls for work at more than one site; or

MAY-02-2005  11:11         INTERSTATE INSURANCE               312 346 2676    P.25/26

3.  When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement; but which is otherwise complete; will be treated as completed.

**S.  PROPERTY DAMAGE** under Coverage B, means:

1.  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

2.  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the **Occurrence** that caused it.

**T.  SUIT** under Coverages A and B, means a civil proceeding in which damages insured by this policy are alleged. The term includes:

1.  An arbitration proceeding in which such damages are claimed and to which any **Insured** must submit or does submit with our consent; and

2.  Any other alternative dispute resolution proceeding in which such damages are claimed and to which any **Insured** submits with our consent.

**U.  YOUR PRODUCT** under Coverage B, means:

1.  Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

    a.  You;

    b.  Others trading under your name; or

    c.  A person or organization whose business or assets you have acquired; and

2.  Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**Your Product** includes:

1.  Warranties or representations made at any time as respects the fitness, quality, durability, performance or use of **Your Product**; and

2.  The providing of or failure to provide warnings or instructions.

**Your Product** does not include vending machines or any other property rented to or located for the use of others but not sold.

**V.  YOUR WORK** under Coverage B means:

1.  Work or operations performed by you or on your behalf; and

2.  Materials, parts or equipment furnished in connection with such work or operations.

**Your Work** includes:

1.  Warranties or representations made at any time as respects the fitness, quality, durability, performance or use of **Your Work**; and

MAY-02-2005  11:11          INTERSTATE INSURANCE                312 346 2676    P.26/26

2.   The providing of or failure to provide warnings or instructions.

To show that we agree with the terms of this policy, we have had it signed by our President and Secretary. But where countersignature is required by law, it shall not bind us unless it has been countersigned on the Declarations Page by one of our authorized agents.

**Secretary**

**President**

5300 3-98

Page 25 of 25

TOTAL P.26



**Fireman's Fund**

May 22, 2003

Harbor Parking
1818 Commonwealth Avenue
West Newton, Ma. 02165
Attn: Ms. Carolyn Shore

Re: Insured:     Harbor Parking
    Claim:        400 03 018636
    Date of Loss: July 22, 2001
    Claimant:     Catherine Kinsella
    Policy:       XYZ 84535806

Dear Ms. Shore:

This letter is in reference to the above referenced claim which has been forwarded to
Fireman's Fund Insurance Company, your excess liability insurance carrier.

Very little substantive information has been provided but this loss does appear to deal with
an accidental drowning which occurred when the decedent allegedly fell overboard while on the
Sea Genie II in Hyannis, Ma.

This claim has been submitted for consideration of coverage under a Fund Umbrella liability
policy number XYZ 84535806, effective May 20, 2001 through May 20, 2002, and providing
$5,000,000 per occurrence/aggregate excess liability coverage over the underlying primary
policy issued through General Star National Insurance Company with a $1,000,000 limit.

We wish to direct your attention to the Fireman' s Fund policy, form number 5300 3-98, and
specifically the Insuring Agreement-Coverage A:

    1. We will pay on behalf of any Insured those sums in excess of Primary Insurance
that any Insured becomes legally obligated to pay as damages... Provided that
such damages:

    a. Are covered by Primary Insurance;

    b. Arise from injury or damage during our Policy Period; and

    c. Takes place anywhere in the world.

The terms and conditions of Primary Policies apply to Coverage A, unless they are inconsistent
with any provision of this policy.

The amount we will pay is limited as described in Limits of Insurance.

To the extent that the primary carrier, General Star National, may accept and provide coverage
under its policy of insurance for this claim, the Fireman's Fund Insurance Company may be

Fireman's Fund
Insurance Companies
A member of the
Allianz Group

233 South Wacker Drive
Suite 2000
Chicago, IL 60606-6308
Phone 312.441.5400

similarly obligated. However, Fireman's Fund is entitled to all of the possible coverage defenses available under the General Star primary policy, even if those defenses are not invoked by the primary carrier. Also, such coverage that may be triggered under the Fireman's Fund Coverage A is subject to any exclusionary endorsements under the Fireman's Fund policy. Among those endorsements are found the following:

**Watercraft Exclusion-178819, 3/98**

This policy does not apply to any liability arising out of the ownership, maintenance, operation, use, entrustment to others, loading or unloading of any watercraft.

All other terms and conditions of the policy remain unchanged.

The above endorsement applies to the entire Fireman's Fund policy.

It is also noted that presently no claim or suit has been filed against Harbor Parking. Should a lawsuit be filed, or if you have additional information which you believe may impact upon our coverage determination, please forward such documentation to our office for our further review. However, any future action which may be taken by the Fireman's Fund Insurance Company in reviewing the facts and circumstances surrounding this suit, shall not be held to be an admission, or assumption, of liability by the Fireman's Fund Insurance Company or a waiver of its rights under such policy of insurance to disclaim coverage or to operate by way of estoppel against the assertion of any such rights with respects to you or any other person, firm or corporation.

If a further review of this matter is requested, the Fireman's Fund Insurance Company will proceed to do so only upon the understanding that the Company hereby Reserves the Right at any time to withdraw from such additional review and investigation and to disclaim liability under the policy for the reasons stated above and for such others as may appear, upon giving such advance notice as the circumstances may permit.

Should you have any questions or comments regarding this matter, or should you wish to forward additional material for our consideration, please direct such correspondence to myself.

Sincerely,


Donald W. Willig
General Adjuster
Fireman's Fund Insurance Company
312-441-6388


cc:     Barron & Stadfeld, P.C.
        50 Staniford Street
        Suite 200
        Boston, Ma. 02114
        Attn: Edward E. Kelly, Esq.

Sovereign Group International, Inc.
800 Falmouth Road
 Mashpee, MA. 02649

General Star National Insurance Company
695 Main Street
Stamford, Ct. 06901
Attn: Laural Kutzenco
Claim # GS 043971



# GENERAL STAR INDEMNITY COMPANY
STAMFORD, CONNECTICUT 06904-2354

(Hereinafter called the Company)        A Stock Company

## RENEWAL CERTIFICATE
### Valuable Document - Attach To Your Policy

RECEIVED
JUN 1 2 2001
FACILITIES

POL # IMA6413498

RENEWAL OF POL # IMA641349A

1. **NAMED INSURED**
   **MAILING ADDRESS**

TOAD HALL CORP.
D/B/A HARBOR PARKING
1418 COMMONWEALTH AVE.
WEST NEWTON, MA  02165

UPDATE IN ACCG___
BS

2. **POLICY PERIOD:** From ___05/20/2001___ to ___05/20/2002___
   at 12:01 A.M. Standard Time at your mailing address shown above.

IN CONSIDERATION OF PAYMENT OF THE PREMIUM STATED BELOW, THE ABOVE NUMBERED POLICY IS RENEWED FOR THE POLICY PERIOD STATED ABOVE, SUBJECT TO ALL THE TERMS AND CONDITIONS OF THE PREVIOUS POLICY, EXCEPT AS OTHERWISE SPECIFIED HEREIN.

_X_ NO CHANGES FROM PREVIOUS POLICY.

___ THE FOLLOWING CHANGES ARE APPLICABLE TO THE RENEWAL CERTIFICATE (ANY AMENDED ENDORSEMENTS/COVERAGE PARTS ARE ATTACHED)

THE COVERAGE HEREON CANNOT BE CANCELLED FLAT. A PREMIUM CHARGE BASED ON POLICY CONDITIONS WILL BE MADE SUBJECT TO MINIMUM EARNED PREMIUM OF _$465_ POLICY FEES. INSPECTION FEES OR FILING FEES ARE FULLY EARNED AT INCEPTION. TAXES, IF ANY WILL BE RETAINED ON EARNED PREMIUMS ONLY.

3. THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

| | PREMIUM |
|---|---|
| Commercial Property Coverage Part | $ _____ |
| Commercial Inland Marine Coverage Part | $ _____ |
| Commercial General Liability Coverage Part | $ 1,550.00 |
| _____ Coverage Part | $ _____ |
| _____ Coverage Part | $ _____ |
| **TOTAL RENEWAL PREMIUM** | $ 1,550.00 |
| STATE SURPLUS TAX (4  %) | $ 62.00 |
| POLICY FEE | $ _____ |
| | $ _____ |
| | $ _____ |
| **POLICY TOTAL (payable at inception)** | $ 1612.00 |

THIS RENEWAL CERTIFICATE ALONG WITH THE PREVIOUSLY ISSUED COMMON POLICY CONDITIONS, COVERAGE PART DECLARATIONS, COVERAGE FORM(S) AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

This policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated, which are hereby made a part of this policy, together with such other provisions, stipulations and agreements  may be added hereto, as provided in this policy.

COUNTERSIGNED AT _EAST PROVIDENCE, RI_

BY: _Katherine McKelley_
Authorized representative or countersignature,
whichever applies.

DATE ___05/31/2001___

PRODUCER CODE: ___10700___

GSI-04-RENEWAL CERT (10/99)

UNDERWRITING

## GENERAL STAR INDEMNITY COMPANY

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## GENERAL PURPOSE ENDORSEMENT # 1
### (Non-Premium Bearing)

This endorsement, effective _____ 05/20/2001 _____ forms a part of Policy No.

_____ IMA6413498 _____    issued  to    TOAD HALL CORP.
DBA HARBOR PARKING  _____  by

GENERAL STAR INDEMNITY COMPANY.

IN CONSIDERATION OF THE PREMIUM CHARGED IT IS UNDERSTOOD AND AGREED THAT FOR CG2502 AMENDMENT
OF LIMITS OF LIABILITY IS HEREBY ADDED TO AND MADE PART OF THIS POLICY.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

MLF

**RECEIVED**

DEC 1 0 2001

**TYRONE**

UPDATE IN ACCESS

DEC 1 2 2001

DERRICK

ATTACH BL

| 12/05/2001 | EAST PROVIDENCE, RI | |
|---|---|---|
| Issue Date | Agency At | Authorized Representative |

E.A. KELLE CO., RI INC.

Agency

GSI-04-1801 (8/98)

COMPANY

POLICY NUMBER:  IMA6413498                              COMMERCIAL GENERAL LIABILITY

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# AMENDMENT OF LIMITS OF INSURANCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

### SCHEDULE

| | Limits of Insurance |
|---|---|
| General Aggregate Limit | $ 2,000,000. |
| Products-Completed Operations Aggregate Limit | $ EXCLUDED |
| Personal & Advertising Injury Limit | $ EXCLUDED |
| Each Occurrence Limit | $ 1,000,000. |
| Fire Damage Limit | $ EXCLUDED  Any One Fire |
| Medical Expense Limit | $ EXCLUDED  Any One Person |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The limits of insurance shown in the Declarations are replaced by the limits designated in the Schedule or in the Declarations as subject to this endorsement with respect to which an entry is made.

COMPANY

CG 25 02 11 85          Copyright, Insurance Services Office, Inc., 1984          Page 1 of 1



**GENERAL STAR INDEMNITY COMPANY**
STAMFORD, CONNECTICUT 06904-2354
(Hereinafter called the Company)    A Stock Company

RECEIVED

JUN 1 5 2000

## RENEWAL CERTIFICATE
Valuable Document - Attach To Your Policy

FACILITIES

POL. # IMA641349A                      RENEWAL OF POL. # IMA641349

1.  NAMED INSURED    TOAD HALL CORP.
    MAILING ADDRESS   D/B/A HARBOR PARKING
                      1418 COMMONWEALTH AVE.
                      WEST NEWTON, MA  02165

2.  POLICY PERIOD:    From ___05/20/2000___ to ___05/20/2000___
                      at 12:01 A.M. Standard Time at your mailing address shown above.

IN CONSIDERATION OF PAYMENT OF THE PREMIUM STATED BELOW, THE ABOVE NUMBERED POLICY IS
RENEWED FOR THE POLICY PERIOD STATED ABOVE, SUBJECT TO ALL THE TERMS AND CONDITIONS OF THE
PREVIOUS POLICY, EXCEPT AS OTHERWISE SPECIFIED HEREIN.

_X_ NO CHANGES FROM PREVIOUS POLICY.

___ THE FOLLOWING CHANGES ARE APPLICABLE TO THE RENEWAL CERTIFICATE:
    (ANY AMENDED ENDORSEMENTS/COVERAGE PARTS ARE ATTACHED)

THE COVERAGE HEREON CANNOT BE
CANCELLED FLAT. A PREMIUM CHARGE
BASED ON POLICY CONDITIONS WILL BE
MADE SUBJECT TO MINIMUM EARNED
PREMIUM OF $465 POLICY FEES.
INSPECTION FEES OR FILING FEES ARE
FULLY EARNED AT INCEPTION. TAXES, IF
ANY WILL BE RETAINED ON EARNED PRE-
MIUMS ONLY.

3.  THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED.
    THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

PREMIUM

Commercial Property Coverage Part                      $ _____
Commercial Inland Marine Coverage Part                 $ _____
Commercial General Liability Coverage Part             $ 1,550.00
_____ Coverage Part                $ _____
_____ Coverage Part                $ _____

GSRV
JUN 1 5 2000
MT

TOTAL RENEWAL PREMIUM          $ _____

STATE SURPLUS TAX (4   %)      $ 62.00
POLICY FEE                     $ _____
                               $ _____
                               $ _____
POLICY TOTAL (payable at inception)   $ 1,612.00

UPDATE IN ACCESS
JUN 1 5 2000

GD

THIS RENEWAL CERTIFICATE ALONG WITH THE PREVIOUSLY ISSUED COMMON POLICY CONDITIONS, COVERAGE PART
DECLARATIONS, COVERAGE FORM(S) AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE
THE ABOVE NUMBERED POLICY.

This policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated, which are
hereby made a part of this policy, together with such other provisions, stipulations and agreements may be added hereto, as
provided in this policy.

COUNTERSIGNED AT _EAST PROVIDENCE, RI_    BY: _Katherine M Kelley_
                                          Authorized representative or countersignature,
                                          whichever applies.

DATE ___5/30/00___                        PRODUCER CODE: ___10700___

GSI-04-RENEWAL CERT (10/99)

UNDERWRITING



# GENERAL STAR INDEMNITY COMPANY

2001
renewed
6/05/0

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## GENERAL PURPOSE ENDORSEMENT # 01
### (Non-Premium Bearing)

This endorsement, effective ___05/20/2000___ forms a part of Policy No.

___IMA641349A___  issued to  TOAD HALL CORP.
D/B/A HARBOR PARKING  _____  by

### GENERAL STAR INDEMNITY COMPANY.

IN CONSIDERATION OF THE PREMIUM CHARGED IT IS UNDERSTOOD AND AGREED THAT THE POLICY PERIOD IS HEREBY AMENDED TO
READ:  05/20/2000 - 05/20/2001 .

ALL OTHER TERMS AND CONDITIONS TO REMAIN THE SAME.
CMS

RECEIVED

JUL 1 4 2000

DONDRE

ATTACH SR

UPDATE IN ACCESS
JUL 1 8 2000
CT

___06/30/2000___  E.A.KELLEY CO RI INC  _____
Issue Date  Agency At  Authorized Representative

EAST PROVIDENCE, RI 02914
Agency

GSI-04-I601 (8/96)

UNDERWRITING

# GENERAL STAR INDEMNITY COMPANY
STAMFORD, CONNECTICUT 06904-2354

(Hereinafter called the Company)    A Stock Company

## COMMON POLICY DECLARATIONS

RENEWAL OF:

POL. # IMA641349

# NEW

1.  **NAMED INSURED**

    TOAD HALL CORP

    D/B/A HARBOR PARKING

    **MAILING ADDRESS**

    1418 COMMONWEALTH AVENUE

    WEST NEWTON, MA  02165

**THE COVERAGE HEREON CANNOT BE CANCELLED FLAT. A PREMIUM CHARGE BASED ON POLICY CONDITIONS WILL BE MADE SUBJECT TO MINIMUM EARNED PREMIUM OF $588. POLICY FEES. INSPECTION FEES OR FILING FEES ARE FULLY EARNED AT INCEPTION. TAXES, IF ANY WILL BE RETAINED ON EARNED PRE-MIUMS ONLY**

2.  **POLICY PERIOD:**    From _____05/20/1999_____ to _____05/20/2000_____

    at 12:01 A.M. Standard Time at your mailing address shown above.

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

3.  **THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.**

    *RECEIVED JUN - 6 1999 SERGIO*

| | PREMIUM |
|---|---|
| Commercial Property Coverage Part | $ |
| Commercial Inland Marine Coverage Part | $ |
| Commercial General Liability Coverage Part | $  1,550.00 |
| _____ Coverage Part | $ |
| _____ Coverage Part | $ |

| | | |
|---|---|---|
| APP ID NUMBER(S) _____ _____ (REQUIRED if SUBMIT/PRIOR APPROVAL business) Prior Approval by: | **TOTAL PREMIUM** $ | 1,550.00 |
| _____ (General Star Underwriter) | STATE SURPLUS TAX (  4.00 %) $ | 62.00 |
| Inspection Report 06/02/1999 Ordered _____ | POLICY FEE $ | |
| Attached _____ Not Required _____ | $ | |
| Underwriter in Producer's Office: KATHY DOYLE | $ | |
| (required for every policy.) | $ | |
| | **POLICY TOTAL (payable at inception)** $ | 1,612.00 |

*CRV JUL 20 199*

4.  **Form of Business:**

    ☐ Individual    ☐ Partnership    ☐ Limited Liability Company

    ☐ Joint Venture    ☒ Organization (Other than Partnership, Joint Venture or Limited Liability Company)

5.  **BUSINESS DESCRIPTION**  PUBLIC PARKING

6.  **FORMS AND ENDORSEMENTS (other than applicable Forms and Endorsements shown elsewhere in the policy)**

    GSI-04-CP04J (01-89), IL600 (09-97), GSI-04-1601 (08-96), GSI-04-1604 (08-96), GSI04CP01D(01-99)

THESE COMMON POLICY DECLARATIONS,  AND OTHER  APPLICABLE COVERAGE PART DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

This policy is made and accepted to the foregoing provisions and stipulations and those hereinafter stated, which are hereby made a part of this policy, together with such other provisions, stipulations and agreements as may be added hereto, as provided in this policy.

COUNTERSIGNED AT    EAST PROVIDENCE, RI _____

DATE    06/04/1999 _____

BY *Katherine M Kelley*

Authorized representative or countersignature, whichever applies

PRODUCER CODE: 10700

GSI-04-CPOOD
(7-98)

UNDERWRITING



# GENERAL STAR INDEMNITY COMPANY
STAMFORD, CONNECTICUT 06904-2354
(Hereinafter called the Company)  A Stock Company

## COMMERCIAL GENERAL LIABILITY
## COVERAGE PART DECLARATIONS

Pol. # IMA641349

1. NAMED INSURED _____ TOAD HALL CORP _____    EFFECTIVE DATE 05/20/1999

D/B/A HARBOR PARKING

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE
WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

2. LIMITS OF INSURANCE

| | |
|---|---|
| GENERAL AGGREGATE LIMIT (Other Than Products– Completed Operations) | $ 2,000,000 |
| PRODUCTS-COMPLETED OPERATIONS AGGREGATE LIMIT | $ INCLUDED |
| PERSONAL & ADVERTISING INJURY LIMIT | $ 1,000,000 |
| EACH OCCURRENCE LIMIT | $ EXCLUDED |
| FIRE DAMAGE LIMIT | $ EXCLUDED ANY ONE FIRE |
| MEDICAL EXPENSE LIMIT | $ EXCLUDED ANY ONE PERSON |

3. LOCATION(S) OF ALL PREMISES YOU OWN, RENT OR OCCUPY:

Loc#                              Address

01          OCEAN STREET, HYANNIS, MA

4.
| LOC NO. | CLASSIFICATION | CODE NO. | PREMIUM BASIS | RATES PREM. OPS. | RATES PROD. CO. | ADVANCE PREMIUM PREM. OPS. | ADVANCE PREMIUM PROD. CO. * |
|---|---|---|---|---|---|---|---|
| 01 | PARKING-PUBLIC-OPEN AIR | 46604 S | 100,000 | 15.503 | INCLUDED | 1,550 | INCLUDED |

SUBTOTAL        1,550

* Minimum Premium                          TOTAL        1,550

Policy is not subject to Premium Audit Adjustment, unless noted here:    Annual _____ Other _____

5. FORMS AND ENDORSEMENTS FORMING A PART OF THIS COVERAGE PART ON ITS EFFECTIVE DATE:

GSI-04-C102 (08-96), GSI-04-C107 (03-97), GSI-04-C118 (08-96), GSI-04-C150 (03-98), CG0001 (01-96),
CG2135 (10-93), CG2138 (11-85), CG2145 (11-85), CG2160 (04-98)
med f/y excl

(OCCURENCE)
GSI-04-CP-01D (1/99)                          ORIGINAL



# GENERAL STAR INDEMNITY COMPANY

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## GENERAL PURPOSE ENDORSEMENT # 1
### (Non-Premium Bearing)

This  endorsement,  effective _____05/20/1999_____ forms  a  part  of  Policy  No.

____IMA641349____  issued  to  ____TOAD HALL CORP____
DBA HARBOR PARKING  by

**GENERAL STAR INDEMNITY COMPANY.**

IN CONSIDERATION OF THE PREMIUM CHARGED IT IS UNDERSTOOD AND AGREED THAT THE LOCATION ADDRESS
IS AMENDED TO BE:
OCEAN STREET, HYANNIS, MA
COLONY RD., HYANNIS, MA
BODICK RD., HYANNIS, MA

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

R E C E I V E D

AUG 0 9 1999

TAMARA

*Attach*

UPDATE IN ACCESS

AUG 1 ~ 1999

| | | |
|---|---|---|
| 07/29/1999 | EAST PROVIDENCE, RI | |
| Issue Date | Agency At | Authorized Representative |

E.A. KELLEY CO., RI INC.
Agency

GSI-04-I601 (8/96)

# GENERAL STAR INDEMNITY COMPANY

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## GENERAL PURPOSE ENDORSEMENT # 00
### (Non-Premium Bearing)

This endorsement, effective _____05/20/1999_____ forms a part of Policy No.

_____IMA641349_____ issued to   TOAD HALL CORP
                                D/B/A HARBOR PARKING                          by

**GENERAL STAR INDEMNITY COMPANY.**

IT IS HEREBY UNDERSTOOD AND AGREED THAT AUTO LIABILITY IS EXCLUDED

ALL OTHER TERMS AND CONDITIONS REMAIN THE SAME

---

| 06/04/1999 | EAST PROVIDENCE, RI | *Katharine M. Kelley* |
|---|---|---|
| Issue Date | Agency At | Authorized Representative |
| | E.A. KELLEY CO., RHODE ISLAND | |

Agency

GSI-04-I601 (8/96)                          ORIGINAL

# GENERAL STAR INDEMNITY COMPANY

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# COMBINED PROVISIONS ENDORSEMENT

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM

All of the following numbered paragraphs apply to this policy; EXCEPTIONS: None, unless stated here: _____.

1.  DEDUCTIBLE ENDORSEMENT: Amount $ _____ Each Claim.
    ($0, unless an amount is shown)

    A.  The Companys obligation under Section I. Coverage A. Bodily Injury and Property Damage Liability to pay damages on behalf of the insured applies only to the amount of damages in excess of any deductible amount stated above.

    B.  The deductible amount stated above applies to all damages because of "bodily injury" and "property damage" sustained by one person or organization as the result of any one " occurrence".

    C.  The deductible amount stated above applies to each claim and includes loss payments and adjustment, investigative and legal fees and costs, whether or not loss payment is involved.

    D.  The terms of this insurance, including those with respect to (1) our right and duty to defend any " suits" seeking those damages, and (2) your duties in the event of an "occurrence," claim or " suit" apply irrespective of the application of the deductible amount.

    E.  We may pay any or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

2.  PREMIUM BASES DESIGNATION

    The Premium Bases shown on the Declarations Page and identified by key letter in parentheses apply as follows:

| KEY LETTER | PREMIUM BASE | HOW RATES APPLY |
|---|---|---|
| (a) | Area | per 1,000 square feet |
| (c) | Total Cost | per $1,000 of total cost |
| (m) | Admissions | per 1,000 admissions |
| (p) | Payroll | per $1,000 of payroll |
| (s) | Gross Sales | per $1,000 of gross sales |
| (t) | Other | describe _____ |
| (u) | Units | per unit (describe)_____ |

These premium bases are as outlined in the Insurance Services Office's Commercial Lines Manual Classification Table and Division Six General Liability Sections. Nothing herein contained shall be held to vary, waive, alter or extend any of the terms, conditions, agreements or declarations of the policy other than herein stated.

3.    MINIMUM AND DEPOSIT PREMIUM and ADJUSTABILITY OF PREMIUM

Paragraph b. of Condition 5, Premium Audit is deleted and replaced with the following:

b.    If the premium shown on the Commercial Liability Declarations page is subject to premium audit adjustment, the premium shown is a deposit premium only, even if the premium is not labeled as a deposit premium.

The premium shown on the Commercial Liability Declarations page is also an annual minimum premium, even if the premium is not labeled as a minimum premium.

At the close of each audit period, we will compute the earned premium for the period. Any additional earned premium, generated as a result of a premium audit adjustment, is due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will not return the excess to the first Named Insured.

4.    TOTAL POLLUTION EXCLUSION ENDORSEMENT

Exclusion f. under paragraph 2., Exclusions of COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I - Coverage) is replaced by the following:

This insurance does not apply to:

f.    Pollution

(1)    "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

(2)    Any loss, cost or expense arising out of any:

(a)    Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

(b)    Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.

5.    ASBESTOS LIABILITY EXCLUSION ENDORSEMENT

It is agreed that the following exclusion is added to the policy:

This insurance does not apply to:

1.    "Bodily injury," "property damage," "personal injury" or "advertising injury" arising out of, resulting from, caused or contributed to by asbestos or exposure to asbestos, or

2.    The costs of abatement, mitigation, removal or disposal of asbestos.

This exclusion also applies to:

a.    Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with the above; and

b.    Any obligation to share damages with or repay someone else who must pay damages because of such injury or damage.

 

6.  **EMPLOYMENT-RELATED PRACTICES EXCLUSION**

It is agreed that the following exclusion is added to the policy:

This insurance does not apply to " Bodily injury" or " personal injury" to a person arising out of any:

(1)  Refusal to employ that person;
(2)  Termination of that person's employment; or
(3)  Employment related practices, policies, acts or omissions such as:  coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination directed at that person; or
(4)  The spouse, child, parent, brother or sister of that person as a consequence of " bodily injury" to that person at whom any of the employment related practices described in 1, 2 or 3 above is directed.


This exclusion applies whether the insured may be held liable as an employer or in any other capacity and to any obligation to share damages with or to repay someone else who must pay damages because of the injury.

7.  **DELETION OF WHEN WE DO NOT RENEW CONDITION**

It is agreed that under Section IV - COMMERCIAL LIABILITY CONDITIONS, **When We Do Not Renew,** is deleted from the policy.



POLICY NUMBER:   IMA641349                      COMMERCIAL GENERAL LIABILITY
                                                      CG 21 35 10 93

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – COVERAGE C – MEDICAL PAYMENTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

SCHEDULE

**Description and Location of Premises or Classification:**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to any premises or classification shown in the Schedule, Coverage C. MEDICAL PAYMENTS (Section I) does not apply and none of the references to it in the Coverage Part apply.

The following is added to SUPPLEMENTARY PAYMENTS (Section I):

8.  Expenses incurred by the insured for first aid administered to others at the time of an accident for "bodily injury" to which this insurance applies.

# GENERAL STAR INDEMNITY COMPANY

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## MINIMUM EARNED PREMIUM

It is agreed that a minimum earned premium of __25_____% of the total estimated annual premium shall be fully earned in the event of cancellation by the insured and such minimum earned premium shall not be subject to short rate or pro rate adjustment.

GSI-04-I604 (8/96)





COMMERCIAL GENERAL LIABILITY
CG 21 60 04 98

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION - YEAR 2000 COMPUTER-RELATED AND OTHER ELECTRONIC PROBLEMS

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph 2., **Exclusions of Section I - Coverage A - Bodily Injury And Property Damage Liability** and Paragraph 2., **Exclusions of Section I - Coverage B - Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to bodily injury, property damage, personal injury or advertising injury arising directly or indirectly out of:

a. Any actual or alleged failure, malfunction or inadequacy of:

(1) Any of the following, whether belonging to any insured or to others:

(a) Computer hardware, including microprocessors;

(b) Computer application software;

(c) Computer operating systems and related software;

(d) Computer networks;

(e) Microprocessors (computer chips) not part of any computer system; or

(f) Any other computerized or electronic equipment or components; or

(2) Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph 2.a.(1) of this endorsement due to the inability to correctly recognize, process, distinguish, interpret or accept the year 2000 and beyond.

b. Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph **2.a.** of this endorsement.

Copyright, Insurance Services Office, Inc. 1997



# GENERAL STAR INDEMNITY COMPANY

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# SERVICE OF SUIT CLAUSE

It is agreed that in the event of the failure of General Star Indemnity Company (the "Insurer") to pay any amount claimed to be due hereunder, the Insurer, at the request of the Insured, will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

It is further agreed that service of process in such suit may be made upon the Insurer by certified mail, return receipt requested, addressed to the Insurer in care of the following Insurer Officer: Corporate Secretary, Attention: Legal Department, General Star Indemnity Company, 695 East Main Street, Stamford, CT 06904. In any suit instituted under this contract Insurer will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named Insurer Officer or his designee is authorized and directed to accept service of process on behalf of the Insurer in any such suit and/or upon the request of the Insured to give a written undertaking to the Insured that it or they will enter a general appearance upon the Insurer's behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States of America, which makes provision therefor, the Insurer hereby designates the Superintendent, Commissioner or Director of Insurance or such other insurance department representative specified for that purpose in the statute or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the above-named Insurer Officer as the person to whom the said insurance department representative is authorized to mail such process or a true copy thereof. In addition to the above-named Insurer Officer, for the states set forth below, the Insurer also designates the following local residents as the persons to whom the insurance department representative is authorized to mail such process or a true copy thereof:

1. California - Jere Keprios, CT Corporation System, 818 West 7th Street, Los Angeles, CA  90017
2. Illinois - CT Corporation System, 208 South LaSalle Street, Chicago, IL  60604
3. Rhode Island - Edward S. Goldin, CT Corporation System, 123 Dyer Street, Providence, RI  02903.

IL600(9/97)

COMMERCIAL GENERAL LIABILITY
CG 00 01 01 96

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under WHO IS AN INSURED (SECTION II).

Other words and phrases that appear in quotation marks have special meaning. Refer to DEFINITIONS (SECTION V).

## SECTION I – COVERAGES

## COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

### 1. Insuring Agreement

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

   **(1)** The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

   **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS – COVERAGES A AND B.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

   **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

   **(2)** The "bodily injury" or "property damage" occurs during the policy period.

**c.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

### 2. Exclusions

This insurance does not apply to:

**a. Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

   **(1)** That the insured would have in the absence of the contract or agreement; or

   **(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

     **(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

    (b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers Compensation and Similar Laws**

Any obligation of the insured under a workers compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

    (a) Employment by the insured; or

    (b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

    (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

    (b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

    (c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

    (d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

        (i) If the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

        (ii) If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraph (d)(i) does not apply to "bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the fuels, lubricants or other operating fluids are intentionally discharged, dispersed or released, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent to be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor.

Copyright, Insurance Services Office, Inc., 1994

Subparagraphs **(a)** and **(d)(i)** do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

(2) Any loss, cost or expense arising out of any:

    (a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

    (b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**g. Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

    (a) Less than 26 feet long; and

    (b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**j. Damage to Property**

"Property damage" to:

(1) Property you own, rent, or occupy;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

### k. Damage to Your Product

"Property damage" to "your product" arising out of it or any part of it.

### l. Damage to Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

### m. Damage to Impaired Property or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

### n. Recall of Products, Work or Impaired Property

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

Exclusions c. through n. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in LIMITS OF INSURANCE (Section III).

## COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY

### 1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal injury" or "advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" or offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS – COVERAGES A AND B.

b. This insurance applies to:

(1) "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

(2) "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;

but only if the offense was committed in the "coverage territory" during the policy period.

### 2. Exclusions

This insurance does not apply to:

a. "Personal injury" or "advertising injury":

(1) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

Copyright, Insurance Services Office, Inc., 1994

(2) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

(3) Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured;

(4) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement; or

(5) Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

b. "Advertising injury" arising out of:

(1) Breach of contract, other than misappropriation of advertising ideas under an implied contract;

(2) The failure of goods, products or services to conform with advertised quality or performance;

(3) The wrong description of the price of goods, products or services; or

(4) An offense committed by an insured whose business is advertising, broadcasting, publishing or telecasting.

c. Any loss, cost or expense arising out of any:

(1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

## COVERAGE C. MEDICAL PAYMENTS

### 1. Insuring Agreement

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

### 2. Exclusions

We will not pay expenses for "bodily injury":

a. To any insured.

b. To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. To a person injured on that part of premises you own or rent that the person normally occupies.

d. To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers compensation or disability benefits law or a similar law.

e. To a person injured while taking part in athletics.

f. Included within the "products-completed operations hazard".

g. Excluded under Coverage A.

h. Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

1. All expenses we incur.

2. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

3. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

4. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

5. All costs taxed against the insured in the "suit".

6. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

7. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

   (1) Agrees in writing to:

      (a) Cooperate with us in the investigation, settlement or defense of the "suit";

      (b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

      (c) Notify any other insurer whose coverage is available to the indemnitee; and

      (d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

   (2) Provides us with written authorization to:

      (a) Obtain records and other information related to the "suit"; and

      (b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of paragraph 2.b.(2) of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I – Coverages), such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in paragraph f. above, are no longer met.

Copyright, Insurance Services Office, Inc., 1994

## SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

   **a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   **b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   **c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   **d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

   **a.** Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

   **(1)** "Bodily injury" or "personal injury":

       **(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

       **(b)** To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of paragraph **(1)(a)** above;

       **(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs **(1)(a)** or **(b)** above; or

       **(d)** Arising out of his or her providing or failing to provide professional health care services.

   **(2)** "Property damage" to property:

       **(a)** Owned, occupied or used by,

       **(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

   you, any of your "employees", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

   **b.** Any person (other than your "employee"), or any organization while acting as your real estate manager.

   **c.** Any person or organization having proper temporary custody of your property if you die, but only:

   **(1)** With respect to liability arising out of the maintenance or use of that property; and

   **(2)** Until your legal representative has been appointed.

   **d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

   **a.** "Bodily injury" to a co-"employee" of the person driving the equipment; or

   **b.** "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   **a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage B does not apply to "personal injury" or "advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage C;

   b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal injury" and all "advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage A; and

   b. Medical expenses under Coverage C

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to 5. above, the Fire Damage Limit is the most we will pay under Coverage A for damages because of "property damage" to premises, while rented to you or temporarily occupied by you with permission of the owner, arising out of any one fire.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   Copyright, Insurance Services Office, Inc., 1994   CG 00 01 01 96

c. You and any other involved insured must:

   (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   (2) Authorize us to obtain records and other information;

   (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

   (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a. **Primary Insurance**

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

b. **Excess Insurance**

This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

   (1) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

   (2) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner; or

   (3) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Coverage A (Section I).

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

   (1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

   (2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

c. **Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

 Copyright, Insurance Services Office, Inc., 1994

5. **Premium Audit**

   a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

   b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

   c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

6. **Representations**

   By accepting this policy, you agree:

   a. The statements in the Declarations are accurate and complete;

   b. Those statements are based upon representations you made to us; and

   c. We have issued this policy in reliance upon your representations.

7. **Separation Of Insureds**

   Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

   a. As if each Named Insured were the only Named Insured; and

   b. Separately to each insured against whom claim is made or "suit" is brought.

8. **Transfer Of Rights Of Recovery Against Others To Us**

   If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

9. **When We Do Not Renew**

   If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

   If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V – DEFINITIONS

1. "Advertising injury" means injury arising out of one or more of the following offenses:

   a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   b. Oral or written publication of material that violates a person's right of privacy;

   c. Misappropriation of advertising ideas or style of doing business; or

   d. Infringement of copyright, title or slogan.

2. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above; or

   c. All parts of the world if:

      (1) The injury or damage arises out of:

         (a) Goods or products made or sold by you in the territory described in a. above; or

Copyright, Insurance Services Office, Inc., 1994

    (b) The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; and

  **(2)** The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**7.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

  **a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

  **b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

  **a.** The repair, replacement, adjustment or removal of "your product" or "your work"; or

  **b.** Your fulfilling the terms of the contract or agreement.

**8.** "Insured contract" means:

  **a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

  **b.** A sidetrack agreement;

  **c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

  **d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

  **e.** An elevator maintenance agreement;

  **f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

  Paragraph **f.** does not include that part of any contract or agreement:

  **(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

  **(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

    **(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

    **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

  **(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**9.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**10.** "Loading or unloading" means the handling of property:

  **a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

11. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

12. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

13. "Personal injury" means injury, other than "bodily injury" arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

e. Oral or written publication of material that violates a person's right of privacy.

14. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

    Copyright, Insurance Services Office, Inc., 1994    CG 00 01 01 96    ☐

**b.** Does not include "bodily injury" or "property damage" arising out of:

   **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

   **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

   **(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**15.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

**16.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**17.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**18.** "Your product" means:

**a.** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

   **(1)** You;

   **(2)** Others trading under your name; or

   **(3)** A person or organization whose business or assets you have acquired; and

**b.** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

**a.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**b.** The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

**19.** "Your work" means:

**a.** Work or operations performed by you or on your behalf; and

**b.** Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

**a.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**b.** The providing of or failure to provide warnings or instructions.

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK      )
                             ) SS.:

COUNTY OF NASSAU      )

      I, JOANN FIORELLO, being sworn, say:

      I am not a party to the action, am over 18 years of age and reside in MALVERNE, NEW YORK.

      On **June 1, 2005**, I served the within **ANSWER** by depositing a true copy thereof enclosed in a post-paid wrapper, in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State, addressed to each of the following persons at the last known address set forth after each name:

David E. Lurie, Esq.
Lurie & Krupp, LLP
One McKinley Square
Boston, MA  02109

Andrew V. Buchsbaum, Esq.
Friedman & James LLP
132 Nassau Street
New York, NY  10038

Paul G. Boylan, Esq.
Donovan Hatem LLP
Two Seaport Lane
Boston, MA  02210

Bertram E. Snyder, Esq.
Looney & Grossman LLP
101 Arch Street
Boston, MA  12108

Samuel M. Furgang, Esq.
Sugarman, Rogers, Barshak &
  Cohen, P.C.
101 Merrimac Street
Boston, MA  02114

Thomas E. Clinton, Esq.
Clinton & Muzyka, P.C.
One Washington Mall, Suite 1400
Boston, MA  02108

David E. Dowd, Esq.
Curley & Curley, P.C.
27 School Street, Suite 600
Boston, MA  02108


**JOANN FIORELLO**


Sworn to before me this
1st day of June, 2005


Notary Public

**ANN DILLER**
**Notary Public, State of New York**
**No. 01DI4804319**
Qualified in **Nassau County**
**Commission Expires 5/31/** 06

1863090 v1