UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Joseph A. Kinsella, as Administrator and personal representative of the Estate of Katherine Kinsella, and Joseph A. Kinsella, individually and on behalf of all distributees of Katherine Kinsella, deceased,<br><br>Plaintiffs<br><br>v.<br><br>Wyman Charter Corp., Michael P. Wyman, Joseph Jay Shore, Cord Mitchell Shore, Caralyn Shore, Toad Hall Corp., Ian McColgin, the Motor Vessel "Sea Genie II," her engines, tackle and appurtenances, in rem, the Sailing Vessel "Granuaile," her engines, tackle and appurtenances, in rem,<br><br>Defendants. | Civil Action No.: 04-11615<br><br>Judge Nathaniel M. Gorton<br><br><br>**CONSOLIDATED** |
| Joseph A. Kinsella, as Administrator and personal representative of the Estate of Katherine Kinsella, and Joseph A. Kinsella, individually and on behalf of all distributees of Katherine Kinsella, deceased,<br><br>Plaintiffs,<br><br>v.<br><br>Insurance Company of North America, General Star Indemnity Company, Fireman's Fund Insurance Company, Wyman Charter Corp., Michael P. Wyman, Joseph Jay Shore, Cord Mitchell Shore, Caralyn Shore and Toad Hall Corp.,<br><br>Defendants. | Civil Action No.: 05-10232<br><br>Judge Nathaniel M. Gorton |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTIONS TO DISMISS
OF DEFENDANTS FIREMAN'S FUND INSURANCE COMPANY and
INSURANCE COMPANY OF NORTH AMERICA**

Plaintiffs submit this Memorandum in opposition to the motion to dismiss filed by Fireman's Fund Insurance Company ("FFIC") and the subsequent motion filed by Insurance Company of North America ("INA").

Both FFIC and INA seek to dismiss this action, pursuant to Fed.R.Civ.P. 12(c), on the ground that plaintiffs lack standing to maintain this action. Additionally, FFIC seeks to dismiss this action on the ground that no coverage is afforded by its policy due to a purported "watercraft exclusion."

As discussed herein, these motions should be denied for the following reasons:

(1)     Plaintiffs, as tort claimants, have standing under both federal law and Massachusetts law to maintain the within declaratory judgment action (as opposed to a *direct* action).

(2)     Because Toad Hall Corp., the named insured under the FFIC policy, has cross-claimed against FFIC, and INA has filed both a counterclaim against plaintiffs and cross-claims against its insured, any objections to standing have effectively been waived and essentially elevate form over substance.

(3)     The purported "watercraft" exclusion has no application here because (a) coverage exists for the claim based on the allegations of the Complaint; and (b) numerous ambiguities exist regarding application of the exclusion.

(4)     Alternatively, should the Court determine that plaintiffs lack standing, the cross-claims and counterclaim should be severed and permitted to proceed pursuant to Fed.R.Civ.P. 21.

2

## I.  The Relevant Facts

This matter arises from the tragic death of Katherine Kinsella.

### A.    The Wrongful Death Action:

Plaintiffs commenced the wrongful death action captioned above, civil action number 04-11615 (the "Wrongful Death Action"), asserting jurisdiction pursuant to both diversity of citizenship, 28 U.S.C. § 1332 and this Court's admiralty and maritime jurisdiction, 28 U.S.C. § 1333. See Complaint ¶¶ 2, 3.

Based on voluntary disclosure provided by the Wrongful Death Action defendants, several insurance policies came to light potentially affording coverage in the Wrongful Death Action.

### B.    The Insurance Policies:

The applicable insurance policies involved in the declaratory judgment action are summarized as follows:

| Insurance Carrier | Insured(s) | Policy Number |
|---|---|---|
| INA | Wyman Charter Corp. | HU-200381 |
| General Star | Toad Hall Corp. d/b/a Harbor Parking | IMA641349B |
| FFIC | Toad Hall Corp. d/b/a Harbor Parking | XYZ-000-8453-5806 |

In sum, the INA policy consists of a protection and indemnity/hull policy; the General Star policy is a comprehensive general liability policy; and the FFIC policy is excess to the General Star policy. See INA policy, annexed to INA Answer and Counterclaim (docket entry 17); General Star Policy, annexed as Exhibit C to FFIC Answer (docket entry 27); FFIC Policy, annexed as Exhibit A to FFIC Answer (docket entry 17).

3

**C.      The Declaratory Judgment Action:**

On February 4, 2005, plaintiffs filed the declaratory judgment action captioned above bearing civil action number 05-10232 (the "Declaratory Judgment Action"). Jurisdiction was alleged pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, as premised upon diversity of citizenship, 28 U.S.C. § 1332. See Complaint ¶¶ 2-3. Three insurance carriers were named defendants, representing all potentially available insurance policies to satisfy any Wrongful Death Action judgment.

Significantly, the Shore Defendants and Toad Hall Corp., as insureds, filed cross-claims against defendants INA, General Star Indemnity Company and FFIC, seeking a declaration that these insurance carriers are obligated to defend and indemnify. See Shore defendants/Toad Hall Corp. Answer and Cross Claim (docket entry 5).

Additionally, INA filed a counterclaim against plaintiffs and cross-claimed against Wyman Charter Corp., the Shore Defendants and Toad Hall Corp., seeking a declaration that INA has no obligations to either plaintiffs-tort claimants, the Shore defendants/Toad Hall Corp. or Wyman Charter Corp. under its policy. See INA Answer and Counterclaim (docket entry 17) at 7-14.

## II.  Discussion

**A.      Plaintiffs, as tort claimants, have standing under both federal law and Massachusetts law to maintain the within declaratory judgment action (as opposed to a direct action):**

By this action, plaintiffs do <u>not</u> seek a money judgment against the insurance carrier defendants, commonly known as a *direct action*. Rather, plaintiffs seek a declaration of rights, pursuant to the federal Declaratory Judgment Act, 28 U.S.C. § 2201, premised on

4

diversity jurisdiction, regarding the existence of available insurance coverage.[1]  Because a

justiciable controversy exists and declaratory relief is appropriate, plaintiffs have standing and

this action should proceed.

The crucial distinction between a direct action against an insurance carrier for

money damages and a federal declaratory judgment action seeking a coverage determination

was perhaps best explained by the Fourth Circuit in White v. National Union Fire Ins. Co., 913

F.2d 165 (4th Cir. 1990), where a declaratory judgment action by a tort victim against an

insurance carrier was allowed to proceed even in the absence of an underlying judgment on the

merits against the tortfeasor:

> Federal standards guide the inquiry as to the propriety of
> declaratory relief in federal courts, even when the case is under
> the court's diversity jurisdiction.  The Declaratory Judgment Act
> provides that "in a case of actual controversy . . . any court of the
> United States . . . may declare the rights and other legal relations
> of any interested party seeking such declaration, whether or not
> further relief is or could be brought."  28 U.S.C. §2201(a).
>
> In essence, for a district court to have jurisdiction to issue a
> declaratory judgment, two conditions must be satisfied.  First, the
> dispute must be a "case or controversy" within the confines of
> Article III of the United States Constitution – the
> "Constitutional" inquiry.  Second, the trial court, in its discretion,
> must be satisfied that declaratory relief is appropriate—the
> "prudential" inquiry.
>
> The test for a "case or controversy," the constitutional inquiry, is
> whether the dispute is definite and concrete, touching the legal
> relations of parties having adverse legal interests.  It must be a
> real and substantial controversy admitting of specific relief
> through a decree of conclusive character, as distinguished from
> an opinion advising what the law would be upon a hypothetical
> state of facts. . . .

---

[1] As discussed below at 8-9, a "direct action against an insurance company is a lawsuit for payment to remedy the liability of the insured."  Saylab v. The Hartford Mutual Ins. Co., 271 F. Supp. 2d 112, 116 (D. D.C. 2003) (citation omitted).  An action to determine coverage is not a direct action.  Saylab, supra, 271 F. Supp.2d at 116 ("This lawsuit is not a 'direct action' because the Saylab family is not trying to extract payment from the Insurance Defendant for the actions of [the insured]; rather, they seek a declaration of coverage.").

> [Insurer] argues that no controversy can exist until [tort victim] obtains a judgment against [tortfeasor], . . . But in <u>Maryland Casualty Co.</u>, the Supreme Court held that a controversy existed between an insurer and a person injured by the insured even though the injured person had not yet obtained a judgment against the insured. 312 U.S. at 274. The fact that there was no formally adjudicated liability was not dispositive.

<u>White,</u> 913 F.2d at 166 (quotations and citations omitted).

Similarly, in <u>Cincinnati Ins. Co. v. Holbrook,</u> 867 F.2d 1330 (11th Cir. 1989), the Eleventh Circuit also allowed a declaratory judgment action to proceed despite a Georgia state statute precluding such an action:

> Assuming, *arguendo*, that the district court correctly interpreted the law of Georgia to provide that an insurer cannot seek declaratory relief in Georgia as to its obligation under uninsured motorist coverage unless and until the tort liability of the uninsured motorist to the insured has bee adjudicated, an invocation of the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, is neither precluded nor controlled by Georgia's procedural law.    The principal of Georgia law upon which the district court opinion turned is procedural and not substantive.  The mere fact, if it be a fact, that the doors of Georgia's courts are closed . . . unless and until the liability . . . if any, has been determined, does not mean that the doors of the federal courts are automatically closed . . . where the requisites for diversity jurisdiction exist.

<u>Cincinnati Ins. Co.</u>, <u>supra</u>, 867 F.2d at 1332-33 (citations omitted)

In <u>Gravatt v. General Star Indemnity Co.</u>, 1998 U.S. Dist. Lexis 18827 (S.D.N.Y. 1998), <u>rearg</u>. <u>denied</u>, 1999 U.S. Dist. Lexis 4824 (S.D.N.Y. 1999), a personal injury plaintiff commenced a declaratory judgment action against General Star Indemnity Company, as general liability insurer, seeking an adjudication of insurance coverage under its policy.  In determining that the <u>Gravatt</u> tort plaintiff did have standing, the court noted:

> General Star contends that as this case is in federal court on the basis of diversity, the Court is bound to apply state substantive law. Thus, according to General Star, this Court cannot permissibly hear

the Gravatts' declaratory judgment claim since the Gravatts have not satisfied the mandatory "condition precedent" under [NY] Insurance Section 3420(a)(2) [which requires a judgment before proceeding against an insurance carrier]. However, the Declaratory Judgment Act is procedural.  As such, federal law determines whether a federal court may properly render a declaratory judgment. State substantive law on this subject is inapposite. Accordingly, the Gravatts have standing to bring a declaratory judgment claim.

Gravatt, 1998 U.S. Dist. Lexis 18827, *7-8; see also Federal Kemper Ins. Co. v. Rauscher, 807 F.2d 345, 352 ("It is settled law that, as a procedural remedy, the federal rules respecting declaratory judgment actions, apply in diversity cases.  While state law must determine the substantive rights and duties to the insurance contract, the question of justiciability is a federal issue to be determined only by federal law. **Thus a federal court decides for itself whether a party has standing to raise a particular issue**, or that a particular matter is justiciable or that it is not." (quotation and citation omitted) (emphasis added)); deBruyne v. Clay, 1997 U.S. Dist. Lexis 12224 at * 12 (S.D.N.Y. 1997) ("Even if it were assumed that the New York courts would not entertain a declaratory judgment action by plaintiffs [against insurer] at this time, the Erie doctrine does not prohibit the federal courts from providing that remedy to plaintiffs." ); Monticello Ins. Co. v. Patriot Security, Inc., 926 F. Supp. 97 (E.D. Tex. 1996) (federal court sitting in diversity may adjudicate insurance rights pursuant to federal Declaratory Judgment Act where actual controversy exists even in face of Texas state law holding such adjudication merely advisory in nature); Icarom, PLC v. Howard County, 904 F. Supp. 454 (D. Md. 1995) (federal court determines insurance dispute pursuant to federal Declaratory Judgment Act despite Maryland state law precluding litigation of insurance coverage before trial of the underlying tort claim).

Although research has revealed no First Circuit or District of Massachusetts case directly on point to the facts presented here, First Circuit cases discussing standing in

declaratory judgment actions support plaintiffs' position that they do have standing to seek a declaratory judgment here. See, e.g., New Hampshire Right to Life PAC v. Gardner, 99 F.3d 8, 12-14 (1st Cir. 1996) (standing determinations in federal cases involves "a blend of constitutional requirements and prudential considerations" (citations omitted)).

In sum, because a justiciable controversy exists here, and resolution of that controversy will serve a useful purpose in clarifying the insurance dispute, plaintiffs have standing to maintain this action pursuant to the federal Declaratory Judgment Act and defendants' motions should be denied.

Moving defendants' reliance upon Tessier v. State Farm Mut. Ins. Co., 458 F.2d 1299 (1st Cir. 1972) and Szafarowics v. Gotterup, 68 F. Supp.2d 38 (D. Mass. 1999) (Gorton, J.) is misplaced. Both Tessier and Szafarowics involved *direct* actions by personal injury claimants against liability insurance carriers, seeking not an adjudication of those carriers' obligations to provide coverage, but money damages directly against the insurance carriers. The distinction between the direct actions in Tessier and Szafarowics and the declaratory judgment action here is crucial.

A "direct action against an insurance company is a lawsuit for payment to remedy the liability of the insured." Saylab v. The Hartford Mutual Ins. Co., 271 F. Supp. 2d 112, 116 (D. D.C. 2003) (citation omitted). An action to determine coverage is not a direct action. Saylab, supra, 271 F. Supp.2d at 116 ("This lawsuit is not a 'direct action' because the Saylab family is not trying to extract payment from the Insurance Defendant for the actions of [the insured]; rather, they seek a declaration of coverage.") In neither Tessier nor Szafarowics was the availability of coverage an issue.[2] In both Tessier and Szafarowics, the courts correctly

---

[2] In Tessier, the plaintiff sought to proceed directly against the insurance carrier "to avoid the formality of obtaining the appointment of an ancillary administrator of the insured tortfeasor within the Commonwealth."

8

concluded that M.G.L. c. 214 § 3(9) required that the plaintiff first obtain a judgment against the tortfeasor before proceeding against the insurer to collect payment for that judgment.

Here, both plaintiffs and the named insureds seek, by way of declaratory judgment, not direct action, an adjudication of the insurers obligations to indemnify, and in the case of the insureds, to defend. The procedural and substantive posture of this case stands in stark contrast to the direct actions presented in <u>Tessier</u> and <u>Szafarowics</u> and as such, those cases should have no bearing in this action.

Finally, even if this Court were to determine that Massachusetts State law applies, plaintiffs submit that they have standing pursuant to M.G.L. c. 93A § 9(1). <u>See</u> <u>also</u> <u>Van Dyke v. St. Paul</u>, 388 Mass. 671 (1982).

**B. Because Toad Hall Corp., the named insured under the FFIC policy, has cross-claimed against FFIC, and INA has filed both a counterclaim against plaintiffs and cross-claims against its insured, any objections to standing have effectively <u>been waived and essentially elevate form over substance.</u>**

Toad Hall Corp., the named insured under the FFIC policy, has cross-claimed against FFIC. More importantly, INA has counterclaimed against plaintiffs. As such, a justiciable controversy exists before this Court and defendants motions should be denied on this ground as well. <u>See</u>, <u>e.g.</u>, <u>Hawkeye-Security Ins. Co. v. Schulte</u>, 302 F.2d 174 (7th Cir. 1962) (error to dismiss tort claimant from declaratory judgment action commenced by insurer against both insured and tort claimant).

---

<u>Tessier</u>, 458 F.2d at 1299. In <u>Szafarowics</u>, it appears the plaintiff was motivated to proceed directly against the insurer in part by the dubious exercise of the Court's *in personam* jurisdiction over the Cayman Island tortfeasors.

C.   **The purported "watercraft" exclusion has no application here because (a) coverage exists for the claim based on the allegations of the Complaint; and (b) numerous ambiguities exist regarding application of the exclusion:**

    (1)   **Coverage exists under the FFIC and/or General Star Policy for the allegations contained in the Complaint:**

The General Star primary policy on its face insures Toad Hall Corp. for the wrongful death action alleged in the Complaint. See General Star Policy, annexed to the FFIC Answer., definitions of "Bodily Injury." The standard is whether the allegations of the Complaint are "reasonably susceptible" of an interpretation that they state a claim covered by the policy. The Liquor Liability Joint Underwriting Association of Massachusetts v. Long, 1993 WL 818638 (Mass Super. 1993) (citing Sterilite Corp. v. Continental Casualty Co., 17 Mass.App.Ct. 316, 318 (1983)).[3] Under that standard, coverage exists, and FFIC bears the burden of proving that the watercraft exclusion exempts the claim from coverage.

    (2)   **Numerous ambiguities existing regarding application of the purported "watercraft exclusion:"**

The law in Massachusetts "is well-settled that exclusions from coverage are to be strictly construed, and any ambiguity in an exclusion must be construed against the insurer." Hingham Mut. Fire Ins. Co. v. Niagara Fire Ins. Co., 46 Mass.App.Ct. 500, 504 (1999). A term is ambiguous if it is "susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one." County of Barnstable v. Am. Fin. Corp., 51 Mass.App.Ct. 213, 215 (1999) (citation omitted).

---

[3] Unlike the procedural issue of standing discussed above, which is determined pursuant to federal law, the construction of the insurance contract at issue here should be determined by state law. See, e.g., N.H. Ins. Co. v. Dagnone, 2005 U.S. Dist. Lexis 6986 (D.R.I. 2005).

Initially, two purported watercraft exclusions conceivably could apply here.  The

first, contained in the **underlying General Star policy**, provides as follows:

Section I—Coverages

COVERAGE A.  BODILY INJURY AND PROPERTY DAMAGE
LIABILITY

       \*           \*           \*

2. Exclusions

This insurance does not apply to:

       \*           \*           \*

g.  Aircraft, Auto or Watercraft

"Bodily injury" or "property damage" arising out of the ownership,
maintenance, use or entrustment to others of any aircraft, "auto" or
watercraft owned or operated by or rented or loaned to any insured.
Use includes operation and "loading or unloading".  This exclusion
does not apply to:

(1)  A watercraft while ashore on premises you own or rent;
(2)  A watercraft you do not own that is:

(a) Less than 26 feet long; and
(b) Not being used to carry persons or property for a charge.

The second exclusion, contained in the **FFIC excess policy**, provides as follows:

Watercraft Exclusion—178819 03 98
Umbrella and Excess Liability Policy Amendment

The policy does not apply to any liability arising out of the
ownership, maintenance, operation, use, entrustment to others,
loading or unloading of any watercraft.

All other terms and conditions of the policy remain unchanged.

11

Initially, the Court should deny FFIC's motion at this time as premature, inasmuch as its purported watercraft exclusion only becomes triggered when the primary (i.e. General Star) policy is exhausted. See FFIC Policy, annexed Exhibit C to FFIC's moving papers ("We will pay on behalf of any Insured those sums in excess of Primary Insurance that any Insured becomes legally obligated to pay . . . .").

Even if this Court were to consider either or both of the purported watercraft exclusions contained in the General Star and/or FFIC policies, multiple ambiguities exist, and the motion of FFIC on this ground should be denied.

First and foremost, for the watercraft exclusion to apply, the claim must arise out of the "ownership, maintenance, use or entrustment to others" (General Star exclusion, plus multiple exceptions) or the "ownership, maintenance, operation, use, entrustment to others, loading or unloading of any watercraft" (FFIC exclusion). The quoted language in the FFIC exclusion is unclear as to *whose* "ownership, maintenance, operation, use, etc." renders the exclusion operative. Construing this policy exclusion against the insurer, as this Court should, a reasonable interpretation is that it is the *insured's* "ownership, maintenance, etc." This finding is bolstered by the language referring to "entrustment to others."

In any event, based upon the record presently before this Court, there certainly can be no finding at the present time that insured Toad Hall Corp. owned, maintained, operated or used the subject watercraft. If anything, the contrary is true, especially given the admissions by defendant INA to ¶17 of the Complaint that Wyman Charter Corp. and not Toad Hall Corp. owned the vessel. See INA answer (docket entry 17) at ¶17. See, e.g., Aetna Casualty and Surety Co. v. Stover, 327 F.2d 288 (8th Cir. 1964) (finding that insured did not own watercraft vitiates watercraft exclusion, coverage upheld); Howell v. American Cas. Co., 691 So.2d 715,

726-27 (La. App.), <u>writ</u> <u>denied,</u> 700 So.2d 512 (La. 1997) (definition of "operation" of vessel contained within watercraft exclusion clause ambiguous under terms of policy and facts of particular case); <u>Hennings v. State Farm Fire and Cas. Co.,</u> 438 N.W.2d 680, 683-84 (Minn. App. 1989) (where corporation owned boat rather than insured, watercraft exclusion found inapplicable).

In sum, given the coverage afforded by the FFIC policy, the multiple ambiguities contained in the purported watercraft exclusion, and the limited factual record to date, FFIC's motion to dismiss on the ground of the watercraft exclusion should be denied.

**D.    Alternatively, should the Court determine that plaintiffs lack standing, the cross-claims and counterclaim should be severed and permitted to proceed  pursuant  to  Fed.R.Civ.P. 21**

Fed.R.Civ.P. 21 provides as follows:

**Rule 21.  Misjoinder and non-joinder of parties.**

Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just.  Any claim against a party may be severed and proceeded with separately.

Plaintiffs submit that in the event this Court holds that plaintiffs lack standing, the cross-claims and counterclaims should be severed and permitted to proceed pursuant to Fed.R.Civ.P. 21.

## Conclusion

For the reasons discussed above, the motions of defendants Fireman's Fund Insurance Company and Insurance Company of North American should be DENIED.

Dated:  August 24, 2005

Joseph A. Kinsella, as Administrator and personal representative of the Estate of Katherine Kinsella, and Joseph A. Kinsella, individually and on behalf of all distributees of Katherine Kinsella,

By their attorneys,

_/s/  Andrew V. Buchsbaum_____
Andrew V. Buchsbaum
admitted *pro hac vice*
Friedman & James LLP
132 Nassau Street
New York, NY  10038
(212) 233-9385
(212) 619-2340 (facsimile)
*abuchsbaum@friedmanjames.com*

14

**Certificate of Service**

        I, Andrew V. Buchsbaum, hereby certify that on August 24, 2005, I served a true copy of the foregoing Memorandum in Support of motion to consolidate by first class mail, postage prepaid, directed to:

Samuel M. Furgang, Esq.
Sugarman, Rogers, Barshak & Cohen, P.C.
Attorneys for defendant General Star
101 Merrimac St.
Boston, MA  02114-4737

Paul G. Boylan, Esq.
Donovan & Hatem, LLP
Attorneys for the Shore Defendants
World Trade Center
Two Seaport Lane, 8th Floor
Boston, MA  02210

Sarah B. Herlihy, Esq.
Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C.
Co-Counsel for plaintiffs in Wrongful Death action
One Financial Center
Boston, MA  02111

Bertram E. Snyder, Esq.
Patrick O. McAleer, Esq.
Looney & Grossman LLP
Attorneys for Wyman Charter Corp.
101 Arch Street
Boston, MA  02110

Thomas E. Clinton, Esq.
Clinton & Muzyka, P.C.
Attorneys for defendant Michael Wyman
One Washington Mall, Suite 1400
Boston, MA  02108

David D. Dowd, Esq.
Curley & Curley, P.C.
Attorneys for defendant Insurance Company of North America
27 School St., Suite 600
Boston, MA  02108

Mark W. Roberts, Esq.
McRoberts, Roberts & Rainer, LLP
Attorneys for Fireman's Fund
53 State Street, Exchange Place
Boston, MA   02109

Gary D. Centola, Esq.
Frank A. Valverde, Esq.
Rivkin Radler LLP
Attorneys for Fireman's Fund
926 EAB Plaza
Uniondale, NY   11556-0926

Ian McColgin
Defendant pro-se
P.O. Box 1991
Hyannis, MA   02601

Dated:  August 24, 2005

/s/Andrew V. Buchsbaum
Andrew V. Buchsbaum