UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

| | |
|---|---|
| JOSEPH A. KINSELLA, As Administrator and Personal representative Of The Estate Of Katherine Kinsella, And JOSEPH A. KINSELLA, Individually And On Behalf Of All Distributees Of Katherine Kinsella, Deceased,<br><br>Plaintiffs,<br><br>v.<br><br>WYMAN CHARTER CORP., MICHAEL P. WYMAN, JOSEPH JAY SHORE, CORD MITCHELL SHORE, CARALYN SHORE, AND TOAD HALL CORP., IAN MCGOLGIN, THE MOTOR VESSEL "SEA GENIE ) II," her engines, tackle and appurtenances, in rem, THE SAILING VESSEL "GRANUAILE," her engines, tackle and appurtenances, in rem,<br><br>Defendants. | **CIVIL ACTION NO. 05-11615-NMG**<br><br>**(JUDGE NATHANIEL M. GORTON)** |

---

| | |
|---|---|
| JOSEPH A. KINSELLA, As Administrator and Personal representative Of The Estate Of Katherine Kinsella, And JOSEPH A. KINSELLA, Individually And On Behalf Of All Distributees Of Katherine Kinsella, Deceased,<br><br>Plaintiffs,<br><br>v.<br><br>INSURANCE COMPANY OF NORTH AMERICA GENERAL STAR INDEMNITY COMPANY, FIREMAN'S FUND INSURANCE COMPANY, WYMAN CHARTER CORP., MICHAEL P. WYMAN, JOSEPH JAY SHORE, CORD MITCHELL SHORE, CARALYN SHORE, AND TOAD HALL CORP.,<br><br>Defendants. | **CIVIL ACTION NO. 05-10232-NMG** |

**DEFENDANT FFIC'S OPPOSITION TO THE SHORE
DEFENDANTS RULE 56(f) MOTION AND PLAINTIFFS'
RULE 21 MOTION AND MOTION TO FILE REPLY**

Defendant Fireman's Fund Insurance Company ("FFIC") hereby opposes the Shore Defendants' (the "Shores") motion for further discovery pursuant to Fed. R. Civ. Pro. ("Rule") 56(f) and Plaintiffs' motion for severance, pursuant to Rule 21. FFIC also moves the Court for leave, pursuant to Local Rule 7.1(B)(3), to file a reply to Plaintiffs' and the Shores' oppositions to FFIC's Motion to Dismiss, pursuant to Rule 12(c), on the grounds that they raise new arguments not addressed in FFIC's initial moving papers and raise legal contentions that are inaccurate. In support of the above, FFIC submits the following Memorandum:

**MEMORANDUM**

The Shores have cross-moved for relief pursuant to Rule 56(f) on the grounds that they need further discovery to oppose FFIC's Motion to Dismiss. As demonstrated below, their motion should be denied because FFIC has provided every document relevant to the terms of the FFIC Policy and the issues raised in FFIC's Motion to Dismiss.

The Plaintiffs have cross-moved to sever the cross-claims of the Shores in the event this Court finds they lack standing and to allow that action to proceed. As demonstrated below, and in FFIC's Motion to Dismiss, the cross-claims should be dismissed pursuant to the watercraft exclusion in the FFIC Policy (the "Watercraft Exclusion"). In the event this Court denies FFIC's Motion to Dismiss pursuant to the Watercraft Exclusion, but grants the motion to dismiss for Plaintiffs' lack of standing, FFIC does not object to severing the cross-claims of the Shore Defendants and realigning them as the plaintiffs.

Finally, Plaintiffs and the Shores oppose FFIC's Motion to Dismiss by raising new arguments that are not addressed in FFIC's initial moving papers and raising legal contentions that are inaccurate. For example, Plaintiffs and the Shores raise the new arguments that the

1

Watercraft Exclusion is ambiguous and that they have standing pursuant to M.G.L. ch. 93A. They also claim that the Massachusetts' direct action statute does not apply to declaratory judgment actions, an issue of first impression for this Court.[1] We ask the Court for a brief indulgence in FFIC's reply so that FFIC has a complete and fair opportunity to address the issues first raised by its adversaries. Further, as FFIC's motion concerns complex procedural issues and questions of first impression, the Court will benefit from an accurate analysis of the legal questions at issue, submitted below.

## POINT I

### THE SHORE DEFENDANTS' RULE 56(F) MOTION MUST BE DENIED AS ALL PERTINENT DISCOVERY HAS BEEN PROVIDED BY FFIC

The Shores erroneously contend that FFIC's Motion to Dismiss should not be decided because fact issues regarding the operation of the Watercraft Exclusion remain unavailable. *See* the Shores' Motion at ¶¶ 10-11. FFIC's Motion to Dismiss seeks to: (1) dismiss Plaintiffs from the action on grounds that they lack standing to sue; and (2) dismiss the action on grounds that the plain reading of the Watercraft Exclusion bars coverage. All information relevant to decide the aforementioned issues is contained in the pleadings. Indeed, the relevant policies, containing the relevant exclusions, were annexed to FFIC's Answer, annexed to FFIC's Motion to Dismiss as Exhibit "C."[2] Accordingly, the information necessary to determine the issues of standing and the application of the Watercraft Exclusion has been produced.

Indeed, the only facts relevant to the operation of the Watercraft Exclusion pertain to whether the accident arose out of the "use" of the Boat. The relevant facts as to the use of the Boat are contained in Plaintiffs' Complaints in the declaratory judgment action and the

---

[1] As Plaintiffs admit, there is scarce Massachusetts' case law on the issues herein. *See* Plaintiffs' Opp. at page 7.
[2] Although not relevant to this motion, FFIC has also produced its claims files and underwriting files.

underlying action, which have been consolidated into one action by the Court.[3] The facts alleged by Plaintiffs in these complaints are deemed admitted for purposes of FFIC's Motion to Dismiss. *See, e.g., Moghaddam v. Dunkin' Donuts*, 295 F. Supp. 2d 136, 138 (D. Mass. 2004). The Shores' argument that the applicability of an exclusion depends on facts, rather than allegations, is unsupported by law. *See, e.g., Barnstable County Mutual Fire Insurance Company v. Lally*, 374 Mass. 602, 604, 373 N.E.2d 966, 968 (1978)(holding that the court must look to the allegations in the pleadings against the insureds to determine whether an insurance policy provides coverage).[4]

Based on the foregoing, all the information relevant to FFIC's Motion to Dismiss has been produced and the Shores cannot be heard to argue that they require further discovery. Indeed, not even the Plaintiffs make such an argument.

## POINT II

### AS A MATTER OF MASSACHUSETTS LAW, THE WATERCAFT EXCLUSION IS UNAMBIGUOUS AND THEREFORE EXCLUDES COVERAGE FOR THIS CLAIM

FFIC's Watercraft Exclusion unambiguously provides that "[t]his policy does not apply to any liability arising out of the ownership, maintenance, operation, use, entrustment to others, loading or unloading of any watercraft."[5] The Plaintiffs and the Shores do not dispute that decedent's injuries and death arise out of the use and operation of a watercraft. Instead,

---

[3] The Shores' argument that FFIC cannot rely on facts alleged in the underlying complaint ignores that the Court has consolidated the actions. Also, pursuant to Rule 10, the relevant insurance policies are considered pleadings for purposes of FFIC's Motion To Dismiss because the policies were attached to FFIC's Answer.
[4] The Shores' reliance on *Brazas Sporting Arms, Inc. v. American Empire Surplus Lines Ins. Co.*, 220 F.3d 1 (1st Cir. 2000) and *Bagley v. Monticello Ins. Co.*, 430 Mass. 454, 720 N.E.2d 813 (1999), and other cases, for the proposition that an exclusion must be proven by facts and not allegations, is misplaced. These cases offer no such holding. To the contrary, they hold that the court must analyze the allegations in the complaint to determine coverage obligations, including the application of an exclusion. *See Brazas*, 220 F.3d at 6 (reviewing allegations of complaint to determine whether exclusion applied); *Bagley*, 430 Mass. at 458 (same).
[5] A clear reading of the FFIC Policy establishes that, where the terms of the primary policy are inconsistent with the FFIC Policy, the FFIC Policy governs. *See* FFIC Policy at A(2). Therefore, notwithstanding the different language in the primary carrier's watercraft exclusion, the Watercraft Exclusion in the FFIC Policy governs.

Plaintiffs contend that the Watercraft Exclusion is ambiguous because it does not specify <u>who</u> must own or operate the watercraft for the exclusion to apply. This is a purely legal question to resolve. As set forth below, it must be resolved in FFIC's favor.

It is settled that unambiguous words in an insurance policy exclusion must be interpreted in their usual and ordinary sense. *Bagley v. Monticello Ins. Co.*, 430 Mass. 454, 457, 720 N.E.2d 813 (1999). A term is ambiguous only if its is susceptible to more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one. *Lumbermens Mut. Cas. Co. v. Offices Unlimited, Inc.*, 419 Mass. 462, 466, 645 N.E.2d 1165 (1995). An ambiguity is not created simply because a controversy exists between the parties. *Id.*

Here, Plaintiffs do not claim any wording in the Watercraft Exclusion is unclear. Instead, they claim an ambiguity exists because the Watercraft Exclusion does not specify *who* must be operating or using the watercraft in order to trigger the exclusion. This argument is a red herring designed to create the appearance of an ambiguity where none exists. Based on the plain and ordinary reading of the Watercraft Exclusion, all liability arising out of the use or operation of a watercraft is excluded regardless of who is the owner or operator of the watercraft. There is no other meaning applicable to the exclusion. Indeed, Massachusetts courts have regularly rejected attempts very similar to those made here to limit the plain language of an exclusion.

For example, in *Bagley v. Monticello Ins. Co.*, 430 Mass. 454, 720 N.E.2d 813, a plaintiff was raped while staying at a motel owned by the defendant insured. The plaintiff alleged that the defendant's employees allowed her to become intoxicated; allowed another customer to become intoxicated; and then allowed the other customer to take plaintiff to a hotel room, owned by defendant, where plaintiff was raped and beaten. The defendants' insurance carrier denied coverage based on its intentional acts exclusion which provided that "all coverage is excluded hereunder for any claim which arises wholly or in part out of allegations of violation of any

4

federal, state or local statute, ordinance or law." As here, the exclusion did not specify who had to commit the violation in order for the exclusion to apply. The injured plaintiff argued, among other things, that the exclusion was ambiguous and should be read to apply only to intentional acts committed *by the insured*. After the Superior Court granted *Bagley's* motion for summary judgment, the Supreme Judicial Court reversed and rejected plaintiff's attempt to restrict the literal reading of the exclusion and determined that the exclusion operates "all inclusively" to exclude coverage for intentional acts by third-parties. *See Bagley v. Monticello Ins. Co.*, 430 Mass. at 457, 720 N.E.2d at 816.

Likewise, in *Polaroid v. Travelers Indem. Co.*, 414 Mass. 747, 610 N.E.2d 912 (1992), Polaroid sued several general liability insurers to recover costs incurred in defense and settlement of claims arising from the discharge of pollutants by Polaroid's former waste processor. The insurers had denied coverage based on the language of the pollution exclusion which, with the exception of "sudden and accidental" discharges, eliminated coverage of claims for "property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse, or body of water." Polaroid argued, like the plaintiffs here, that because the exclusion did not specify from whose point of view the discharges needed to be "sudden and accidental," the exclusion was ambiguous and should be read in such a fashion as to make the perspective *of the insured* controlling. The Supreme Judicial Court rejected Polaroid's attempt to qualify the exclusion and found that the policy language did not call for the assessment of the pollution exclusion from the insured's perspective. *See Polaroid v. Travelers Indem. Co.*, 414 Mass. at 754, 610 N.E.2d at 916. Specifically, the court stated:

5

> The question before us is whether there is any dispute of material fact on the question whether the discharges were sudden and accidental. If a discharge was intentional or not sudden, the pollution exclusion denies coverage. The policy language does not call for the assessment of "accidental" or "sudden" from the insureds prospective.

*Id.* at 752, 915.

Thus, the pollution exclusion properly barred coverage, even to an innocent insured, for property damage caused by a third person who discharged a pollutant. The identical situation exists here. The only question to be resolved is whether the accident arises out of the use or ownership of the watercraft . . . not who the actor was.

In *Brazas Sporting Arms, Inc. v. American Empire Surplus Lines Ins. Co.*, 220 F.3d 1 (1st Cir. 2000), the plaintiff, a firearms distributor, alleged that defendant insurer had a duty to defend plaintiff in underlying actions brought by, or on behalf of, gunshot victims on a theory that plaintiff negligently flooded the firearms market. The insurance carrier denied coverage based on the products-completed operations hazard exclusion which excludes coverage for all injuries arising from Brazas's products, off premises, regardless of the circumstances. Brazas attempted to restrict the literal reading of the exclusion by arguing that the exclusion was ambiguous and intended to apply to *defective* products only. The First Circuit rejected Brazas' argument, holding that the language of the exclusion provision did not support a reading that would limit the exclusion to injuries from defective products only. The First Circuit stated that such a reading would "read into the text a requirement that simply was not there." *See Brazas*, 220 F.3d at 6.

Finally, in *New England Mut. Life Ins. Co. v. Liberty Mut. Ins. Co.*, 40 Mass. App. Ct. 722, 667 N.E.2d 295 (Mass. App. 1996), the New England Mut. Ins. Co. ("New England") was sued by a former employee alleging discrimination in the workplace. New England's insurer

disclaimed coverage on grounds that the discrimination exclusion excluded personal injury claims "arising out of [...] discrimination which is unlawful or which is committed by or at the direction of the insured." New England argued that the "discrimination which is unlawful" phrase was ambiguous and should be read to exclude from coverage only those claims which are based on violations of specific statutes barring discrimination and not those claims based on common law theories. In rejecting New England's attempt to restrict the exclusion, the court stated:

> When this language is read in its ordinary and usual sense, there is nothing therein to suggest that the exclusion applies only to those claims for personal injury based on a direct causal relationship between a violation of a statute and the personal injury suffered. To adopt the construction advocated by the insured would distort not only the plain meaning of the clause [citations omitted] but also what an "objectively reasonable insured, reading the relevant policy language, would expect to be covered." [Citations Omitted.]

*See New England Mut. Life Ins. Co.*, 40 Mass. App. Ct. at 724, 667 N.E.2d at 297.

Similar to the above cases, here, the Watercraft Exclusion, when read in its plain and ordinary sense, bars all liability arising out of the use or operation of a watercraft regardless of who owns or operates the watercraft in question. The Shores' attempt to qualify the plain language of the Watercraft Exclusion must be rejected. Accordingly, since the facts relevant to this motion are undisputed, and as set forth in our opening papers, FFIC's Motion to Dimsiss must be granted.

Moreover, the denial of coverage pursuant to the Watercraft Exclusion is perfectly consistent with the remainder of the FFIC Policy. The FFIC Policy is not a marine insurance policy but rather, a commercial general liability policy. Typical CGL policies exclude "liability for damages arising out of the ownership, maintenance, use, loading, or unloading of a watercraft." *See* 9 COUCH ON INSURANCE § 127:38 (3d ed. 2004); *Folksamerica*

*Reinsurance Co. v. Clean Water of N.Y., Inc.*, 413 F.3d 307, 2005 U.S. App. LEXIS 13041, at 31 (2d Cir. 2005). In addition, the FFIC Policy affords coverage to an automobile parking lot company and shuttle bus operator, therefore, it is perfectly reasonable to expect that accidents arising out of the use or operation of a watercraft would not be covered.

Plaintiffs have not identified any persuasive authority to support their attempt to restrict the plain language of the Watercraft Exclusion. Indeed, the cases relied on by Plaintiffs are not applicable because they rely on completely different watercraft exclusions with language requiring the insured to own or operate the watercraft before the exclusion is triggered. *See Aetna Casualty and Surety Co. v. Stover*, 327 F.2d 288 (8th Cir. 1964)(exclusion applicable to insured's owned or operated watercraft); *Howell v. American Cas. Co.*, 691 So.2d 715, 726 (La. App. 1997)(same); *Hennings v. State Farm Fire and Cas. Co.*, 438 N.W.2d 680, 683 (Minn. App. 1989)(same).[6] Here, the Watercraft Exclusion is more expansive and covers all liability arising from the use or operation of <u>any</u> watercraft, not just watercraft owned or operated by an insured.

Notably, the Shores (including FFIC's named insured, Toad Hall Corp.) do not contend that the Watercraft Exclusion is ambiguous. Instead, the Shores contend that any decision on the Watercraft Exclusion would be "abstract and hypothetical" because the FFIC Policy, as an excess policy, has not been triggered. *See* Shores' Opp. at pages 4-5. This argument is without merit and unsupported by any law. Indeed, under such logic, the entire action against FFIC is premature and Plaintiffs' claims, and the Shores' cross-claims, must be dismissed. Plaintiffs, and the Shores, have asserted an action against FFIC and FFIC is entitled to a dismissal based

---

[6] In *Polaroid*, 414 Mass. 747, 610 N.E.2d 912, the SJC noted that the phrase "from the standpoint of the insured" was used in one provision of the policy but not in the pollution exclusion. This was evidence that the insurer could have incorporated the same language into the exclusion if it so wanted. Similarly, here, the fact that other watercraft exclusions specifically require that the insured be the owner or operator is further evidence that no such requirement was intended here. Had that been the intent of the parties, it was easy enough to include that language in the policy.

upon the terms and conditions of its policy. FFIC should not have to incur costs defending against an action that cannot succeed based upon the clear and unequivocal language expressed in the Watercraft Exclusion.

Based on the foregoing, the Watercraft Exclusion applies to bar coverage and the entire action against FFIC, including all cross-claims, must be dismissed. It is respectfully submitted that the Court should not search the contract for a nonexistent ambiguity or rewrite the contract to enlarge the risk to the insurer. FFIC should not be denied the benefit of its bargain with its insured, as reflected in the terms of the FFIC Policy.

## POINT III

### THE MASSACHUSETTS' DIRECT ACTION STATUTE BARS THIS ACTION AND THEREFORE, THE PLAINTIFFS LACK STANDING TO BRING THIS ACTION

Plaintiffs and the Shores do not dispute that the Massachusetts' direct action statute is substantive law. *See Tessier v. State Farm Mut. Ins. Co.*, 458 F.2d 1299 (1st Cir. 1972); *Szafarowicz v. Gotterup*, 68 F.Supp. 2d 38 (D. Mass. 1999). Plaintiffs also admit that this is a declaratory judgment action based on diversity of citizenship. *See* Plaintiffs' opposition at pages 4-5. Because the Massachusetts' direct action statute is substantive law, which must be followed by federal courts exercising diversity jurisdiction, Plaintiffs lack standing to bring the DJ Action against FFIC.

The federal Declaratory Judgment Act, 28 U.S.C.S. § 2201 (the "DJA") provides a vehicle for persons to seek declarations in federal court. However, in diversity cases, a federal court presiding over declaratory judgment actions must apply the applicable state substantive law, including the state's respective direct action statute. *See Hartford Fire Ins. Co. v. Mitlof*, 123 F. Supp. 2d 762, 764 (S.D.N.Y. 2000) (applying New York's direct action statute to injured parties attempting to intervene in a federal declaratory judgment action between an insurer and

9

insured); *Nationwide Mut. Fire Ins. Co. v. Rankin*, No. 99CV591, 2000 U.S. Dist. LEXIS 20035, at *11-14 (W.D.N.Y. 2000) (same); *Hoosier Cas. Co. v. Fox*, 102 F.Supp. 214 (N.D. Iowa 1952)(same); *Richards v. Select Insurance Co.*, 40 F.Supp. 2d 163 (S.D.N.Y. 1999)(dismissing federal declaratory judgment action brought by injured party based on New York's direct action statute); *NAP, Inc. v. Shuttletex, Inc.*, 112 F.Supp.2d 369 (S.D.N.Y. 2000)(same); *Vargas v. Boston Chicken, Inc.*, 269 F. Supp. 2d 92, 2003 U.S. Dist. LEXIS 10900 (E.D.N.Y. 2003)(same); *North Am. Specialty Ins. Co. v. Georgia Gulf Corp.*, 99 F. Supp. 2d 726 (M.D. La. 2000)(same).

The District Court in *Travelers Prop. Cas. Corp. v. Winterthur Int'l*, 2002 U.S. Dist. LEXIS 11342 (S.D.N.Y. 2002) explained the interplay between the DJA and the state's direct action statute as follows:

> Though the Declaratory Judgment Act gives federal courts broad discretion in entertaining suits seeking declaratory relief, a court sitting in diversity must tailor its decision to the substantive rights recognized by state law. A declaratory judgment is a remedy. Its availability does not create an additional cause of action or expand the range of factual disputes that may be decided by a district court sitting in diversity. [Citations Omitted.]

*Winterthur Int'l*, 2002 U.S. Dist. LEXIS 11342, at 14-15. *See also NAP*, 112 F. Supp. 2d at 374, 376 ("Were the Court . . . to ignore the potential [substantive] impacts of [the direct action statute], it would effectively create a federal cause of action and confer standing to maintain a suit where such a privilege may not exist under state law. . . . [Plaintiff's] standing to maintain this case, even though the action was brought under the [DJA], must be decided in accordance with [the direct action statute].

The District Court in *Richards* further explained:

> A declaratory judgment is a remedy. . . . Establishment of a case or controversy as required under [28 U.S.C. 2201] is necessary . . . to insure that a declaratory judgment is not merely advisory. A declaratory judgment action is premature if standing to maintain

10

> such an action depends on a future event that is beyond the control of the parties and that may never occur.
>
> * * *
>
> Plaintiff's remedies are those provided for in [the direct action statute]. To permit an injured plaintiff to bring a declaratory judgment action before the conditions of the statute are fulfilled would bestow upon him a "further privilege" not provided for in [the direct action statute]. In addition, such a judgment would be advisory to the extent that an injured party's statutory rights are inchoate until such time as a judgment against the insured is obtained.

See *Richards v. Select Insurance Co.*, 40 F.Supp. 2d at 167.

Accordingly, Plaintiffs lack standing to bring the instant declaratory judgment action against FFIC. With the exception of the *Gravatt v. General Star Indem. Co.*, 1998 U.S. Dist. Lexis 18827 (S.D.N.Y. 1998) case, which is adequately addressed in FFIC's initial moving papers, Plaintiffs' rely on cases that are inapplicable here. For example, *White v. National Union Fire Ins. Co.*, 913 F.2d 165 (4th Cir. 1990) and *Cincinnati Ins. Co. v. Holbrook*, 867 F.2d 1330 (11th Cir. 1989) did not concern direct actions but rather, an injured persons' <u>entitlement</u> to uninsured motorist benefits under policies in their favor. When an injured party sues her own uninsured motorist carrier, it is not a direct action. *See, e.g., Lee-Lipstreu v Chubb Group of Ins. Cos.*, 329 F3d 898, 900 (6th Cir. 2003). Here, the Plaintiffs are not *entitled* to any direct coverage from FFIC -- Plaintiffs are not privy to the contract of insurance with Toad Hall and have no entitlement to benefits thereunder absent a judgment against the insured.

In addition, in the *Cincinnati* case, the Eleventh Circuit found that the applicable Georgia state law barring a direct action was <u>procedural</u>, not substantive. *See, also deBruyne v. Clay*, 1997 U.S. Dist. LEXIS 12224 (S.D.N.Y. 1997)(ruling that New York's direct action statute is procedural in nature and therefore a declaratory judgment action could be maintained against an insurer). Here, unlike in the above cases, the Massachusetts' direct action statute must be

deemed substantive law, not procedural. *See Tessier v. State Farm Mut. Ins. Co.*, 458 F.2d 1299 (1st Cir. 1972); *Szafarowicz v. Gotterup*, 68 F.Supp. 2d 38 (D. Mass. 1999).

Plaintiffs reliance on *Saylab v. The Hartford Mut. Ins. Co.*, 271 F.Supp.2d 112, 116 (D.D.C. 2003) is also misplaced. In *Saylab*, the injured plaintiffs sought to invoke 28 U.S.C.S. § 1332(c) to destroy diversity jurisdiction and remand a declaratory judgment action. The District Court found that the declaratory judgment action was not a "direct action" for purposes of Section 1332(c) and determining diversity of citizenship. Ultimately, the District Court granted the proper insured the right to bring a cross-claim against its insurer without deciding whether the injured party had standing to assert a declaratory judgment action. *See Saylab*, 271 F.Supp.2d at 119.

Finally, Plaintiffs erroneously rely on other cases that do not concern a direct action statute. Some of the cases involve a dispute solely between an insurer and his insured over whether a declaratory judgment action was premature in light of an ongoing state court action. *See Icarom, PLC v. Howard County*, 904 F.Supp. 454 (D.Md. 1995)(declaratory judgment action brought by insurer against its own insured); *Monticello Ins. Co. v. Patriot Security, Inc.*, 926 F. Supp. 97 (E.D. Tex. 1996)(same). Here, the dispute was commenced by an injured third-party who is not a party to the FFIC Policy.

Other cases involve declaratory judgment actions commenced <u>by the insurer</u> naming an injured party as a defendant. *See Hawkeye-Security Ins. Co. v. Schulte*, 302 F.2d 174 (7th Cir. 1962)(declaratory judgment action brought by insurer against injured party); *deBruyne v. Clay*, 1997 U.S. Dist. LEXIS 12224 (same); *Federal Kemper Ins. Co. v. Rauscher*, 807 F.2d 345 (3d Cir. 1986)(declaratory judgment action brought by insurer against injured party; injured party also had direct entitlement to bring action against Kemper pursuant to Pennsylvania's No-Fault

Law). Thus, the insurer essentially waived the right to object to the injured party's participation in the action. In addition, direct action statutes do not limit an insurer's right to bring an action.

Notably, even if this Court determines that the Massachusetts direct action statute does not apply, such a determination eliminates Plaintiffs standing. Based on the common law, an injured party cannot bring an action against another party's insurer due to the lack of privity between the insurer and the injured party. In order to create exceptions to this rule, numerous states adopted direct action statutes to allow an injured party relief under certain circumstances. Absent such a statute, the common law applies and the injured party retains no standing whatsoever to sue another person's insurer. *See Vargas v. Boston Chicken, Inc.*, 269 F. Supp. 2d 92, 2003 U.S. Dist. LEXIS 10900 (E.D.N.Y. 2003)(New York's direct action statute creates a statutory cause of action where one did not exist under common law); *D&L Marine Transp., Inc. v. Suard Barge Serv.*, 2003 U.S. Dist. LEXIS 16720, at 5-6 (E.D. La. Sept. 22, 2003)(denying direct action because the Louisiana Direct Action statute did not apply to allow a remedy); *Fireman's Fund Ins. Co. v. St. Asaph Lawyer's Title Co. (In re Dameron)*, 213 B.R. 482, 484 (Bankr. E.D. Va. 1997)(in absence of direct action statute, injured party lacked standing to bring declaratory judgment action against insurer). Thus, even if the Massachusetts' direct action statute does not apply to Plaintiffs' declaratory judgment action, Plaintiffs lack standing to bring this suit.

## POINT IV

### THE M.G.L. ch 93A CLAIMS MUST BE DISMISSED BECAUSE PLAINTIFFS AND THE SHORES HAVE NOT INCURRED ANY INJURY CAUSED BY FFIC AND HAVE FAILED TO PROPERLY ALLEGE AN M.G.L. ch 93A CLAIM

The Shores and Plaintiffs contend that Plaintiffs' have standing to sue FFIC pursuant to M.G.L. c. 93A. The M.G.L. c. 93A claims are not actionable because, as the pleadings and

13

opposing papers establish, neither Plaintiffs nor the Shores have endured any injury stemming from any conduct on the part of FFIC. *See* M.G.L. c. 93A §9(1); *Polaroid v. Travelers Indem. Co.*, 414 Mass. 747, 763-64, 610 N.E.2d 912, 922 (1992)(holding that, in order to succeed in a Chapter 93A action, the insured must prove that the insurer's conduct was the cause of any loss it sustained). As Plaintiffs and the Shores admit, FFIC is an excess insurer who owes no defense or settlement obligations until the underlying limits of insurance have been exhausted. *See* the Shores' Opp. at page 4; Plaintiffs' Opp. at page 12. Because FFIC's potential defense and indemnity obligations have not been triggered, neither Plaintiffs nor Toad Hall can possibly have endured any injury stemming from FFIC's failure to provide them. *See Clegg v. Butler*, 424 Mass. 413, 423, 676 N.E.2d 1134, 1141 (1997)(noting that an excess insurers involvement in a 93A claim is "indirect and inferential" because an excess insurer has no obligation or incentive to make an explicit commitment until the primary insurer has fulfilled its obligations).

In addition, Plaintiffs have failed to satisfy a condition precedent to bringing suit by not serving a written demand for relief, identifying the claimant, describing the unfair or deceptive act committed by FFIC, and the injury suffered, as required by M.G.L. c. 93A § 9(3). The statutory notice requirement is not merely a procedural nicety, but, rather, "a prerequisite to suit." *Entrialgo v. Twin City Dodge, Inc.*, 368 Mass. 812, 333 N.E.2d 202, 204 (Mass. 1975). Furthermore, "as a special element" of the cause of action, it must be alleged in the plaintiff's complaint. *Id.* Here, Plaintiffs' complaint contains no indication or assertion that they ever made such a demand and, thus, they fail to state a cognizable claim for relief under ch. 93A. *See Rodi v. Southern New England School of Law*, 389 F.3d 5, 19-20 (1st Cir. 2004)(dismissing 93A claim for failure to allege written demand requirements in Complaint); *Linton v. New York Life Ins. & Annuity Corp.*, 2005 U.S. Dist. LEXIS 3044, at 5-6 (D. Mass. 2005)(same). Accordingly, the M.G.L. c. 93A claims must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court dismiss Plaintiff's Complaint, and all cross-claims, pursuant to Fed. R. Civ. Pro. 12(c).

Respectfully submitted,

FIREMAN'S FUND INSURANCE CO.,
By its attorneys,

By: _____
GARY D. CENTOLA (admitted *pro hac vice*)
FRANK VALVERDE (admitted *pro hac vice*)
RIVKIN RADLER LLP
Attorneys for Defendant
Fireman's Fund Insurance Co.
926 EAB Plaza
Uniondale, NY 11556-0926
(516) 357-3000


MCROBERTS, ROBERTS & RAINER, L.L.P.

By: _____
MARK W. ROBERTS, BBO #554038
Attorneys for Defendant
Fireman's Fund Insurance Co.
Exchange Place
53 State Street
Boston, MA 02139

Dated: September 7, 2005

## CERTIFICATE OF SERVICE

I, Mark W. Roberts, hereby certify that a copy of this Opposition and Motion to File reply brief was sent by first class mail postage pre-paid to all counsel of record.

_____

15