UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Joseph A. Kinsella, as Administrator and
personal representative of the Estate of
Katherine Kinsella, and Joseph A. Kinsella,
individually and on behalf of all distributees of
Katherine Kinsella, deceased,

Plaintiffs,

v.

Insurance Company of North America, General
Star Indemnity Company, Fireman's Fund
Insurance Company, Wyman Charter Corp.,
Michael P. Wyman, Joseph Jay Shore, Cord
Mitchell Shore, Caralyn Shore and Toad Hall
Corp.,

Defendants.

CIVIL ACTION NO. 05-10232 NMG

**GENERAL STAR INDEMNITY COMPANY'S CROSS-MOTION FOR SUMMARY
JUDGMENT AND OPPOSITION TO TOAD HALL CORP.'S CROSS-MOTION FOR
PARTIAL SUMMARY JUDGMENT**

Defendant General Star Indemnity Company ("General Star") hereby respectfully

requests that this court deny Toad Hall Corp.'s motion for partial summary judgment and grant

an order allowing General Star summary judgment against Toad Hall. In support of this motion,

General Star relies upon the following Concise Statement of Material Facts and Memorandum

and the attached Affidavit.

## CONCISE STATEMENT OF MATERIAL FACTS

1.      Toad Hall Corp. d/b/a Harbor Parking ("Toad Hall") is the named insured in a General Star Commercial General Liability Policy, bearing policy number IMA641349B and with a policy period of 5/20/2001-5/20/2002. (Exhibit 1, General Star Policy).[1]

2.      General Star issued commercial general liability policies to Toad Hall on an annual basis beginning on 5/20/1999 and renewed the coverage in subsequent years up to and including the policy year beginning on 5/20/2001 (Exhibit 1).

3.      The General Star policy provides policy limits of $1 million per occurrence and $2 million aggregate (Exhibit 1, General Purpose Endorsement #1 and Amendment of Limits CG2502).

3.      The Common Policy Declarations of the General Star policy list Toad Hall's business description as "Public Parking". (Exhibit 1).

4.      The Commercial General Liability declarations page shows that the premium for the policy was based upon the classification of the insured location as open air public parking (Exhibit 1).

5.      In the Exclusions subsection the General Star policy states:

This insurance does not apply to: …

g. Aircraft, Auto or Watercraft

"bodily injury" … arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured.

(Exhibit 1, Commercial General Liability Form, page 3).

6.      The policy contains a Classification Limitation Endorsement which states:

---

[1] The exhibits to this motion are attached to the Affidavit of Samuel M. Furgang.

>It is agreed that coverage provided by this policy apply only to those operations described under the Description of Hazards Section of the applicable coverage part described on the Declarations page of this policy.

(Exhibit 1).

Additional facts with reference to supporting documents appear in the body of the memorandum.

## MEMORANDUM

**a. The Underlying Complaint.**

In the cross-claim to this action, Toad Hall seeks insurance coverage for the underlying wrongful death action entitled *Kinsella v. Wyman Charter Corp. et al.,* Civil Action No. 04-11615 NMG, pending in this Court. In the underlying action's amended complaint, the plaintiff alleges that on or about July 22, 2001, Katherine Kinsella boarded a charter boat, the Sea Genie II, in Hyannis. At some point in the evening the boat collided with another vessel and was damaged. As a result of the damage and the ensuing maneuvering by the Sea Genie II, Katherine Kinsella fell overboard and drowned (Exhibit 2, Amended Complaint, ¶¶ 45-48).

The underlying complaint also alleges that Toad Hall and the other Shore defendants were individually the owner and/or owner pro hac vice of the Sea Genie II (Exhibit 2, Amended Complaint, ¶¶ 18-21); that they operated the Sea Genie II (Exhibit 2, Amended Complaint, ¶¶ 24-27); that they controlled the Sea Genie II (Exhibit 2, Amended Complaint, ¶¶ 29-33); and that they managed the Sea Genie II (Exhibit 2, Amended Complaint, ¶¶ 36-39).

In Count I of the underlying amended complaint, the plaintiff alleges that the defendants breached their duty of care by allowing and/or permitting the number of passengers to exceed the vessel's licensed capacity and failing to provide adequate life preservers; failing to properly man, maintain, monitor and navigate the vessel; failing to maintain a proper lookout; failing to

promptly repair and warn the passengers of damages following the collision; failing to conduct a

proper search and rescue operation; and failing to timely notify the Coast Guard and/or other

rescue personnel (Exhibit 2, Amended Complaint, ¶ 50).

**b.  The General Star Policy.**

General Star issued a commercial general liability policy to Toad Hall which was

renewed at least twice (Exhibit 1, General Star Policy). The policy in effect at the time of the

accident was a renewal policy which incorporated the provisions of the previously issued policy.

The renewal certificate showed that Toad Hall elected not to purchase commercial inland marine

coverage.  The total premium for the policy was $1,612.00.  In the common policy declarations,

Toad Hall listed its business description as "Public Parking."  The Commercial General Liability

declarations page shows that the premium for the policy was based upon the classification of the

insured location as open air public parking (*Id.*).

Under the Insuring Agreement in the policy, General Star agreed to "pay those sums that

the insured becomes legally obligated to pay as damages because of "bodily injury" … to which

this insurance applies.  We will have the right and duty to defend the insured against any "suit"

seeking those damages.  However, we will have no duty to defend the insured against any "suit"

seeking damages for "bodily injury" to which this insurance does not apply." (Exhibit 1,

Commercial General Liability Form, page 1)

The policy goes on to state, in the Exclusions subsection:

This insurance does not apply to: …

g.  Aircraft, Auto or Watercraft

"bodily injury" … arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured.

(Exhibit 1, Commercial General Liability Form, page 3).

**c.  The Watercraft Exclusion Precludes Coverage For The Underlying Claims.**

It is axiomatic that General Star only has a duty to defend if the allegations in the

underlying complaint are "reasonably susceptible" to an interpretation that they state a claim

covered by the policy.  *Merchants Ins. Co. of New Hampshire Inc. v. United States Fidelity &*

*Guar. Co.,* 143 F.3d 5, 8 (1st Cir. 1995) (quoting *New England Mut. Life Ins. Co. v. Liberty Mut.*

*Ins. Co.* 40 Mass. App. Ct. 722, 667 N.E.2d 295, 297 (1996)).  Contrary to Toad Hall's

argument, "the obligation to defend turns on the facts alleged in the complaint rather than the

facts proven at trial." *Brazas Sporting Arms, Inc. v. American Empire Surplus Lines Ins. Co.,* 220

F.3d 1, 4 (1st Cir. 2000).  Thus, General Star's obligations are determined by the allegations of

the complaint.  It is not required to prove the truth of those allegations.  Indeed, it is required to

assume that the allegations are true for the purposes of the duty to defend, and it may be required

to defend a complaint in which the allegations relevant to a coverage analysis will ultimately be

shown to be false.  *Magoun v. Liberty Mutual Ins. Co.,* 346 Mass. 677, 682, 195 N.E.2d 514

(1964).

Based upon the allegations in the amended complaint, General Star has no duty to defend

Toad Hall because the allegations implicate the watercraft exclusion.  According to the

underlying complaint, the death of Katherine Kinsella allegedly arose out of the ownership,

maintenance or use of the Sea Genie II, which was allegedly owned or operated by or rented or

loaned to Toad Hall.

Although Toad Hall initially recites the correct standard for determining the duty to

defend (Toad Hall memorandum at 6-7), it attempts to extricate itself from the logical effect of

the allegations in the underlying complaint by arguing that an insurer is required to

independently prove the facts that establish that an exclusion in the policy precludes coverage

(Toad Hall memorandum at 9 and 12).  That is not the law in Massachusetts and the cases cited

by Toad Hall provide no support for its position.  For example, in *Bagley v. Monticello Ins. Co.,*

430 Mass. 454, 720 N.E.2d 813 (1999), the court focused upon the allegations in the complaint

in holding that an exclusion for claims arising from illegal acts precluded coverage: "A fair

reading of the plaintiff's complaint in the underlying action indicates that her claim … had their

genesis in Harper's illegal acts."  *Id.* at 458, 720 N.E.2d 816.

Toad Hall's reliance upon another part of the *Bagley* opinion does not withstand scrutiny.

Indeed, the Court's analysis reinforces the applicability of the watercraft exclusion to the

allegations in the complaint.  The cited analysis states: "It is the *source* from which the plaintiff's

personal injury originates rather than the specific *theories of liability* alleged in the complaint

which determines the insurers' duty to defend." *Id.* at 458, 720 N.E.2d 816 (emphasis in

original), quoting *New England Mut. Life Ins. Co. v. Liberty Mut. Ins. Co.,* 40 Mass. App. Ct.

722, 727, 667 N.E. 2d 295 (1996) (holding that insurer had no duty to defend where

discrimination exclusion applied to allegations in complaint; no need for factual finding of

unlawful discrimination).  Contrary to Toad Hall's assertion, the above-quoted analysis does not

mean that allegations in the complaint are irrelevant to proof of an exclusion.  Indeed, both in

*Bagley* and *New England Mut.,* the court held that a policy exclusion precluded coverage without

resort to any facts outside the complaint.[2]

Similarly, in *Brazas Sporting Arms, Inc. v. American Empire Surplus Lines Ins. Co.,* 220

F.3d 1 (1st Cir. 2000), the Court held that there was no duty to defend because a product

---

[2] The only reference in *Bagley* to facts other than those alleged in the complaint involved an assessment of damages
hearing.  This is because, unlike our case, the *Bagley* insured alleged both a duty to defend and a duty to indemnify
after a judgment had been reached in the underlying case.  The duty to defend analysis in *Bagley* did not rely upon
facts outside the complaint.

exclusion applied to the allegations in the complaint. *Id.* at 2, 8-9. The insurer was not required

to provide any "concrete proof" other than that the allegations in the complaint fell within the

parameters of the exclusion. Other cases cited by Toad Hall are distinguishable because they

deal with the duty to indemnify, which is determined by the "true" facts as they are established in

the underlying action. *See, Hakim v. Massachusetts Insurers' Insolvency Fund,* 424 Mass. 275,

675 N.E.2d 1161 (1997). *See also, Liquor Liability Joint Underwriting Assoc. of Mass. v. Long,*

1993 WL 818638 (Mass. Super.)

      In short, the allegations of the complaint determine the scope of coverage including the

applicability of any exclusions in the policy. More particularly, in this case, where the exclusion

applies broadly to bodily injury *arising* from the excluded risk, the coverage analysis focuses

upon the factual allegations in the complaint rather than any legal theories of liability. This is

because the phrase "arising out of" is read expansively so that "the court examining the

exclusion inquires whether there would have been personal injuries, and a basis for the plaintiff's

suit, in the absence of the objectionable underlying conduct." *Bagley, supra,* 430 Mass. at 457,

720 N.E.2d at 816. Here, according to the complaint there would have been no basis for a suit

against Toad Hall in the absence of its alleged ownership or operation of the Sea Genie II

because the decedent's death by drowning allegedly arose from those facts. "To fall within the

watercraft exclusion, the cause of injury must be immediately connected in some manner with

the watercraft or its operation." *See, Liquor Liability, supra,* at *4. Hence, the exclusion

precludes coverage.

      Furthermore, the courts in Massachusetts have become more reluctant to impose a duty to

defend when the underlying complaint has clearly been drafted to circumvent a bar to coverage.

Thus, in *Bagley*, the Court pointed out that the plaintiff may have adopted that strategy in

dropping a claim for negligent service of alcohol that originally appeared in the complaint.

*Bagley, supra,* 430 Mass. at 459 & n.3, 720 N.E.2d at 817.  By a remarkable coincidence, the

plaintiff in this case also originally included a claim for the unauthorized sale and consumption

of alcohol (Exhibit 3, Original Complaint, ¶ 50).  That claim was conspicuously absent in the

amended complaint (Exhibit 2, Amended Complaint).[3]  *See also, Brazas, supra,* at 7 (plaintiffs'

contrived theory of liability cannot affect the application of policy exclusion).[4]  The use of

generalized allegations in an effort to obtain coverage will not succeed where the gravamen of

the complaint clearly triggers an exclusion in the policy.  Since the operation of the vessel was

the immediate source of Katherine Kinsella's death, the plaintiff cannot rely upon alternate

vague theories of liability to avoid the watercraft exclusion.

For this reason, too, the case of *Worcester Mut. Ins. Co. v. Marnell,* 398 Mass. 240, 496

N.E.2d 158 (1986) is inapt.  The Court in *Brazas, supra,* effectively distinguished *Worcester*

*Mut. Ins. Co.* by observing that although negligent supervision of a party at a residence may be

identified as a separate, covered cause of injury, the sources of injury in *Brazas* were

interdependent.  In *Worcester Mut. Ins.* the alleged misconduct was the unsupervised provision

of alcohol (which was apparently a covered risk), while in *Brazas,* all the alleged misconduct

derived from firearms, an excluded risk.  *Brazas, supra,* 220 F.3d at 8.  Here too, the alleged

misconduct all derived from the operation of the watercraft.  *Compare, Liquor Liab., supra*

(injury allegedly resulted from failure to provide security on pier; watercraft exclusion does not

apply to watercraft while ashore).  Thus, unlike *Worcester Mut. Ins.* regardless of the theories of

liability in the underlying complaint, the cause of the decedent's death arose from the operation

of the watercraft.

---

[3] The General Star policy contains a liquor liability exclusion.

[4] For this reason, too, the boilerplate inclusion in the complaint of "such other and further acts of negligence to be proven at trial …" adds nothing to a coverage analysis.

**d.  Operation Of A Watercraft Was Not A Covered Hazard Under The Policy.**

The purpose of the watercraft exclusion has been explained by Massachusetts courts in

the context of efforts by insureds to obtain auto coverage from a homeowners' policy with a

similarly worded exclusion:

> The automobile exclusion was obviously intended to omit from the homeowners' policy coverage which is obtainable under an automobile insurance policy.  The homeowner who owns and operates an automobile ordinarily procures automobile insurance and also determines the amount of that coverage.  The homeowner can reasonably be expected to rely on that coverage for activities related to the ownership and operation of a motor vehicle unless … a premium is paid for supplemental automobile insurance under the homeowners' policy.

*Merrimack Mut. Fire Ins. Co. v. Sampson,* 28 Mass. App. Ct. 353, 358, 550 N.E.2d 901 (1990).

Similarly here, an insured who owns or operates a watercraft can reasonably be expected to rely

on vessel coverage for such activities.  Indeed, this coverage action also includes a cross-claim

by the Shore defendants, including Toad Hall, against Insurance Company of North America, the

insurer of the Sea Genie II.  As in *Merrimack, w*here watercraft insurance could have been

purchased by the insureds to cover against this risk, the watercraft exclusion in the General Star

policy should apply.

The limitation of the policy to specific, non-watercraft related risks is also shown by the

Classification Limitation Endorsement in the General Star policy.  This endorsement states:

> It is agreed that coverage provided by this policy apply only to those operations described under the Description of Hazards Section of the applicable coverage part described on the Declarations page of this policy.

(Exhibit 1).  The Common Policy Declarations page lists the business description of Toad Hall

as: "Public Parking."  Furthermore, the Commercial General Liability Declarations page

classifies the risk as: "Parking – Public – Open Air." Since the allegations in the underlying complaint have no connection to public parking operations there is no coverage.

A similar endorsement was enforced in *Ruiz v. State Wide Insulation and Construction Corp.,* 269 A.D.2d 518, 703 N.Y.S.2d 257 (2000), where the Court held that a business description of "painting" precluded coverage for a claim alleging bodily injury due to a fire while the insureds were repairing a roof. *See also, Wickramasekra v. Associated International Ins. Co.,* 890 So.2d 569 (La.App. 4 Cir. 2003) (holding that a listing in the declarations page that the insured's operation was "loading and unloading of equipment" precluded coverage for injury arising from the loading of a palm tree where the policy contained a classification limitation endorsement).

Quite apart from the effect of the classification limitation endorsement, the First Circuit has indicated that the business description in the declarations may limit the extent of coverage. In *GRE Ins. Group v. Metropolitan Boston Housing Partnership, Inc.,* 61 F.3d 79 (1st Cir. 1995), the Court held that a "business description" in the declarations of "office" was insufficient to limit coverage to the premises. However, this was because the description referred to the "*type* of business, not the premises or building to which insurance was to be limited." *Id.* at 82 (emphasis in original). Here, by contrast, the *type* of business, public parking, does not extend to watercraft operation. Thus, even without the classification limitation endorsement, coverage does not extend to operations beyond those listed in the policy.

## CONCLUSION

For the foregoing reasons, General Star respectfully requests that this Court grant its cross-motion for summary judgment and deny Toad Hall's cross-motion for partial summary judgment.

Defendant, GENERAL STAR INDEMNITY COMPANY,

By:  /s/ Samuel M. Furgang
     Samuel M. Furgang, BBO #559062
     SUGARMAN, ROGERS, BARSHAK & COHEN, P.C.
     101 Merrimac Street, 9th Floor
     Boston, MA 02114
     (617) 227-3030

Dated:  September 26, 2005

## CERTIFICATE OF SERVICE

I, Samuel M. Furgang, hereby certify that September 26, 2005, I served a copy of *General Star Indemnity Company's Cross-Motion for Summary Judgment and Opposition to Toad Hall Corp.'s Cross-Motion for Partial Summary Judgment* on the following counsel of record:

Via Electronic Mail:

Paul G. Boylan, Esquire
Donovan Hatem LLP
World Trade Center East
Two Seaport Lane
Boston, MA 02210

David D. Dowd, Esquire
Curley & Curley, P.C.
27 School Street, Suite 600
Boston, MA 02108

David E. Lurie, Esquire
Lurie & Krupp, LLP
One McKinley Square
Boston, MA 02109

Thomas E. Clinton, Esquire
Clinton & Muzyka, P.C.
One Washington Mall, Suite 1400
Boston, MA 02108

Andrew V. Buchsbaum, Esquire
Friedman & James LLP
132 Nassau Street
New York, NY 10038

Via First Class Mail:

Gary D. Centola, Esquire
Frank A. Valverde, Esquire
Rivkin Radler LLP
926 EAB Plaza
Uniondale, NY 11556

Bertram E. Snyder, Esquire
Patrick O. McAleer, Esquire
Looney & Grossman LLP
101 Arch Street
Boston, MA 02110

Mark W. Roberts, Esquire
McRoberts, Roberts & Rainer, LLP
53 State Street, Exchange Place
Boston, MA 02109

/s/ Samuel M. Furgang
Samuel M. Furgang

367140