UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Joseph A. Kinsella, as Administrator and personal representative of the Estate of Katherine Kinsella, and Joseph A. Kinsella, individually and on behalf of all distributees of Katherine Kinsella, deceased,<br><br>Plaintiffs<br><br>v.<br><br>Wyman Charter Corp., Michael P. Wyman, Joseph Jay Shore, Cord Mitchell Shore, Caralyn Shore, Toad Hall Corp., Ian McColgin, the Motor Vessel "Sea Genie II," her engines, tackle and appurtenances, in rem, the Sailing Vessel "Granuaile," her engines, tackle and appurtenances, in rem,<br><br>Defendants. | Civil Action No.:<br><br>**AMENDED COMPLAINT & JURY DEMAND**<br><br>**PLAINTIFFS DEMAND TRIAL BY JURY ON ALL CLAIMS** |

Plaintiff, Joseph A. Kinsella, as Administrator and personal representative of the Estate

of Katherine Kinsella, and Joseph A. Kinsella, individually and on behalf of all distributees of

Katherine Kinsella, deceased, by their attorneys, Mintz, Levin, Cohn, Ferris, Glovsky and Popeo,

P.C. and Friedman & James LLP, allege as follows:

**Nature of Action:**

1.      This action seeks recovery for maritime personal injuries and wrongful death as a

result of the tragic death of Katherine Kinsella on or about July 22-23, 2001 while a passenger on

board the Motor Vessel "Sea Genie II" subsequent to its collision with the Sailing Vessel

"Granuaile" within the territorial waters of the Commonwealth of Massachusetts.

**Jurisdiction and Venue:**

2.    This Court has jurisdiction pursuant to 28 U.S.C. § 1332 in that the claims asserted herein are between citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000.

3.    This Court also has jurisdiction pursuant to the admiralty and maritime jurisdiction of the United States pursuant to 28 U.S.C. § 1333.

4.    Venue is proper in this District pursuant to 28 U.S.C. §1391(a) in that a substantial part of the events giving rise to the claim occurred in this District.

**The Parties:**

5.    Plaintiffs' decedent, Katherine Kinsella, was at all relevant times a citizen of the Republic of Ireland.

6.    Joseph A. Kinsella, as Administrator and personal representative of the Estate of Katherine Kinsella and Joseph A. Kinsella, individually and on behalf of all distributees, was and still is a citizen and resident of the Republic of Ireland along with all distributees.

7.    Defendant Wyman Charter Corp. was and still is a corporation organized under and existing pursuant to the laws of the Commonwealth of Massachusetts with its office and principal place of business located 66 Channel Point Road, Hyannis, Massachusetts.

8.    Defendant Michael P. Wyman was and still is an individual citizen and resident of the Commonwealth of Massachusetts.

9.    Defendant Joseph Jay Shore was and still is an individual citizen and resident of the Commonwealth of Massachusetts.

10.    Defendant Cord Mitchell Shore was and still is an individual citizen and resident of the Commonwealth of Massachusetts.

11.    Defendant Caralyn Shore was and still is an individual citizen and resident of the Commonwealth of Massachusetts.

12.    Defendant Toad Hall Corp. was and still is a corporation organized under and existing pursuant to the laws of the Commonwealth of Massachusetts with its office and principal place of business located at 316 Sea Street, Hyannis, Massachusetts.

13.    Defendant Ian McColgin was and still is an individual citizen and resident of the Commonwealth of Massachusetts.

14.    The Motor Vessel "Sea Genie II" was and still is a United States flagged vessel having an overall registered length of 58' and is now or will be during the pendency of this action within this district and within the jurisdiction of this Court.

15.    The Sailing Vessel "Granuaile" was and still is a United States flagged vessel having an overall length of 55' and is now or will be during the pendency of this action within the jurisdiction of this Court.

**Allegations Common to All Causes of Action:**

16.    At all relevant times, defendant Wyman Charter Corp. owned the Motor Vessel "Sea Genie II."

17.    At all relevant times, defendant Michael P. Wyman owned the Motor Vessel "Sea Genie II."

18.    At all relevant times, defendant Joseph Jay Shore was the owner and/or owner pro hac vice of the Motor Vessel "Sea Genie II."

19.    At all relevant times, defendant Cord Mitchell Shore was the owner and/or owner pro hac vice of the Motor Vessel "Sea Genie II."

3

20.    At all relevant times, defendant Caralyn Shore was the owner and/or owner pro hac vice of the Motor Vessel "Sea Genie II."

21.    At all relevant times, defendant Toad Hall Corp. was the owner and/or owner pro hac vice of the Motor Vessel "Sea Genie II."

22.    At all relevant times, defendant Wyman Charter Corp. operated the Motor Vessel "Sea Genie II."

23.    At all relevant times, defendant Michael P. Wyman operated the Motor Vessel "Sea Genie II."

24.    At all relevant times, defendant Joseph Jay Shore operated the Motor Vessel "Sea Genie II."

25.    At all relevant times, defendant Cord Mitchell Shore operated the Motor Vessel "Sea Genie II."

26.    At all relevant times, defendant Caralyn Shore operated the Motor Vessel "Sea Genie II."

27.    At all relevant times, defendant Toad Hall Corp. operated the Motor Vessel "Sea Genie II."

28.    At all relevant times, defendant Wyman Charter Corp. controlled the Motor Vessel "Sea Genie II."

29.    At all relevant times, defendant Michael P. Wyman controlled the Motor Vessel "Sea Genie II."

30.    At all relevant times, defendant Joseph Jay Shore controlled the Motor Vessel "Sea Genie II."

4

31.     At all relevant times, defendant Cord Mitchell Shore controlled the Motor Vessel "Sea Genie II."

32.     At all relevant times, defendant Caralyn Shore controlled the Motor Vessel "Sea Genie II."

33.     At all relevant times, defendant Toad Hall Corp. controlled the Motor Vessel "Sea Genie II."

34.     At all relevant times, defendant Wyman Charter Corp. managed the Motor Vessel "Sea Genie II."

35.     At all relevant times, defendant Michael P. Wyman managed the Motor Vessel "Sea Genie II."

36.     At all relevant times, defendant Joseph Jay Shore managed the Motor Vessel "Sea Genie II."

37.     At all relevant times, defendant Cord Mitchell Shore managed the Motor Vessel "Sea Genie II."

38.     At all relevant times, defendant Caralyn Shore managed the Motor Vessel "Sea Genie II."

39.     At all relevant times, defendant Toad Hall Corp. managed the Motor Vessel "Sea Genie II."

40.     At all relevant times, defendant Joseph Jay Shore chartered the Motor Vessel "Sea Genie II" from defendant(s) Wyman Charter Corp. and/or Michael P. Wyman.

41.     At all relevant times, defendant Cord Mitchell Shore chartered the Motor Vessel "Sea Genie II" from defendant(s) Wyman Charter Corp. and/or Michael P. Wyman.

5

42.     At all relevant times, defendant Caralyn Shore chartered the Motor Vessel "Sea Genie II" from defendant(s) Wyman Charter Corp. and/or Michael P. Wyman.

43.     At all relevant times, defendant Toad Hall Corp. chartered the Motor Vessel "Sea Genie II" from defendant(s) Wyman Charter Corp. and/or Michael P. Wyman.

44.     At all relevant times, defendant Ian McColgin owned, operated, managed and/or controlled the Sailing Vessel "Granuaile."

45.     On or about July 22, 2001, plaintiff's decedent, Katherine Kinsella, boarded the Motor Vessel "Sea Genie II" as a passenger within the Commonwealth of Massachusetts.

46.     On or about July 22, 2001, the Motor Vessel "Sea Genie II" was caused to collide with the Sailing Vessel "Granuaile" at or about Hyannis Harbor within the territorial waters of the Commonwealth of Massachusetts, causing damage to the Motor Vessel "Sea Genie II."

47.     As a result of the collision as aforesaid, the damages sustained, and the ensuing maneuvering by the Motor Vessel "Sea Genie II," plaintiff's decedent Katherine Kinsella was caused to fall overboard from the Motor Vessel "Sea Genie II."

48.     As a result thereof, plaintiff's decedent Katherine Kinsella was caused to sustain severe personal injuries and endure prolonged pain and suffering, ultimately resulting in her death by drowning within the territorial waters of the Commonwealth of Massachusetts.

**FIRST CAUSE OF ACTION**
**(negligence against Wyman Charter Corp., Michael P. Wyman, Joseph Jay Shore, Cord Mitchell Shore, Caralyn Shore, Toad Hall Corp. and/or Motor Vessel "Sea Genie II," in rem)**

49.     Plaintiffs repeat each and every allegation contained in paragraphs 1 through 48 with the same force and effect as if set forth at length herein.

50.     The injuries to and ensuing death of the plaintiffs' decedent Katherine Kinsella were caused as a direct and proximate result of the breach and violation of the duty of care owed

6

to plaintiffs' decedent by defendants Wyman Charter Corp., Michael P. Wyman, Joseph Jay

Shore, Cord Mitchell Shore, Caralyn Shore, Toad Hall Corp. and/or Motor Vessel "Sea Genie

II," their agents and/or employees by, among other things, allowing and/or permitting the

number of passengers on board to exceed the vessel's licensed capacity and providing fewer than

adequate life preservers or other rescue and safety devices; failing to properly man, maintain,

monitor and navigate the Motor Vessel "Sea Genie II, thereby allowing said vessel to collide

with the Sailing Vessel "Granuaile;" failing to maintain a proper lookout; failing to promptly

repair and warn passengers of damage to the Motor Vessel "Sea Genie II" after the collision as

aforesaid; failing to conduct a proper and timely search and rescue operation upon becoming

aware that plaintiffs' decedent was missing and hearing decedent's futile cries for help; failing to

notify in a proper and timely manner Coast Guard and/or other rescue personnel who could have

saved plaintiffs' decedent from her untimely demise; and such other and further acts of

negligence to be proven at trial, all without any fault of plaintiffs' decedent.

    51.    As a result of the foregoing, plaintiffs have sustained damages, including but not

limited to (a) the terror and agonizing physical, mental and emotional pain and suffering and fear

of impending death experienced by Katherine Kinsella prior to her death by drowning; (b) the

loss to her surviving parents and siblings of the reasonable expectation of pecuniary benefits and

support that would have resulted from the continued life of the decedent; (c) funeral, rescue,

medical and repatriation expenses; (d) loss of services of sister and daughter; (e) loss of estate of

the decedent accumulated reasonably from the continued life of the decedent; (f) loss of society,

including, but not limited to, loss of love, companionship, attention, care, comfort and affection;

(g) interest from the date of death; and (h) other damages, including punitive damages, permitted

by all applicable laws.

7

## SECOND CAUSE OF ACTION
### (negligence against Ian McColgin and the Sailing Vessel "Granuaile," in rem

52.     Plaintiffs repeat each and every allegation contained in paragraphs 1 through 48 with the same force and effect as if set forth at length herein.

53.     The injuries to and ensuing death of the plaintiffs' decedent Katherine Kinsella were caused as a direct and proximate result of the breach and violation of the duty of care owed by defendant Ian McColgin and the Sailing Vessel "Granuaile" by, among other things, failing to properly mark the Sailing Vessel "Granuaile," at anchorage at or about Hyannis Harbor; failing to properly moor the Sailing Vessel "Granuaile;" and such other, further and different acts of negligence to be proven at trial, all without any fault of plaintiffs' decedent.

54.     As a result of the foregoing, plaintiffs have sustained damages, including but not limited to (a) the terror and agonizing physical, mental and emotional pain and suffering and fear of impending death experienced by Katherine Kinsella prior to her death by drowning; (b) the loss to her surviving parents and siblings of the reasonable expectation of pecuniary benefits and support that would have resulted from the continued life of the decedent; (c) funeral, rescue, medical and repatriation expenses; (d) loss of services of sister and daughter; (e) loss of estate of the decedent accumulated reasonably from the continued life of the decedent; (f) loss of society, including, but not limited to, loss of love, companionship, attention, care, comfort and affection; (g) interest from the date of death; and (h) other damages, including punitive damages, permitted by all applicable laws.

WHEREFORE, plaintiffs Joseph A. Kinsella, as Administrator and personal representative of the Estate of Katherine Kinsella, and Joseph A. Kinsella, individually and on behalf of all distributees of Katherine Kinsella, demands judgment against defendants, or any of

them, for damages in an amount to be determined by a jury, along with punitive damages in an

amount to be determined by a jury, together with interest and the costs and disbursements of

maintaining this action, along with such other and further relief as the Court deems just and

proper.

Dated:  September 13, 2004

Joseph A. Kinsella, as Administrator and
personal representative of the Estate of
Katherine Kinsella, and Joseph A. Kinsella,
individually and on behalf of all distributees
of Katherine Kinsella,

By their attorneys,

Sarah B. Herlihy, BBO #640531
Mintz, Levin, Cohn, Ferris,
  Glovsky and Popeo, P.C.
One Financial Center
Boston, MA  02111
(617) 542-6000
(617) 542-2241 (facsimile)

Of Counsel, and

Andrew V. Buchsbaum
Friedman & James LLP
132 Nassau Street
New York, NY  10038
(212) 233-9385
(212) 619-2340 (facsimile)

9

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document, Plaintiffs' Amended Complaint Jury Demand was served upon the attorney of record for each party by fax and first-class mail on September 13, 2004.

Sarah B. Herlihy

LIT 1452129v1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

**04   11615 NMG**

Joseph A. Kinsella, as Administrator and
personal representative of the Estate of
Katherine Kinsella, and Joseph A. Kinsella,
individually and on behalf of all distributees of
Katherine Kinsella, deceased,

Plaintiffs

v.

Wyman Charter Corp., Michael P. Wyman,
Joseph Jay Shore, Cord Mitchell Shore,
Caralyn Shore, Toad Hall Corp., Ian
McColgin, the Motor Vessel "Sea Genie II,"
her engines, tackle and appurtenances, in rem,
the Sailing Vessel "Granuaile," her engines,
tackle and appurtenances, in rem,

Defendants.

Civil Action No.:

**COMPLAINT & JURY DEMAND**

**PLAINTIFFS DEMAND TRIAL BY JURY
ON ALL COUNTS**

RECEIPT # 57417
AMOUNT $150
SUMMONS ISSUED Yes
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK. ROM
DATE 7/20/04

Plaintiff, Joseph A. Kinsella, as Administrator and personal representative of the

Estate of Katherine Kinsella, and Joseph A. Kinsella, individually and on behalf of all

distributees of Katherine Kinsella, deceased, by their attorneys, Mintz, Levin, Cohn, Ferris,

Glovsky and Popeo, P.C. and Friedman & James LLP, allege as follows:

**Nature of Action:**

1.      This action seeks recovery for maritime personal injuries and wrongful

death as a result of the tragic death of Katherine Kinsella on or about July 22-23, 2001 while a

passenger on board the Motor Vessel "Sea Genie II" subsequent to its collision with the Sailing

Vessel "Granuaile" within the territorial waters of the Commonwealth of Massachusetts.

**Jurisdiction and Venue:**

2.    This Court has jurisdiction pursuant to 28 U.S.C. § 1332 in that the claims asserted herein are between citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000.

3.    This Court also has jurisdiction pursuant to the admiralty and maritime jurisdiction of the United States pursuant to 28 U.S.C. § 1333.

4.    Venue is proper in this District pursuant to 28 U.S.C. §1391(a) in that a substantial part of the events giving rise to the claim occurred in this District.

**The Parties:**

5.    Plaintiffs' decedent, Katherine Kinsella, was at all relevant times a citizen of the Republic of Ireland.

6.    Joseph A. Kinsella, as Administrator and personal representative of the Estate of Katherine Kinsella and Joseph A. Kinsella, individually and on behalf of all distributees, was and still is a citizen and resident of the Republic of Ireland along with all distributees.

7.    Defendant Wyman Charter Corp. was and still is a corporation organized under and existing pursuant to the laws of the Commonwealth of Massachusetts with its office and principal place of business located 66 Channel Point Road, Hyannis, Massachusetts.

8.    Defendant Michael P. Wyman was and still is an individual citizen and resident of the Commonwealth of Massachusetts.

9.    Defendant Joseph Jay Shore was and still is an individual citizen and resident of the Commonwealth of Massachusetts.

2

10.    Defendant Cord Mitchell Shore was and still is an individual citizen and resident of the Commonwealth of Massachusetts.

11.    Defendant Caralyn Shore was and still is an individual citizen and resident of the Commonwealth of Massachusetts.

12.    Defendant Toad Hall Corp. was and still is a corporation organized under and existing pursuant to the laws of the Commonwealth of Massachusetts with its office and principal place of business located at 316 Sea Street, Hyannis, Massachusetts.

13.    Defendant Ian McColgin was and still is an individual citizen and resident of the Commonwealth of Massachusetts.

14.    The Motor Vessel "Sea Genie II" was and still is a United States flagged vessel having an overall registered length of 58' and is now or will be during the pendency of this action within this district and within the jurisdiction of this Court.

15.    The Sailing Vessel "Granuaile" was and still is a United States flagged vessel having an overall length of 55' and is now or will be during the pendency of this action within the jurisdiction of this Court.

**Allegations Common to All Causes of Action:**

16.    At all relevant times, defendant Wyman Charter Corp. owned the Motor Vessel "Sea Genie II."

17.    At all relevant times, defendant Michael P. Wyman owned the Motor Vessel "Sea Genie II."

18.    At all relevant times, defendant Joseph Jay Shore was the owner and/or owner pro hac vice of the Motor Vessel "Sea Genie II."

3

19.     At all relevant times, defendant Cord Mitchell Shore was the owner and/or owner pro hac vice of the Motor Vessel "Sea Genie II."

20.     At all relevant times, defendant Caralyn Shore was the owner and/or owner pro hac vice of the Motor Vessel "Sea Genie II."

21.     At all relevant times, defendant Toad Hall Corp. was the owner and/or owner pro hac vice of the Motor Vessel "Sea Genie II."

22.     At all relevant times, defendant Wyman Charter Corp. operated the Motor Vessel "Sea Genie II."

23.     At all relevant times, defendant Michael P. Wyman operated the Motor Vessel "Sea Genie II."

24.     At all relevant times, defendant Joseph Jay Shore operated the Motor Vessel "Sea Genie II."

25.     At all relevant times, defendant Cord Mitchell Shore operated the Motor Vessel "Sea Genie II."

26.     At all relevant times, defendant Caralyn Shore operated the Motor Vessel "Sea Genie II."

27.     At all relevant times, defendant Toad Hall Corp. operated the Motor Vessel "Sea Genie II."

28.     At all relevant times, defendant Wyman Charter Corp. controlled the Motor Vessel "Sea Genie II."

29.     At all relevant times, defendant Michael P. Wyman controlled the Motor Vessel "Sea Genie II."

4

30.    At all relevant times, defendant Joseph Jay Shore controlled the Motor Vessel "Sea Genie II."

31.    At all relevant times, defendant Cord Mitchell Shore controlled the Motor Vessel "Sea Genie II."

32.    At all relevant times, defendant Caralyn Shore controlled the Motor Vessel "Sea Genie II."

33.    At all relevant times, defendant Toad Hall Corp. controlled the Motor Vessel "Sea Genie II."

34.    At all relevant times, defendant Wyman Charter Corp. managed the Motor Vessel "Sea Genie II."

35.    At all relevant times, defendant Michael P. Wyman managed the Motor Vessel "Sea Genie II."

36.    At all relevant times, defendant Joseph Jay Shore managed the Motor Vessel "Sea Genie II."

37.    At all relevant times, defendant Cord Mitchell Shore managed the Motor Vessel "Sea Genie II."

38.    At all relevant times, defendant Caralyn Shore managed the Motor Vessel "Sea Genie II."

39.    At all relevant times, defendant Toad Hall Corp. managed the Motor Vessel "Sea Genie II."

40.    At all relevant times, defendant Joseph Jay Shore chartered the Motor Vessel "Sea Genie II" from defendant(s) Wyman Charter Corp. and/or Michael P. Wyman.

5

41.    At all relevant times, defendant Cord Mitchell Shore chartered the Motor Vessel "Sea Genie II" from defendant(s) Wyman Charter Corp. and/or Michael P. Wyman.

42.    At all relevant times, defendant Caralyn Shore chartered the Motor Vessel "Sea Genie II" from defendant(s) Wyman Charter Corp. and/or Michael P. Wyman.

43.    At all relevant times, defendant Toad Hall Corp. chartered the Motor Vessel "Sea Genie II" from defendant(s) Wyman Charter Corp. and/or Michael P. Wyman.

44.    At all relevant times, defendant Ian McColgin owned, operated, managed and/or controlled the Sailing Vessel "Granuaile."

45.    On or about July 22, 2001, plaintiff's decedent, Katherine Kinsella, boarded the Motor Vessel "Sea Genie II" as a passenger within the Commonwealth of Massachusetts.

46.    On or about July 22, 2001, the Motor Vessel "Sea Genie II" was caused to collide with the Sailing Vessel "Granuaile" at or about Hyannis Harbor within the territorial waters of the Commonwealth of Massachusetts, causing damage to the Motor Vessel "Sea Genie II."

47.    As a result of the collision as aforesaid, the damages sustained, and the ensuing maneuvering by the Motor Vessel "Sea Genie II," plaintiff's decedent Katherine Kinsella was caused to fall overboard from the Motor Vessel "Sea Genie II."

48.    As a result thereof, plaintiff's decedent Katherine Kinsella was caused to sustain severe personal injuries and endure prolonged pain and suffering, ultimately resulting in her death by drowning within the territorial waters of the Commonwealth of Massachusetts.

## FIRST CAUSE OF ACTION
**(negligence against Wyman Charter Corp., Michael P. Wyman, Joseph Jay Shore, Cord Mitchell Shore, Caralyn Shore, Toad Hall Corp. and/or Motor Vessel "Sea Genie II," in rem)**

49.     Plaintiffs repeat each and every allegation contained in paragraphs 1 through 48 with the same force and effect as if set forth at length herein.

50.     The injuries to and ensuing death of the plaintiffs' decedent Katherine Kinsella were caused as a direct and proximate result of the breach and violation of the duty of care owed to plaintiffs' decedent by defendants Wyman Charter Corp., Michael P. Wyman, Joseph Jay Shore, Cord Mitchell Shore, Caralyn Shore, Toad Hall Corp. and/or Motor Vessel "Sea Genie II," their agents and/or employees by, among other things, allowing and/or permitting the number of passengers on board to exceed the vessel's licensed capacity and providing fewer than adequate life preservers or other rescue and safety devices; failing to properly man, maintain, monitor and navigate the Motor Vessel "Sea Genie II, thereby allowing said vessel to collide with the Sailing Vessel "Granuaile;" failing to maintain a proper lookout; failing to promptly repair and warn passengers of damage to the Motor Vessel "Sea Genie II" after the collision as aforesaid; failing to conduct a proper and timely search and rescue operation upon becoming aware that plaintiffs' decedent was missing and hearing decedent's futile cries for help; failing to notify in a proper and timely manner Coast Guard and/or other rescue personnel who could have saved plaintiffs' decedent from her untimely demise; allowing the unauthorized and unlawful sale and consumption of alcohol to minors on board the Motor Vessel "Sea Genie II;" and such other and further acts of negligence to be proven at trial, all without any fault of plaintiffs' decedent.

51.     As a result of the foregoing, plaintiffs have sustained damages, including but not limited to (a) the terror and agonizing physical, mental and emotional pain and suffering

and fear of impending death experienced by Katherine Kinsella prior to her death by drowning;

(b) the loss to her surviving parents and siblings of the reasonable expectation of pecuniary

benefits and support that would have resulted from the continued life of the decedent; (c) funeral,

rescue, medical and repatriation expenses; (d) loss of services of sister and daughter; (e) loss of

estate of the decedent accumulated reasonably from the continued life of the decedent; (f) loss of

society, including, but not limited to, loss of love, companionship, attention, care, comfort and

affection; (g) interest from the date of death; and (h) other damages, including punitive damages,

permitted by all applicable laws.

## SECOND CAUSE OF ACTION
### (negligence against Ian McColgin and the Sailing Vessel "Granuaile," in rem

52.    Plaintiffs repeat each and every allegation contained in paragraphs 1

through 48 with the same force and effect as if set forth at length herein.

53.    The injuries to and ensuing death of the plaintiffs' decedent Katherine

Kinsella were caused as a direct and proximate result of the breach and violation of the duty of

care owed by defendant Ian McColgin and the Sailing Vessel "Granuaile" by, among other

things, failing to properly mark the Sailing Vessel "Granuaile," at anchorage at or about Hyannis

Harbor; failing to properly moor the Sailing Vessel "Granuaile;" and such other, further and

different acts of negligence to be proven at trial, all without any fault of plaintiffs' decedent.

53.    As a result of the foregoing, plaintiffs have sustained damages, including

but not limited to (a) the terror and agonizing physical, mental and emotional pain and suffering

and fear of impending death experienced by Katherine Kinsella prior to her death by drowning;

(b) the loss to her surviving parents and siblings of the reasonable expectation of pecuniary

benefits and support that would have resulted from the continued life of the decedent; (c) funeral,

8

rescue, medical and repatriation expenses; (d) loss of services of sister and daughter; (e) loss of

estate of the decedent accumulated reasonably from the continued life of the decedent; (f) loss of

society, including, but not limited to, loss of love, companionship, attention, care, comfort and

affection; (g) interest from the date of death; and (h) other damages, including punitive damages,

permitted by all applicable laws.

WHEREFORE, plaintiffs Joseph A. Kinsella, as Administrator and personal

representative of the Estate of Katherine Kinsella, and Joseph A. Kinsella, individually and on

behalf of all distributees of Katherine Kinsella, demands judgment against defendants, or any of

them, for damages in an amount to be determined by a jury, along with punitive damages in an

amount to be determined by a jury, together with interest and the costs and disbursements of

maintaining this action, along with such other and further relief as the Court deems just and

proper.

Dated:  July ___, 2004

> Joseph A. Kinsella, as Administrator and
> personal representative of the Estate of
> Katherine Kinsella, and Joseph A. Kinsella,
> individually and on behalf of all distributees
> of Katherine Kinsella,
>
> By their attorneys,
>
> _Sarah B. Herlihy_
> Sarah B. Herlihy, BBO #640531
> Mintz, Levin, Cohn, Ferris,
>   Glovsky and Popeo, P.C.
> One Financial Center
> Boston, MA  02111
> (617) 542-6000
> (617) 542-2241 (facsimile)
>
> Of Counsel, and

9

Andrew V. Buchsbaum
Friedman & James LLP
132 Nassau Street
New York, NY 10038
(212) 233-9385
(212) 619-2340 (facsimile)



# GENERAL STAR INDEMNITY COMPANY
### STAMFORD, CONNECTICUT 06904-2354
(Hereinafter called the Company)        A Stock Company

## RENEWAL CERTIFICATE
### Valuable Document - Attach To Your Policy

RECEIVED
JUN 1 2 2001
FACILITIES

POL. # _IMA641349B_                                        RENEWAL OF POL. # _IMA641349A_

1. **NAMED INSURED**      TOAD HALL CORP.
   **MAILING ADDRESS**    D/B/A  HARBOR PARKING
                          1418 COMMONWEALTH AVE.
                          WEST NEWTON, MA  02165

2. **POLICY PERIOD:**     From _05/20/2001_  to  _05/20/2002_        UPDATE IN ACCL.
                          at 12:01 A.M. Standard Time at your mailing address shown above.        BS

IN CONSIDERATION OF PAYMENT OF THE PREMIUM STATED BELOW, THE ABOVE NUMBERED POLICY IS
RENEWED FOR THE POLICY PERIOD STATED ABOVE, SUBJECT TO ALL THE TERMS AND CONDITIONS OF THE
PREVIOUS POLICY, EXCEPT AS OTHERWISE SPECIFIED HEREIN.

___X___ NO CHANGES FROM PREVIOUS POLICY.

_____ THE FOLLOWING CHANGES ARE APPLICABLE TO THE RENEWAL CERTIFICATE
(ANY AMENDED ENDORSEMENTS/COVERAGE PARTS ARE ATTACHED)

THE COVERAGE HEREON CANNOT BE
CANCELLED FLAT. A PREMIUM CHARGE
BASED ON POLICY CONDITIONS WILL BE
MADE SUBJECT TO MINIMUM EARNED
PREMIUM OF $_4465_ POLICY FEES.
INSPECTION FEES OR FILING FEES ARE
FULLY EARNED AT INCEPTION. TAXES, IF
ANY WILL BE RETAINED ON EARNED PRE-
MIUMS ONLY.

3. THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED.
   THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

|  |  | PREMIUM |
|---|---|---|
| Commercial Property Coverage Part | $ | |
| Commercial Inland Marine Coverage Part | $ | |
| Commercial General Liability Coverage Part | $ 1,550.00 | |
| _____ Coverage Part | $ | |
| _____ Coverage Part | $ | |
| **TOTAL RENEWAL PREMIUM** | $ 1,550.00 | |
| STATE SURPLUS TAX (4   %) | $ 62.00 | |
| POLICY FEE | $ | |
|  | $ | |
|  | $ | |
| **POLICY TOTAL (payable at inception)** | $ 1612.00 | |

THIS RENEWAL CERTIFICATE ALONG WITH THE PREVIOUSLY ISSUED COMMON POLICY CONDITIONS, COVERAGE PART
DECLARATIONS, COVERAGE FORM(S) AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE
THE ABOVE NUMBERED POLICY.

This policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated, which are
hereby made a part of this policy, together with such other provisions, stipulations and agreements  may be added hereto, as
provided in this policy.

COUNTERSIGNED AT _EAST PROVIDENCE, RI_

BY: _____
Authorized representative of countersignature,
whichever applies.

DATE _05/31/2001_

PRODUCER CODE: ___10700___

GSI-04-RENEWAL CERT (10/99)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# GENERAL PURPOSE ENDORSEMENT # 1
### (Non-Premium Bearing)

This endorsement, effective ___05/20/2001___ forms a part of Policy No.

IMA641349B ___ issued to TOAD HALL CORP. DBA HARBOR PARKING ___ . by

GENERAL STAR INDEMNITY COMPANY.

IN CONSIDERATION OF THE PREMIUM CHARGED IT IS UNDERSTOOD AND AGREED THAT FOR 1 CG2502 AMENDMENT
OF LIMITS OF LIABILITY IS HEREBY ADDED TO AND MADE PART OF THIS POLICY.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

MLF

**RECEIVED**

DEC 1 0 2001

**TYRONE**

UPDATE IN ACCESS
DEC 1 2 2001
DERRICK

ATTACH BL

| 12/05/2001 | EAST PROVIDENCE, RI | |
|---|---|---|
| Issue Date | Agency At | Authorized Representative |
| | E.A. KELLE CO., RI INC. | |
| | Agency | |

GSI-04-1801 (8/96)

COMPANY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# AMENDMENT OF LIMITS OF INSURANCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

## SCHEDULE

| | Limits of Insurance |
|---|---|
| General Aggregate Limit | $ 2,000,000. |
| Products-Completed Operations Aggregate Limit | $ EXCLUDED |
| Personal & Advertising Injury Limit | $ EXCLUDED |
| Each Occurrence Limit | $ 1,000,000. |
| Fire Damage Limit | $ EXCLUDED Any One Fire |
| Medical Expense Limit | $ EXCLUDED Any One Person |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The limits of insurance shown in the Declarations are replaced by the limits designated in the Schedule or in the Declarations as subject to this endorsement with respect to which an entry is made.

COMPANY

# GENERAL STAR INDEMNITY COMPANY
### STAMFORD, CONNECTICUT 06904-2354
(Hereinafter called the Company)    A Stock Company

## RENEWAL CERTIFICATE
### Valuable Document - Attach To Your Policy

**RECEIVED**
**JUN 1 5 2000**
**FACILITIES**

POL. # IMA641349A                                RENEWAL OF POL. # IMA641349

1. **NAMED INSURED**
   **MAILING ADDRESS**

   TOAD HALL CORP.
   D/B/A HARBOR PARKING
   1418 COMMONWEALTH AVE.
   WEST NEWTON, MA 02165

2. **POLICY PERIOD:**    From    05/20/2000    to    05/20/2001
   at 12:01 A.M. Standard Time at your mailing address shown above.

IN CONSIDERATION OF PAYMENT OF THE PREMIUM STATED BELOW, THE ABOVE NUMBERED POLICY IS RENEWED FOR THE POLICY PERIOD STATED ABOVE, SUBJECT TO ALL THE TERMS AND CONDITIONS OF THE PREVIOUS POLICY, EXCEPT AS OTHERWISE SPECIFIED HEREIN.

__X__ NO CHANGES FROM PREVIOUS POLICY.

_____ THE FOLLOWING CHANGES ARE APPLICABLE TO THE RENEWAL CERTIFICATE:
(ANY AMENDED ENDORSEMENTS/COVERAGE PARTS ARE ATTACHED)

**THE COVERAGE HEREON CANNOT BE CANCELLED FLAT. A PREMIUM CHARGE BASED ON POLICY CONDITIONS WILL BE MADE SUBJECT TO MINIMUM EARNED PREMIUM OF $465 POLICY FEES. INSPECTION FEES OR FILING FEES ARE FULLY EARNED AT INCEPTION. TAXES, IF ANY WILL BE RETAINED ON EARNED PREMIUMS ONLY.**

3. THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

| | PREMIUM |
|---|---|
| Commercial Property Coverage Part | $ |
| Commercial Inland Marine Coverage Part | $ |
| Commercial General Liability Coverage Part | $ 1,550.00 |
| _____ Coverage Part | $ |
| _____ Coverage Part | $ |
| TOTAL RENEWAL PREMIUM | $ |
| STATE SURPLUS TAX (4 %) | $ 62.00 |
| POLICY FEE | $ |
| | $ |
| | $ |
| POLICY TOTAL (payable at inception) | $ 1,612.00 |

*GSRV JUN 1 5 2000 MT*

*UPDATE IN ACCESS*
*JUN 1 5 2000*
*GD*

THIS RENEWAL CERTIFICATE ALONG WITH THE PREVIOUSLY ISSUED COMMON POLICY CONDITIONS, COVERAGE PART DECLARATIONS, COVERAGE FORM(S) AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

This policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated, which are hereby made a part of this policy, together with such other provisions, stipulations and agreements may be added hereto, as provided in this policy.

COUNTERSIGNED AT EAST PROVIDENCE, RI

BY: _Catherine M Kelley_
Authorized representative or countersignature
whichever applies.

DATE    5/30/00

PRODUCER CODE:    10700

GSI-04-RENEWAL CERT (10/99)

UNDERWRITING

Renewed
6/15/0

## GENERAL STAR INDEMNITY COMPANY

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## GENERAL PURPOSE ENDORSEMENT # 01
### (Non-Premium Bearing)

This endorsement, effective ___05/20/2000___ forms a part of Policy No.

___IMA641349A___ issued to ___TOAD HALL CORP.___
___D/B/A HARBOR PARKING___ by

### GENERAL STAR INDEMNITY COMPANY.

IN CONSIDERATION OF THE PREMIUM CHARGED IT IS UNDERSTOOD AND AGREED THAT THE POLICY PERIOD IS HEREBY AMENDED TO
READ:  05/20/2000 - 05/20/2001 .

ALL OTHER TERMS AND CONDITIONS TO REMAIN THE SAME.
CMS

ATTACH SR

RECEIVED

JUL 1 4 2000

DONDRE

UPDATE IN ACCESS

JUL 1 8 2000

CT

| 06/30/2000 | E.A.KELLEY CO RI INC | |
|---|---|---|
| Issue Date | Agency At | Authorized Representative |

EAST PROVIDENCE, RI 02914
Agency

# GENERAL STAR INDEMNITY COMPANY
STAMFORD, CONNECTICUT 06904-2354



(Hereinafter called the Company)    A Stock Company

## COMMON POLICY DECLARATIONS

RENEWAL OF:

# NEW

POL. # IMA641349

1.  **NAMED INSURED**

    TOAD HALL CORP

    D/B/A HARBOR PARKING

    **MAILING ADDRESS**    1418 COMMONWEALTH AVENUE

    WEST NEWTON, MA  02165

THE COVERAGE HEREON CANNOT BE CANCELLED FLAT. A PREMIUM CHARGE BASED ON POLICY CONDITIONS WILL BE MADE SUBJECT TO MINIMUM EARNED PREMIUM OF $____. POLICY FEES. INSPECTION FEES OR FILING FEES ARE FULLY EARNED AT INCEPTION. TAXES, IF ANY WILL BE RETAINED ON EARNED PREMIUM ONLY.

2.  **POLICY PERIOD:**    From ___05/20/1999___ to ___05/20/2000___
    at 12:01 A.M. Standard Time at your mailing address shown above.

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

3.  THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS
    FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY
    BE SUBJECT TO ADJUSTMENT.

    RECEIVED JUL - 6 1999 SERGIO

| | PREMIUM |
|---|---|
| Commercial Property Coverage Part | $ _____ |
| Commercial Inland Marine Coverage Part | $ _____ |
| Commercial General Liability Coverage Part | $ 1,550.00 |
| _____ Coverage Part | $ _____ |
| Coverage Part | $ _____ |

APP ID NUMBER(S) _____
(REQUIRED if SUBMIT/PRIOR APPROVAL business)
Prior Approval by: _____

(General Star Underwriter)

Inspection Report 06/02/1999
    Ordered
    Attached
    Not Required
Underwriter in Producer's Office:
KATHY DOYLE
(required for every policy.)

| | | |
|---|---|---|
| TOTAL PREMIUM | $ | 1,550.00 |
| STATE SURPLUS TAX ( 4.00 %) | $ | 62.00 |
| POLICY FEE | $ | _____ |
| | $ | _____ |
| | $ | _____ |
| | $ | _____ |
| POLICY TOTAL (payable at inception) | $ | 1,612.00 |

SRV JUL 20 199

4.  **Form of Business:**

    ☐ Individual        ☐ Partnership        ☐ Limited Liability Company
    ☐ Joint Venture     ☒ Organization (Other than Partnership, Joint Venture or Limited Liability Company)

5.  **BUSINESS DESCRIPTION**  PUBLIC PARKING

6.  **FORMS AND ENDORSEMENTS** (other than applicable Forms and Endorsements shown elsewhere in the policy)

    GSI-04-CP04J (01-89), IL600 (09-97), GSI-04-1601 (08-96), GSI-04-1604 (08-96), GSI04CP01D(01-99)

THESE COMMON POLICY DECLARATIONS,  AND OTHER  APPLICABLE COVERAGE PART DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

This policy is made and accepted to the foregoing provisions and stipulations and those hereinafter stated, which are hereby made a part of this policy, together with such other provisions, stipulations and agreements as may be added hereto, as provided in this policy.

COUNTERSIGNED AT ___EAST PROVIDENCE, RI___

DATE ___06/04/1999___

BY ~~Catherine M. Kelley~~
Authorized representative or countersignature, whichever applies

PRODUCER CODE: 10700

GSI-04-CPOOD
(7-98)

UNDERWRITING

**GENERAL STAR INDEMNITY COMPANY**
STAMFORD, CONNECTICUT 06904-2354
(Hereinafter called the Company)  A Stock Company

## COMMERCIAL GENERAL LIABILITY
## COVERAGE PART DECLARATIONS

Pol. # IMA641349

1. NAMED INSURED _____ TOAD HALL CORP _____ EFFECTIVE DATE ___05/20/1999___
   D/B/A HARBOR PARKING

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE
WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

2. LIMITS OF INSURANCE

| | | |
|---|---|---|
| GENERAL AGGREGATE LIMIT (Other Than Products– Completed Operations) | $ 2,000,000 | |
| PRODUCTS-COMPLETED OPERATIONS AGGREGATE LIMIT | $ INCLUDED | |
| PERSONAL & ADVERTISING INJURY LIMIT | $ 1,000,000 | |
| EACH OCCURRENCE LIMIT | $ EXCLUDED | |
| FIRE DAMAGE LIMIT | $ EXCLUDED | ANY ONE FIRE |
| MEDICAL EXPENSE LIMIT | $ EXCLUDED | ANY ONE PERSON |

3. LOCATION(S) OF ALL PREMISES YOU OWN, RENT OR OCCUPY:
   Loc#                            Address

   01            OCEAN STREET, HYANNIS, MA

4.

| LOC NO. | CLASSIFICATION | CODE NO. | PREMIUM BASIS | RATES PREM. OPS. | PROD. CO. | ADVANCE PREMIUM PREM. OPS. | PROD. CO. | * |
|---|---|---|---|---|---|---|---|---|
| 01 | PARKING-PUBLIC-OPEN AIR | 46604  S | 100,000 | 15.503 | INCLUDED | 1,550 | INCLUDED | |

SUBTOTAL    1,550

* Minimum Premium                    TOTAL    1,550

Policy is not subject to Premium Audit Adjustment, unless noted here:    Annual _____ Other _____

5. FORMS AND ENDORSEMENTS FORMING A PART OF THIS COVERAGE PART ON ITS EFFECTIVE DATE:

   GSI-04-C102 (08-96), GSI-04-C107 (03-97), GSI-04-C118 (08-96), GSI-04-C150 (03-98), CG0001 (01-96),
   CG2135 (10-93), CG2138 (11-85), CG2145 (11-85), CG2160 (04-98)
                med pay excl

(OCCURENCE)                    ORIGINAL
GSI-04-CP-01D (1/99)

## GENERAL STAR INDEMNITY COMPANY

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## GENERAL PURPOSE ENDORSEMENT # 1
### (Non-Premium Bearing)

This endorsement, effective _____05/20/1999_____ forms a part of Policy No.

IMA641349 _____ issued to ____TOAD HALL CORP
DBA HARBOR PARKING____ by

GENERAL STAR INDEMNITY COMPANY.

IN CONSIDERATION OF THE PREMIUM CHARGED IT IS UNDERSTOOD AND AGREED THAT THE LOCATION ADDRESS
IS AMENDED TO BE:
OCEAN STREET, HYANNIS, MA
COLONY RD., HYANNIS, MA
BODICK RD., HYANNIS, MA

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

RECEIVED

AUG 0 9 1999

TAMARA

_Attach_

UPDATE IN ACCESS
AUG 1 ? 1999

| 07/29/1999 | EAST PROVIDENCE, RI | |
|---|---|---|
| Issue Date | Agency At | Authorized Representative |

E.A. KELLEY CO., RI INC.
Agency

GSI-04-I601 (8/96)                    UNDERWRITING

# GENERAL STAR INDEMNITY COMPANY

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# GENERAL PURPOSE ENDORSEMENT # 00
### (Non-Premium Bearing)

This endorsement, effective     05/20/1999     forms a part of Policy No.

IMA641349     issued to    TOAD HALL CORP   D/B/A HARBOR PARKING     by

**GENERAL STAR INDEMNITY COMPANY.**

IT IS HEREBY UNDERSTOOD AND AGREED THAT AUTO LIABILITY IS EXCLUDED.

ALL OTHER TERMS AND CONDITIONS REMAIN THE SAME

06/04/1999         EAST PROVIDENCE, RI         *Katharine M. Kelley*

Issue Date          Agency At          Authorized Representative

E.A. KELLEY CO., RHODE ISLAND

Agency

GSI-04-I601 (8/96)             ORIGINAL

## GENERAL STAR INDEMNITY COMPANY

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# COMBINED PROVISIONS ENDORSEMENT

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM

All of the following numbered paragraphs apply to this policy; EXCEPTIONS: None, unless stated here:

_____

1.  DEDUCTIBLE ENDORSEMENT: Amount $ _____ Each Claim.

    ($0, unless an amount is shown)

    A.  The Companys obligation under Section I. Coverage A. Bodily Injury and Property Damage Liability to pay damages on behalf of the insured applies only to the amount of damages in excess of any deductible amount stated above.

    B.  The deductible amount stated above applies to all damages because of "bodily injury" and "property damage"  sustained by one person or organization as the result of any one " occurrence".

    C.  The deductible amount stated above applies to each claim and includes loss payments and adjustment, investigative and legal fees and costs, whether or not loss payment is involved.

    D.  The terms of this insurance, including those with respect to (1) our right and duty to defend any " suits" seeking those damages; and (2) your duties in the event of an  "occurrence,"  claim or " suit"  apply irrespective of the application of the deductible amount.

    E.  We may pay any or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

2.  PREMIUM BASES DESIGNATION

    The Premium Bases shown on the Declarations Page and identified by key letter in parentheses apply as follows:

    | KEY LETTER | PREMIUM BASE | HOW RATES APPLY |
    |---|---|---|
    | (a) | Area | per 1,000 square feet |
    | (c) | Total Cost | per $1,000 of total cost |
    | (m) | Admissions | per 1,000 admissions |
    | (p) | Payroll | per $1,000 of payroll |
    | (s) | Gross Sales | per $1,000 of gross sales |
    | (t) | Other | describe _____ |
    | (u) | Units | per unit (describe)_____ |

    These premium bases are as outlined in the Insurance Services Office's Commercial Lines Manual Classification Table and Division Six General Liability Sections.  Nothing herein contained shall be held to vary, waive, alter or extend any of the terms, conditions, agreements or declarations of the policy other than herein stated.

3.   MINIMUM AND DEPOSIT PREMIUM and ADJUSTABILITY OF PREMIUM

Paragraph b. of Condition 5, Premium Audit is deleted and replaced with the following:

b.   If the premium shown on the Commercial Liability Declarations page is subject to premium audit adjustment, the premium shown is a deposit premium only, even if the premium is not labeled as a deposit premium.

The premium shown on the Commercial Liability Declarations page is also an annual minimum premium, even if the premium is not labeled as a minimum premium.

At the close of each audit period, we will compute the earned premium for the period. Any additional earned premium, generated as a result of a premium audit adjustment, is due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will not return the excess to the first Named Insured.

4.   TOTAL POLLUTION EXCLUSION ENDORSEMENT

Exclusion f. under paragraph 2., Exclusions of COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I - Coverage) is replaced by the following:

This insurance does not apply to:

f.   Pollution

(1)   " Bodily injury" or " property damage"  which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

(2)   Any loss, cost or expense arising out of any:

(a)   Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

(b)   Claim or " suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste.  Waste includes material to be recycled, reconditioned or reclaimed.

5.   ASBESTOS LIABILITY EXCLUSION ENDORSEMENT

It is agreed that the following exclusion is added to the policy:

This insurance does not apply to:

1.   "Bodily injury," " property damage," " personal injury" or " advertising injury" arising out of, resulting from, caused or contributed to by asbestos or exposure to asbestos, or

2.   The costs of abatement, mitigation, removal or disposal of asbestos.

This exclusion also applies to:

a.   Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with the above; and

b.   Any obligation to share damages with or repay someone else who must pay damages because of such injury or damage.

6.    EMPLOYMENT-RELATED PRACTICES EXCLUSION

It is agreed that the following exclusion is added to the policy:

This insurance does not apply to " Bodily injury" or " personal injury" to a person arising out of any:

(1)   Refusal to employ that person;
(2)   Termination of that person's employment; or
(3)   Employment related practices, policies, acts or omissions such as: coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination directed at that person; or
(4)   The spouse, child, parent, brother or sister of that person as a consequence of " bodily injury" to that person at whom any of the employment related practices described in 1, 2 or 3 above is directed.


This exclusion applies whether the insured may be held liable as an employer or in any other capacity and to any obligation to share damages with or to repay someone else who must pay damages because of the injury.

7.    DELETION OF WHEN WE DO NOT RENEW CONDITION

It is agreed that under Section IV - COMMERCIAL LIABILITY CONDITIONS, When We Do Not Renew, is deleted from the policy.

POLICY NUMBER:  IMA641349

COMMERCIAL GENERAL LIABILITY
CG 21 35 10 93

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – COVERAGE C – MEDICAL PAYMENTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

Description and Location of Premises or Classification:

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to any premises or classification shown in the Schedule, Coverage C. MEDICAL PAYMENTS (Section I) does not apply and none of the references to it in the Coverage Part apply.

The following is added to SUPPLEMENTARY PAYMENTS (Section I):

8. Expenses incurred by the insured for first aid administered to others at the time of an accident for "bodily injury" to which this insurance applies.

ORIGINAL
Copyright, Insurance Services Office, Inc.  1992

## GENERAL STAR INDEMNITY COMPANY

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## MINIMUM EARNED PREMIUM

It is agreed that a minimum earned premium of__25_____% of the total estimated annual premium shall be fully earned in the event of cancellation by the insured and such minimum earned premium shall not be subject to short rate or pro rate adjustment.

COMMERCIAL GENERAL LIABILITY
CG 21 60 04 98

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION - YEAR 2000 COMPUTER-RELATED AND OTHER ELECTRONIC PROBLEMS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph 2., Exclusions of Section I - Coverage A - Bodily Injury And Property Damage Liability and Paragraph 2., Exclusions of Section I - Coverage B - Personal And Advertising Injury Liability:

2. **Exclusions**

This insurance does not apply to bodily injury, property damage, personal injury or advertising injury arising directly or indirectly out of:

a. Any actual or alleged failure, malfunction or inadequacy of:

(1) Any of the following, whether belonging to any insured or to others:

(a) Computer hardware, including microprocessors;
(b) Computer application software;
(c) Computer operating systems and related software;
(d) Computer networks;

(e) Microprocessors (computer chips) not part of any computer system; or
(f) Any other computerized or electronic equipment or components; or

(2) Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph 2.a.(1) of this endorsement due to the inability to correctly recognize, process, distinguish, interpret or accept the year 2000 and beyond.

b. Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph 2.a. of this endorsement.

CG 21 60 04 98
Copyright, Insurance Services Office, Inc. 1997
Page 1 of 1

# GENERAL STAR INDEMNITY COMPANY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SERVICE OF SUIT CLAUSE

It is agreed that in the event of the failure of General Star Indemnity Company (the "Insurer") to pay any amount claimed to be due hereunder, the Insurer, at the request of the Insured, will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

It is further agreed that service of process in such suit may be made upon the Insurer by certified mail, return receipt requested, addressed to the Insurer in care of the following Insurer Officer: Corporate Secretary, Attention: Legal Department, General Star Indemnity Company, 695 East Main Street, Stamford, CT 06904. In any suit instituted under this contract Insurer will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named Insurer Officer or his designee is authorized and directed to accept service of process on behalf of the Insurer in any such suit and/or upon the request of the Insured to give a written undertaking to the Insured that it or they will enter a general appearance upon the Insurer's behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States of America, which makes provision therefor, the Insurer hereby designates the Superintendent, Commissioner or Director of Insurance or such other insurance department representative specified for that purpose in the statute or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the above-named Insurer Officer as the person to whom the said insurance department representative is authorized to mail such process or a true copy thereof. In addition to the above-named Insurer Officer, for the states set forth below, the Insurer also designates the following local residents as the persons to whom the insurance department representative is authorized to mail such process or a true copy thereof:

1. California - Jere Keprios, CT Corporation System, 818 West 7th Street, Los Angeles, CA 90017
2. Illinois - CT Corporation System, 208 South LaSalle Street, Chicago, IL 60604
3. Rhode Island - Edward S. Goldin, CT Corporation System, 123 Dyer Street, Providence, RI 02903.

COMMERCIAL GENERAL LIABILITY
CG 00 01 01 96

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under WHO IS AN INSURED (SECTION II).

Other words and phrases that appear in quotation marks have special meaning. Refer to DEFINITIONS (SECTION V).

## SECTION I – COVERAGES

## COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

### 1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS – COVERAGES A AND B.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

(2) The "bodily injury" or "property damage" occurs during the policy period.

c. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

### 2. Exclusions

This insurance does not apply to:

a. **Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b. **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

Copyright, Insurance Services Office, Inc., 1994

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

### d. Workers Compensation and Similar Laws

Any obligation of the insured under a workers compensation, disability benefits or unemployment compensation law or any similar law.

### e. Employer's Liability

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

### f. Pollution

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

(i) If the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

(ii) If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraph (d)(i) does not apply to "bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the fuels, lubricants or other operating fluids are intentionally discharged, dispersed or released, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent to be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor.

Copyright, Insurance Services Office, Inc., 1994

CG 00 01 01 96    ☐

Subparagraphs **(a)** and **(d)(i)** do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

**(2)** Any loss, cost or expense arising out of any:

    **(a)** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

    **(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**g. Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

    **(a)** Less than 26 feet long; and

    **(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**j. Damage to Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

 Copyright, Insurance Services Office, Inc., 1994 □

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall of Products, Work or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in LIMITS OF INSURANCE (Section **III**).

**COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal injury" or "advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" or offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION **III**); and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS – COVERAGES A AND B.

b. This insurance applies to:

(1) "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

(2) "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;

but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

a. "Personal injury" or "advertising injury":

(1) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

    Copyright, Insurance Services Office, Inc., 1994    CG 00 01 01 96    □

(2) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

(3) Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured;

(4) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement; or

(5) Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

b. "Advertising injury" arising out of:

(1) Breach of contract, other than misappropriation of advertising ideas under an implied contract;

(2) The failure of goods, products or services to conform with advertised quality or performance;

(3) The wrong description of the price of goods, products or services; or

(4) An offense committed by an insured whose business is advertising, broadcasting, publishing or telecasting.

c. Any loss, cost or expense arising out of any:

(1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

## COVERAGE C. MEDICAL PAYMENTS

### 1. Insuring Agreement

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

### 2. Exclusions

We will not pay expenses for "bodily injury":

a. To any insured.

b. To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. To a person injured on that part of premises you own or rent that the person normally occupies.

d. To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers compensation or disability benefits law or a similar law.

e. To a person injured while taking part in athletics.

f. Included within the "products-completed operations hazard".

g. Excluded under Coverage A.

h. Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

Copyright, Insurance Services Office, Inc., 1994

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

1. All expenses we incur.
2. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.
3. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.
4. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.
5. All costs taxed against the insured in the "suit".
6. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.
7. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";
b. This insurance applies to such liability assumed by the insured;
c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";
d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and
f. The indemnitee:
    (1) Agrees in writing to:
        (a) Cooperate with us in the investigation, settlement or defense of the "suit";
        (b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";
        (c) Notify any other insurer whose coverage is available to the indemnitee; and
        (d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and
    (2) Provides us with written authorization to:
        (a) Obtain records and other information related to the "suit"; and
        (b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of paragraph 2.b.(2) of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I – Coverages), such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or
b. The conditions set forth above, or the terms of the agreement described in paragraph f. above, are no longer met.

    Copyright, Insurance Services Office, Inc., 1994    CG 00 01 01 96    ☐

## SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

   a. Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

      (1) "Bodily injury" or "personal injury":

         (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

         (b) To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of paragraph (1)(a) above;

         (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs (1)(a) or (b) above; or

         (d) Arising out of his or her providing or failing to provide professional health care services.

   (2) "Property damage" to property:

      (a) Owned, occupied or used by,

      (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

      you, any of your "employees", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

   b. Any person (other than your "employee"), or any organization while acting as your real estate manager.

   c. Any person or organization having proper temporary custody of your property if you die, but only:

      (1) With respect to liability arising out of the maintenance or use of that property; and

      (2) Until your legal representative has been appointed.

   d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

   a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

   b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage B does not apply to "personal injury" or "advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage C;

   b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal injury" and all "advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage A; and

   b. Medical expenses under Coverage C

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to 5. above, the Fire Damage Limit is the most we will pay under Coverage A for damages because of "property damage" to premises, while rented to you or temporarily occupied by you with permission of the owner, arising out of any one fire.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

Copyright, Insurance Services Office, Inc., 1994
CG 00 01 01 96    □

c. You and any other involved insured must:

   (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   (2) Authorize us to obtain records and other information;

   (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

   (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

### 3. Legal Action Against Us

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

### 4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a. **Primary Insurance**

   This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

b. **Excess Insurance**

   This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

   (1) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

   (2) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner; or

   (3) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Coverage A (Section I).

   When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

   When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

   (1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

   (2) The total of all deductible and self-insured amounts under all that other insurance.

   We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

c. **Method of Sharing**

   If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

   If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

Copyright, Insurance Services Office, Inc., 1994

## 5. Premium Audit

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

## 6. Representations

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

## 7. Separation Of Insureds

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

## 8. Transfer Of Rights Of Recovery Against Others To Us

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

## 9. When We Do Not Renew

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V – DEFINITIONS

1. "Advertising injury" means injury arising out of one or more of the following offenses:

a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

b. Oral or written publication of material that violates a person's right of privacy;

c. Misappropriation of advertising ideas or style of doing business; or

d. Infringement of copyright, title or slogan.

2. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above; or

c. All parts of the world if:

(1) The injury or damage arises out of:

(a) Goods or products made or sold by you in the territory described in a. above; or

     Copyright, Insurance Services Office, Inc., 1994     CG 00 01 01 96

(b) The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; and

(2) The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

   b. Your fulfilling the terms of the contract or agreement.

8. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

   (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

   (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

      (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

      (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

   (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

9. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

10. "Loading or unloading" means the handling of property:

    a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

11. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

12. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

13. "Personal injury" means injury, other than "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

e. Oral or written publication of material that violates a person's right of privacy.

14. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

Copyright, Insurance Services Office, Inc., 1994

CG 00 01 01 96

b. Does not include "bodily injury" or "property damage" arising out of:

   (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

   (2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

   (3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**15.** "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

**16.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**17.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**18.** "Your product" means:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

   (1) You;

   (2) Others trading under your name; or

   (3) A person or organization whose business or assets you have acquired; and

b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

b. The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

**19.** "Your work" means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

b. The providing of or failure to provide warnings or instructions.

# GENERAL STAR INDEMNITY COMPANY

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION - TOTAL LIQUOR

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Exclusion c. under Section 1 of Coverage, is replaced by the following:

c.   "Bodily Injury" or "property damage" for which any insured may be held liable by reason of:

1.   Causing or contributing to the intoxication of any person;

2.   The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

3.   Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

GSI-04-C107 (3/97)

# GENERAL STAR INDEMNITY COMPANY

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# INTENTIONAL ACTS EXCLUSION
# AND
# ASSAULT BATTERY ENDORSEMENT

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM

It is agreed that Exclusion 2.a. of SECTION I-Coverage A, "Bodily Injury" and "Property Damage" Liability is deleted and replaced by the following:

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured or from the standpoint of any customer of the insured.

It is further agreed that this insurance does not apply to "bodily injury" or "property damage" arising out of assault battery, or out of any omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of the insured, his employees, patrons, or any other person.

GSI-04-C118 (8/96)

COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – PERSONAL AND ADVERTISING INJURY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

COVERAGE B (Section I) does not apply and none of the references to it in the Coverage Part apply.

Copyright, Insurance Services Office, Inc., 1984

COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – FIRE DAMAGE LEGAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

1. The last paragraph of 2. EXCLUSIONS under Coverage A. (Section I) does not apply.
2. Paragraph 6. of LIMITS OF INSURANCE (Section III) does not apply.
3. Any reference in the Declarations to "Fire Damage Legal Liability" does not apply.

Copyright, Insurance Services Office, Inc., 1985

# GENERAL STAR INDEMNITY COMPANY

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CLASSIFICATION LIMITATION

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM

It is agreed the coverages provided by this policy apply only to those operations described under the Description of Hazards Section of the applicable coverage part described on the Declaration page of this policy.

GSI-04-C102 (8/96)