United States District Court
District of Massachusetts

| | |
|---|---|
| JOESPH A. KINSELLA, As Administrator and Personal Representative of the Estate of Katherine Kinsella, and JOSEPH A. KINSELLA, Individually, and on Behalf of All Distributees of Katherine Kinsella, Deceased,<br><br>Plaintiffs,<br><br>v.<br><br>WYMAN CHARTER CORP., et al.,<br><br>Defendants. | Civil Action No.<br>04-11615-NMG<br><br><br><br><br><br><br><br>CONSOLIDATED |
| JOESPH A. KINSELLA, As Administrator and Personal Representative of the Estate of Katherine Kinsella, and JOSEPH A. KINSELLA, Individually, and on Behalf of All Distributees of Katherine Kinsella, Deceased,<br><br>Plaintiffs,<br><br>v.<br><br>INSURANCE COMPANY OF NORTH AMERICA, et al.,<br><br>Defendants. | Civil Action No.<br>05-10232-NMG |

MEMORANDUM & ORDER

GORTON, J.

Pending before the Court in these consolidated actions are

-1-

dispositive motions in which various parties dispute standing and the underlying merits of declaratory judgment claims.

I.  **Factual Background**

On or about July 22, 2001, plaintiff's decedent, Katherine Kinsella, a citizen of Ireland, was a passenger on board the motor vessel "Sea Genie II". On that date, the Sea Genie II collided with the sailing vessel "Granuaile" in or near Hyannis Harbor within the territorial waters of the Commonwealth of Massachusetts. The collision and/or subsequent maneuvering allegedly resulted in Katherine Kinsella falling overboard from the Sea Genie II and drowning.

On the date of Katherine Kinsella's death, defendant Wyman Charter Corp. ("Wyman Charter") owned the Sea Genie II and employed to work on the boat defendants Joseph Jay Shore ("Joseph Shore") and Cord Mitchell Shore ("Cord Shore"), who is Joseph Shore's son. Wyman Charter was insured at the time by defendant Insurance Company of North America ("ICNA") under a policy covering the Sea Genie II. Defendant Toad Hall Corp. ("Toad Hall"), a company apparently associated with defendant Carylyn Shore, the wife of Joseph Shore, carried commercial general liability insurance under a primary policy issued by defendant General Star Indemnity Company ("General Star") and an umbrella policy issued by defendant Fireman's Fund Insurance Company ("FFIC"). Defendant Ian McColgin ("McColgin") owned, operated,

managed and/or controlled the Granuaile on the date of the accident.

## II. Procedural History

In July, 2004, plaintiff and father of the decedent, Joseph Kinsella ("Kinsella"), filed an initial complaint in this Court ("the wrongful death action") alleging that his daughter's death was caused by the negligence of the following defendants: Wyman Charter, its president Michael Wyman ("Wyman"), Joseph Shore, Cord Shore, Carylyn Shore, Toad Hall, McColgin, and the vessels involved in the collision, i.e., the "Sea Genie II" and the "Granuaile". Kinsella filed an amended complaint in September, 2004, in which he omitted one of the allegations of negligence.

Defendant Wyman Charter cross-claimed against co-defendants Joseph Shore, Cord Shore, Carylyn Shore, Toad Hall, Ian McColgin and the "Granuaile", alleging that the death of Katherine Kinsella was caused by the cross-claim defendants' negligence, if any party was negligent. Joseph Shore, Cord Shore, Carylyn Shore and Toad Hall (collectively, "the Shore defendants") cross-claimed against Wyman Charter for indemnity, contribution and breach of contract. The Shore defendants also brought third-party claims for indemnity, contribution, negligence and wrongful death against third-party defendants Rory Vandamme ("Vandamme") and Martin Mahon ("Mahon"), who apparently were on board the Sea Genie II on the relevant evening but who are otherwise residents

of Ireland.

In February, 2005, Kinsella filed a separate action in this Court under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, ("the DJA") against ICNA, General Star and FFIC (collectively, "the insurance company defendants"), as well as the Shore defendants, Wyman Charter and Wyman. The complaint in that suit ("the DJ action") asserts that the insurance company defendants had policies insuring Wyman Charter and Toad Hall on the date of the accident but that those defendants have refused to indemnify and defend the insured parties. Kinsella seeks a declaration that the insurance company defendants must defend and indemnify Wyman Charter, Wyman and the Shore defendants for claims alleged in the wrongful death action.

The Shore defendants filed a cross-claim in the DJ action against the insurance company defendants, alleging that 1) those defendants each provided insurance coverage to one or more of the Shore defendants and 2) those defendants had either wrongfully denied coverage and defense or else failed to accept or deny coverage and/or defense without excuse or justification. The Shore defendants seek a declaration addressing their insurance coverage and also claim violations of the Massachusetts consumer protection laws codified at Mass. Gen. Laws chs. 93A and 176D.

Defendant ICNA counterclaimed against Kinsella and cross-claimed against Wyman Charter, Wyman and the Shore defendants for

a declaration that it has no insurance obligations in this matter on the grounds that various acts of Wyman Charter and/or its agents effectively breached or voided the policy and/or that the policy did not afford coverage under the circumstances.

In May, 2005, the Shore defendants moved the Court to consolidate the two suits brought by Kinsella. Defendants ICNA, FFIC, Wyman and Wyman Charter opposed that motion, but the Court concluded that consolidation would serve the interests of judicial economy and efficiency and therefore entered an order on June 24, 2005, consolidating both cases into Civil Action No. 04-11615-NMG.[1]

In August, 2005, defendant FFIC filed a motion for judgment on the pleadings in which it contends that Kinsella lacks standing to maintain the DJ action. In addition, FFIC avers that the claims against it should be dismissed on the merits by virtue of an exclusion to coverage in the pertinent insurance policy. Soon thereafter, defendant ICNA filed its own motion to dismiss, in which it adopts the standing argument raised by FFIC.

Kinsella and the Shore defendants oppose the motions to dismiss filed by FFIC and ICNA. Moreover, the Shore defendants contend that FFIC's motion for judgment on the pleadings should

---

[1] Because of mistakes in filing and/or docketing, the consolidated cases appear under Civil Action No. 05-10232. Henceforward, all filings should be made under the original case, i.e., Civil Action No. 04-11615.

be treated by the Court as a motion for summary judgment and then denied or continued pursuant to Fed. R. Civ. P. 56(f) in order to give the Shore defendants time for further discovery.

Toad Hall, one of the Shore defendants, has filed a cross-motion for partial summary judgment in the DJ action in which it seeks a declaration that General Star must defend it in the wrongful death action. General Star opposes that motion and has filed its own cross-motion for summary judgment against Toad Hall.

## III. **Discussion**

For the purposes of efficient disposition, the Court first addresses those motions that relate to the merits of various declaratory judgment claims. Furthermore, consideration of the primary policy issued by General Star precedes discussion of the umbrella policy issued by FFIC.

### A.   **Cross-Motions for Summary Judgment**

Defendant Toad Hall contends that it is entitled to a declaratory summary judgment that its primary general liability insurer, cross-claim defendant General Star, must defend it in the wrongful death action. General Star opposes that motion and cross-moves for a declaration that it need not defend Toad Hall on the grounds that the underlying tort claims are expressly excluded by the policy and, in addition, fall outside the purpose for which coverage was issued.

### 1. Standard of Review

Summary judgment is appropriate where the moving party has shown, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law". Fed. R. Civ. P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law". Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." Id. A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party". Id.

Because the dispute between Toad Hall and General Star rests upon the interpretation of an insurance policy, disposition by summary judgment is appropriate. McNeill v. Metro. Prop. & Liab. Ins. Co., 650 N.E.2d 793, 795 (Mass. 1995).

### 2. Analysis

Under Massachusetts law, a liability insurer's duty to defend is determined

> by matching the third-party complaint with the policy provisions: if the allegations of the complaint are "reasonably susceptible" of an interpretation that they state or adumbrate a claim covered by the policy terms, the insurer must undertake the defense.

Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 788 N.E.2d

522, 530 (Mass. 2003) (citations and internal quotation marks omitted). Insurance policy exclusions are strictly construed under Massachusetts law. <u>Hakim</u> v. <u>Mass. Insurers' Insolvency Fund</u>, 675 N.E.2d 1161, 1165 (Mass. 1997) (citation omitted). Unambiguous terms are to be given their usual and ordinary meaning but ambiguities are to be construed against the insurer. <u>Id.</u> (citations omitted). Moreover, the scope of the insurer's duty to defend is broad and goes beyond its obligations of indemnity. <u>Global Naps, Inc.</u> v. <u>Fed. Ins. Co.</u>, 336 F.3d 59, 62 (1st Cir. 2003) (citations omitted).

That duty is not unlimited, however. Where "the allegations in the underlying complaint lie expressly outside the policy coverage and its purpose", the insurer has no obligation to defend the claimant. <u>Herbert A. Sullivan, Inc.</u>, 788 N.E.2d at 531 (citations and internal quotation marks omitted). The insurer bears the burden of establishing release from coverage by virtue of a policy exclusion. See <u>Brazas Sporting Arms, Inc.</u> v. <u>Am. Empire Surplus Lines Ins. Co.</u>, 220 F.3d 1, 4 (1st Cir. 2000) (citing Massachusetts cases).

The General Star insurance policy provides for the reimbursement of damages incurred by the insured for "bodily injury" or "property damage" to which the policy applies. It also imposes upon General Star "the right and duty to defend the insured against any 'suit' seeking those damages" with the

qualification that no such duty arises where the lawsuit relates to injuries to which the insurance policy does not apply. A Watercraft Exclusion in the policy states, in pertinent part, that insurance coverage does not apply to

> "[b]odily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any ... watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

Toad Hall contends that the Watercraft Exclusion does not relieve General Star from the obligation to defend it against the underlying tort claims because no facts support the proposition that Toad Hall owned, operated, rented or was loaned, any watercraft at issue. General Star responds that the complaint in the wrongful death action clearly establishes the opposite conclusion. Because that complaint alleges that Toad Hall "was the owner and/or owner pro hac vice of the Motor Vessel 'Sea Genie II'", General Star asserts that the policy's Watercraft Exclusion clearly releases it from any duty to defend Toad Hall. Upon careful evaluation of the parties' contentions with respect to the complaint and insurance policy, the Court concurs and will, therefore, allow General Star's motion for partial summary judgment against Toad Hall.

The complaint in the wrongful death action states that Katherine Kinsella boarded the Sea Genie II which was caused to collide with the Granuaile in the vicinity of Hyannis Harbor,

-9-

resulting in her falling overboard and drowning. Toad Hall and the other Shore defendants are alleged to be liable on the basis of their ownership (or ownership pro hac vice) of the Sea Genie II, which ownership allegedly gave rise to various duties they then contravened, i.e., 1) permitting too many people on board, 2) failing to provide adequate safety devices, 3) failing to properly man, maintain, monitor and navigate the boat, 4) failing to repair and warn passengers of damage after the collision and 5) failing to conduct a timely search and rescue operation.

Under Massachusetts law, the phrase "arising out of" within an insurance policy exclusion "indicates a wider range of causation than the concept of proximate causation in tort law", falling "somewhere between proximate and 'but for' causation". Brazas, 220 F.3d at 7 (citations and internal quotation marks omitted). The requisite causal connection has been described as "originating from, growing out of, flowing from, incident to, or having connection with". Id. (citations and internal punctuation marks omitted). Because the alleged legal liability of Toad Hall is specifically premised upon its ownership of the Sea Genie II and all of the allegations of negligence emanate from the ownership, maintenance or use of watercraft, the Watercraft Exclusion in the General Star policy discharges it from a duty to

defend Toad Hall in the underlying tort case.[2]

Furthermore, although the policy did not explicitly limit coverage to claims arising out of Toad Hall's business, which is described in the policy as "public parking", see Trs. of Tufts Univ. v. Commercial Union Ins. Co., 616 N.E. 2d 68, 76 (Mass. 1993) (duty to defend not limited to specific hazards listed in policy schedule because policy did not "unambiguously" limit coverage to specified hazards), the Court's allowance of General Star's motion is bolstered by the discontinuity between the purpose of the policy to provide commercial general liability coverage for a parking business and the negligence claims at issue. None of those claims bears any apparent relation to a parking operation.

**B. Motions for Judgment on the Pleadings**

Defendant FFIC has moved to dismiss the case against it pursuant to Fed. R. Civ. P. 12(c) on the grounds that the plaintiff lacks standing to maintain the DJ action and, in any event, that it need not provide a defense in this case because its policy for the benefit of defendant Toad Hall clearly

---

[2] General Star (and the other insurance company defendants) are cautioned, however, that "should a trial subsequently establish that the facts were other than first pleaded, i.e., that the occurrence was covered by the policy, and should an amendment of the complaint be allowed, the insurer would be bound to indemnify the insured for the damages recovered against him and for the costs of the defense". Terrio v. McDonough, 450 N.E.2d 190, 194 (Mass. App. Ct. 1983).

excludes the tort claims at issue. Defendant ICNA adopts FFIC's position with respect to standing and on those grounds has also moved to dismiss the DJ action against it. The plaintiff, Kinsella, and the Shore defendants oppose both motions. Moreover, the Shore defendants contend that FFIC's motion should be treated as one for summary judgment and is, therefore, premature pursuant to Fed. R. Civ. P. 56(f).

### 1. Standard of Review; Conversion of Motion to Dismiss to Motion for Summary Judgment

Courts considering Rule 12(c) motions apply essentially the same standard of review as they do with Rule 12(b)(6) motions. The court "must accept all of the nonmovant's well-pleaded factual averments as true, and draw all reasonable inferences in his favor". Pasdon v. City of Peabody, 417 F.3d 225, 226 (1st Cir. 2005) (quoting Rivera-Gomez v. de Castro, 843 F.2d 631, 635 (1st Cir. 1998)) (internal citations omitted). A motion to dismiss will not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief". Id.

Review of motions pursuant to Fed. R. Civ. P. 12(c) and 12(b)(6) is limited to the pleadings and thus,

> [o]rdinarily a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment.

Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.,

267 F.3d 30, 33 (1st Cir. 2001) (citation omitted). A "narrow exception" applies for authentic documents, official public records and documents that are either pivotal to the plaintiff's claim or sufficiently referred to in the complaint. Id. Documents relied upon in the complaint effectively "merge[] into the pleadings" provided that their authenticity is not challenged. Id.

In this case, the Shore defendants aver that FFIC's motion to dismiss should be treated as a motion for summary judgment because FFIC supports that motion with copies of the complaint filed in the wrongful death action and the pertinent FFIC insurance policy. The Court concludes, however, that those submissions are not "outside of the pleadings" for the purpose of Rule 12(c) and, therefore, the motion for judgment on the pleadings will not be converted into a motion for summary judgment. The complaint in the wrongful death action and the FFIC insurance policy are central to Kinsella's claim and explicitly referred to in the DJ complaint, thereby rendering those documents part of the pleadings for the purpose of the Court's consideration under Rule 12(c).

### 2. Analysis - Merits

FFIC contends that, regardless of whether Kinsella has standing to maintain the DJ action, all claims against it must be dismissed on the grounds that the policy clearly excludes

coverage. Kinsella and the Shore defendants dispute that proposition and assert, additionally, that dismissal would be premature because the FFIC umbrella policy has no application until coverage under the General Star primary policy has been exhausted. The Court concludes that, because it has determined that General Star bears no duty to defend Toad Hall under the primary policy, the Shore defendants are not entitled to a defense under FFIC's umbrella policy.[3]

Furthermore, the Court finds that FFIC would be relieved of its obligation to defend regardless of the availability of coverage under the primary policy. As discussed above, an insurer's duty to defend is determined by comparing the allegations of the third-party complaint with the terms of the insurance policy. As General Star has done, FFIC contends that a "Watercraft Exclusion" in its insurance policy discharges it from any obligation to defend against the underlying tort claims. The pertinent provision states that

> [t]he policy does not apply to any liability arising out of the ownership, maintenance, operation, use, entrustment to others, loading or unloading of any watercraft.

Kinsella and the Shore defendants argue that the Watercraft Exclusion in the FFIC policy is ambiguous because (unlike the

---

[3] Although the cross-motions for summary judgment of Toad Hall and General Star do not seek declarations with respect to the other Shore defendants, the Court is unaware of any reason why coverage under the primary policy would be available to the Shores after it has been denied to Toad Hall.

exclusion in the General Star policy) it fails to state whether its application is limited to claims involving watercraft owned by *an insured*. The Court is unpersuaded by this argument. On the contrary, the omission makes it clear that the exclusion unambiguously refers to *any* person's ownership of watercraft. The cases relied upon by Kinsella are misplaced because each involves policy exclusions that explicitly refer to watercraft owned or operated by an insured.

In any event, irrespective of the relationship between the FFIC Watercraft Exclusion and ownership of watercraft by an insured, the Court finds that FFIC has no duty to defend against the underlying tort claim for the same reasons it concluded that General Star was released from a duty to defend. This decision necessarily means that the plaintiff, Kinsella, may not maintain an action for declaratory judgment against FFIC regardless of the question of standing.

### 3. Analysis - Standing

The remaining motion to dismiss, filed by ICNA, is based upon Kinsella's alleged lack of standing to seek declaratory judgment against it. Kinsella responds that even though he may lack standing to proceed against the insurance defendants directly, he has standing to bring this declaratory judgment action because the insured parties have asserted cross-claims against the insurance defendants.

In light of the cross-claims for declaratory judgment asserted by the Shore defendants against ICNA and ICNA against Wyman Charter, Wyman, the Shore defendants and Kinsella, the Court will dismiss, as moot, the declaratory judgment claim brought by Kinsella against ICNA. Because cross-claims and a counterclaim for declaratory judgment remain in the case, the Court retains jurisdiction to issue a declaration relative to coverage under the ICNA insurance policy.

## ORDER

In accordance with the foregoing memorandum,

1) Defendant Toad Hall's Motion for Partial Summary Judgment against Cross-Claim Defendant General Star (Docket No. 49) is **DENIED**;

2) Defendant General Star's Motion for Summary Judgment against Cross-Claim Defendant Toad Hall (Docket No. 57) is **ALLOWED**;

3) the Motion of the Shore Defendants pursuant to Fed. R. Civ. P. 56(f) (Docket No. 50) is **DENIED**;

4) Defendant FFIC's Motion to Dismiss (Docket No. 44) is **ALLOWED**; and

5) Defendant ICNA's Motion to Dismiss (Docket No. 46) is, with respect to the declaratory judgment claim brought by Kinsella as plaintiff, **ALLOWED**.

Pursuant to the order of this Court entered on June 24, 2005, in which Civil Action No. 05-10232 was consolidated into Civil Action No. 04-11615, the parties are directed to file all

future pleadings in this case under Docket Number 04-cv-11615.

**So ordered.**

_/s/ Nathaniel M. Gorton_
Nathaniel M. Gorton
United States District Judge

Dated: February 2, 2006